**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CENTERLINE HOLDING COMPANY SECURITIES LITIGATION | Civil Action No. 08-CV-00505 (SAS) |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION OF THE CENTERLINE INVESTOR GROUP**
**FOR APPOINTMENT AS LEAD PLAINTIFF**
**AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT ..................................................................................................................... 8

I.     THE CENTERLINE INVESTOR GROUP SHOULD BE APPOINTED LEAD
PLAINTIFF............................................................................................................... 8

     A.    The Procedural Requirements Pursuant to the PSLRA .......................................... 8

     B.    The Centerline Investor Group is the "Most Adequate Plaintiff".......................... 9

          1.    The Centerline Investor Group Has Made a Timely Motion for
Appointment as Lead Plaintiff .................................................................. 9

          2.    The Centerline Investor Group Has the Largest Financial Interest ............ 9

          3.    The Centerline Investor Group Otherwise Satisfies Rule 23 .................... 12

II.    THE COURT SHOULD APPROVE THE CENTERLINE INVESTOR
GROUP'S CHOICE OF COUNSEL ............................................................................ 14

CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aronson v. McKesson HBOC, Inc.*,
  79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...................................................................10

*In re Baan*,
  186 F.R.D. 214 (D.D.C. 1999).................................................................................11

*Constance Sczensy Trust v. KPMG LLP*,
  223 F.R.D. 319 (S.D.N.Y. 2004) .....................................................................2, 12,13

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) .........................................................................2, 11

*Glauser v. EVCI Career Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................9,13

*In re MicroStrategy, Inc. Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ...................................................................14

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................2

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .........................................................................11,12

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999).....................................................................................3

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*,
  229 F.R.D. 395 (S.D.N.Y. May 27, 2004)...............................................................14

*Strougo v. Brantley Capital Corp.*,
  243 F. Supp. 2d 100 (S.D.N.Y. 2007)......................................................................2

*In re Waste Mgmt., Inc. Sec. Litig.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000) ....................................................................14

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
  No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 26, 2005) .............10,14

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ...........................................................................11

**STATUTES**

15 U.S.C. § 78u-4(a)(2)(A) ................................................................................................................2

15 U.S.C. § 78u-4(a)(3) ...............................................................................................................1,8

15 U.S.C. § 78u-4(a)(3)(A) ..........................................................................................................8

15 U.S.C. § 78u-4(a)(3)(A)(i) .......................................................................................................8

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................................................8,12

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii) .....................................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................................................1

Fed. R. Civ. P. 23 .................................................................................................................3,12,13

J. Michael Fried, Joseph A. Braddock, Norman Millman, and Edward Friedlander, as trustee for the Ed Friedlander Trust (the "Centerline Investor Group") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order (i) appointing the Centerline Investor Group as lead plaintiff of the class of purchasers of the securities of Centerline Holding Company ("Centerline" or the "Company"); and (ii) approving the Centerline Investor Group's selection of the law firms Labaton Sucharow LLP ("Labaton Sucharow") and Berger & Montague, P.C. ("Berger & Montague") as lead counsel for the Class.[1]

## INTRODUCTION

The above-captioned action (the "Action") is a securities purchaser class action lawsuit that has been brought against Centerline and certain officers and/or directors of the Company (collectively, "Defendants") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. The Action was commenced in this jurisdiction on January 18, 2008 on behalf of all persons or entities, other than defendants, who purchased or acquired the securities of Centerline during the class period, as defined below.

Pursuant to the PSLRA, the court appoints as lead plaintiff the movant who possesses the largest financial interest in the outcome of the Action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Centerline Investor Group, with losses of **$1,101,513** in connection with its purchases of Centerline

---

[1] The related cases were consolidated by Stipulation and Order dated March 3, 2008.

securities during the Class Period, is adequate and typical to serve as lead plaintiff.[2] *See* Declaration of Alan I. Ellman ("Ellman Decl.") at Ex. A.

Although the PSLRA does not define the term "largest financial interest," a broad body of case law in this District establishes that four key factors should guide the Court's analysis: (1) the total number of shares of the subject securities purchased; (2) the net number of shares purchased (offsetting the total number purchased by the total number sold); (3) the net funds expended by the movant to acquire those shares; and (4) the approximate losses suffered by the movant. *See*, *e.g.*, *Strougo v. Brantley Capital Corp.,* 243 F. Supp. 2d 100, 104 (S.D.N.Y. 2007) (Robinson, J.); *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313(HB), 2005 WL 1278097, at *1 (S.D.N.Y. May 31, 2005) (Baer, J.); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (Scheindlin, J.); *Constance Sczensy Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (Stein, J.); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).[3] As demonstrated below, the Centerline Investor Group is the "most adequate plaintiff" in this case. The Centerline Investor Group collectively purchased 136,289 total shares of Centerline securities with net purchases of 136,289 shares, making net expenditures of $1,880,057 to acquire those securities, and suffering losses of $1,101,513 on either a first-in, first-out ("FIFO") analysis or a last-in, first-out ("LIFO") basis, the two methods used to calculate this factor.

To the best of its knowledge, the Centerline Investor Group's losses represent the largest known financial interest of any Class member seeking to be appointed as lead plaintiff. *See*

---

[2]  The losses suffered by the Centerline Investor Group are not the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The losses can, however, be determined from the certifications required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A), and based upon reference to information concerning the current market for the Company's securities.

[3] *In re Olsten Corp.* is one of the earliest, and most cited, cases setting forth these four factors, which are commonly referred to as "*Olsten* factors."

Ellman Decl. at Ex. B.  The Centerline Investor Group is not aware of any other Class member

that has filed an action that has sustained greater financial losses.  In addition, the Centerline

Investor Group satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules

of Civil Procedure ("Rule 23") and, therefore, is qualified for appointment as lead plaintiff in the

Action.  Thus, as demonstrated herein, the Centerline Investor Group is the presumptive most

adequate plaintiff and should be appointed lead plaintiff.

## STATEMENT OF FACTS

This is a federal class action on behalf of purchasers of the publicly traded securities of

Centerline between December 5, 2006 and December 28, 2007, inclusive (the "Class Period").[4]

Centerline, formerly CharterMac, is a statutory trust that conducts substantially all of its business

through its subsidiaries.  During the Class Period, the Company operated through four business

segments: (1) Affordable Housing, (2) Commercial Real Estate, (3) Asset Management, and (4)

Credit Risk Products.  The Affordable Housing segment is responsible for managing Centerline's

mortgage revenue bond portfolio, which is comprised primarily of tax-exempt first mortgage

bonds.  During the Class Period, the Affordable Housing segment generated the majority of the

Company's total revenues.  For example, during the third quarter of 2007, this segment earned

$70.2 million in revenue, representing approximately 55.6% of the Company's total revenue for

the quarter.

---

[4] Counsel for the Centerline Investor Group filed the first class action complaint against Centerline on January 18, 2008, alleging a proposed class period beginning on March 12, 2007.  Thereafter, five similar complaints were filed alleging the same class period.  On February 26, 2008, however, a plaintiff filed a similar complaint, but with a class period commencing on December 5, 2006.  For purposes of this motion, the Centerline Investor Group has used the longest of the class periods, December 5, 2006 through December 28, 2007, inclusive, to demonstrate that they will adequately represent the entire class of persons who purchased Centerline stock.  *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The *Catanzarite* Action is relied upon for purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants."); *see also In re Star Gas Sec. Litig.*, No. 3:04CV1766 (JBA), 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (finding that the longest class period alleged is to be utilized in determining the largest financial interest).

On March 12, 2007, Centerline issued a press release announcing the Company's financial results for the fourth quarter and full year ended December 31, 2006, in which defendants touted the growth in the Company's portfolio of tax-exempt first mortgage bonds, which, at the time, had a fair value of $2.397 billion, as compared to $2.294 billion at the end of 2005.

Although the March 12, 2007 press release highlighted the Company's long-term evolution from a pure tax-exempt bond fund to a "full service real estate finance and investment company," this press release – and all of the defendants' subsequent Class Period statements – gave no hint that defendants were in the midst of structuring a sale of the Company's entire mortgage revenue bond portfolio to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). Indeed, statements such as those made in the Company's 2006 annual report filed with the SEC on Form 10-K on March 12, 2007, indicated that the Company's mortgage revenue bond portfolio had expanded in 2005 and 2006. Not only did defendants fail to give fair warning to the investing public that such a transaction would radically transform the Company's business model and investor profile, but defendants' public statements and material omissions throughout the Class Period created the false impression that the Company would retain its mortgage revenue bond portfolio and that investors would continue to benefit from the substantial dividends generated by the portfolio's income (with yields as high a 13.9%) for the indefinite future.

Indeed, even as the subprime mortgage crisis gathered momentum in August 2007, dragging down the price of Centerline's shares, defendants were steadfast that the Company's mortgage revenue bond portfolio – which did not have single-family or subprime exposure – was

continuing to perform well as a core business of the Company.  For instance, during an August 9,

2007 analyst conference call, defendant Schnitzer stated:

> In spite of the instability in the financial markets, operating
> fundamentals in the commercial real estate and affordable housing
> sectors are healthy.  We have sufficient capital resources to
> execute our business plan and are not experiencing any liquidity
> problems.
>
>       \*   \*   \*
>
> The recent market dislocation has created numerous opportunities
> to make investments that offer attractive returns and strong credit
> quality.  In times of market instability, we would expect to see a
> flight to quality that benefits firms like Centerline...
>
>       \*   \*   \*
>
> The market instability has had little or no impact on our Affordable
> Housing group, which includes our tax-exempt bond and tax credit
> equity fund businesses. Affordable Housing represents
> approximately 65% of our annual CAD revenues.
>
>       \*   \*   \*
>
> The credit quality of our bond portfolio remains very strong.  As of
> June 30th, delinquencies totaled just $70.1 million or
> approximately 2.5% of our $2.8 billion portfolio.

Moreover, during an analyst conference call on November 8, 2007 (less than 2 months

before the Freddie Mac deal closed), defendant Schnitzer was questioned as to whether

Centerline had considered selling its mortgage revenue bond portfolio.  Instead of revealing that

a deal was in the works, he deliberately concealed this fact from investors, as follows:

> Nicole Jacoby - Liberation Investments - Analyst
>
> Well, I understand.  I think we've had some of these discussions
> before about turning into a fund manager.  There are two further
> issues.  One is, you are obviously executing along that track.  But
> the market still doesn't seem to either recognize it or be rewarding
> it.  And, sort of related to that, ***have you ever considered putting –
> taking the bonds off your balance sheet or letting them roll off
> into some other sort of vehicle?***

> Marc Schnitzer – Centerline Holding Company – President and CEO
>
> **Well, clearly a strategy like that plays into the overall evolution of the Company. So, clearly it's something that we've thought of from time to time.** We're not yet in a position where we can make the case in a very compelling way that we are a pure fund manager when we have $2.9 billion of bonds on our balance sheet which is reminiscent of the bond fund that we were. So, I think that complicates the story and our goals are really to try to simplify the story as much as we can.
>
> Nicole Jacoby – Liberation Investments – Analyst
>
> And is there anything – **so you generally thought about the bond issue but I guess you're not commenting right now on the specifics of it?**
>
> Marc Schnitzer – Centerline Holding Company – President and CEO
>
> **We've thought about that and many other options. But, clearly that's one that would come to mind right away.**

(Emphasis added.)

Then, on December 28, 2007, Centerline shocked the financial markets with a press release announcing that the Company had sold its $2.8 billion tax-exempt affordable housing bond portfolio to Freddie Mac and, in the process, completely changed the Company's business model to a pure asset management firm. As a result of this transaction, the Company disclosed that it would be slashing its annual dividend from $1.68 per share to only $0.60 per share. Even more disturbing was the fact that defendants had entered into a related party transaction with an affiliate of a company owned by defendants Ross and Blau called, appropriately enough, The Related Companies, L.P. ("TRCLP"), whereby the TRCLP affiliate would provide Centerline $131 million in financing, in exchange for 12.2 million shares of newly-issued convertible preferred stock that will pay these insiders an 11% dividend. Specifically, the December 28, 2007 press release stated, *inter alia*:

- 6 -

Centerline ... ***today announced the completion of a securitization of the Company's $2.8 billion tax-exempt affordable housing bond portfolio with Freddie Mac. For accounting purposes, most of the securitization will be treated as a sale. The transaction represents a major step in Centerline's plan to transform itself into an alternative asset management company. Centerline also announced a $131 million equity investment commitment from an affiliate of Related Companies, its largest shareholder.***

"Over the past several years, the strategic vision embraced by Centerline's Board of Trustees and management has been to transform Centerline into an alternative asset management company," said Marc D. Schnitzer, Chief Executive Officer and President of Centerline. ***"With the securitization of our bond portfolio with Freddie Mac, we have <u>accelerated</u> our progress toward that goal. … As an alternative asset manager with $11.6 billion of assets under management, we aim to produce returns and growth comparable to other publicly-traded alternative asset managers."***

\*     \*     \*

Change Dividend Policy: Effective in the first quarter of 2008, ***Centerline's dividend on an annualized basis is expected to be $0.60 per share ($0.15 on a quarterly basis)***, subject to approval by our Board of Trustees. The Company will deploy its retained cash flows to fund growth and reduce debt. Centerline anticipates 30% to 35% of the Company's income will be federally tax-exempt in 2008.

(Emphasis added.)

During a December 28, 2007 analyst conference call, defendant Schnitzer revealed that the Company had been planning this institutional metamorphosis for nearly a year, stating: "This morning, ***we announced the closing of a transformational transaction that has been in the works for close to a year*** and a significant strategic investment in our firm by our largest shareholder." (Emphasis added.)

Defendants' disclosure that Centerline had sold its tax-exempt mortgage revenue bond portfolio to Freddie Mac and had changed its business model overnight to an asset management company that would be unsuitable for investors seeking income from dividends, as well as the

revelations regarding the sweetheart deal with the TRCLP affiliate, revealed to the market the falsity of the Company's Class Period statements and caused the price of Centerline stock to plummet from $10.27 per share on December 27, 2007, to close at $7.70 per share on Friday, December 28, 2007, representing a 25% single-day decline, on unusually heavy trading volume of 4,152,688 shares.

## ARGUMENT

### I.    THE CENTERLINE INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.    The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3).  First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  The plaintiff which filed the complaint in this Action published a notice on *PR Newswire* on January 18, 2008.[5]  *See* Ellman Decl. Ex. C.  This notice correctly indicated that applications for appointment as lead plaintiff were to be made no later than March 18, 2008.  Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action.  15 U.S.C. § 78u-4(a)(3)(A) and (B).

---

[5] The Berger & Montague and Labaton Sucharow firms filed the first complaint in this action and the class notice.  *See Goldstein v. Centerline Holding Co., et al.*, No. 08-cv-505 (S.D.N.Y. filed Jan. 18, 2008) (Scheindlin, J.); Ellman Decl. Ex. C.

Next, according to the PSLRA, the Court shall appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members within 90 days after publication of the initial notice of pendency. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> > (aa) has either filed the complaint or made a motion in response to a notice . . .
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

### B.    The Centerline Investor Group is the "Most Adequate Plaintiff"

#### 1.    The Centerline Investor Group Has Made a Timely Motion for Appointment as Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the notice, the Centerline Investor Group timely moves this Court to be appointed lead plaintiff on behalf of all plaintiffs and class members covered by the Action and any other actions deemed related by this Court.

#### 2.    The Centerline Investor Group Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member who represents the largest financial interest in the relief sought by the action. *See Glauser*, 236 F.R.D. at 190 (appointing lead plaintiff movant with largest financial interest); *see*

*also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *3-4 (S.D.N.Y. Jan. 26, 2005) (Holwell, J.) (same).  As noted above, the analysis central to appointing the lead plaintiff focuses on a four-part test: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant.  *See Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *1.  "These factors are useful, because they look to relatively objective indicators, such as number of shares purchased or sold, rather than to the ultimate question of damages."  *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999).

Based upon these factors, the Centerline Investor Group believes it has the largest financial interest in this litigation.

**Total Shares Purchased and Net Shares Purchased:** Net shares purchased equals the number of shares purchased less the number of shares sold during the Class Period.  The Centerline Investor Group is a net purchaser of Centerline shares because it bought a total of 136,289 Centerline shares and did not sell any during the Class Period, equaling net purchases of 136,289 shares.  *See* Certifications and Loss Analyses, Ellman Decl., Ex. A and B.

**Net Funds Expended:** The net funds an investor expended on the subject securities during the Class Period equals the difference between the total funds the investor spent to purchase those securities and the funds it received from sales of those securities.  The Centerline Investor Group expended $1,880,057 for Centerline shares during the Class Period and sold no shares.  Thus, the net expenditure equals the expenditure of $1,880,057.  *See* Certifications and Loss Analyses, Ellman Decl., Ex. A and B.

**Approximate Losses:** In determining a movant's approximate losses, courts have employed either the FIFO or LIFO method. The Centerline Investor Group suffered total losses of $1,101,513 when calculated using either the FIFO or LIFO loss methods. *See* Ellman Decl., Ex. A and B.

As is evident from the statutory language, a group of lead plaintiffs may be appointed under the PSLRA, and numerous courts have appointed small groups of plaintiffs as lead plaintiffs. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 100 (appointing a small group of unrelated investors to serve as lead plaintiff); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (appointing group of three lead plaintiffs and finding that the interests of the class would be best served by the group because of the substantial benefits of joint decision-making and joint funding); *Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (permitting aggregation of losses of a group of seven unrelated investors); *In re Star Gas Sec. Litig.*, 2005 WL 81867, at *5 ("The majority of courts considering the issue have taken an intermediate position, allowing a group of unrelated investors to serve as lead plaintiffs…").

In the instant litigation, the Centerline Investor Group is comprised of four individual investors who share the common goal of pursuing this action. After conversing with each other on conference calls, they have decided to serve together to monitor and supervise their counsel and actively participate in the prosecution of this action. The appointment of the Centerline Investor Group as lead plaintiff is consistent with the language of the PSLRA, case law authority, and the SEC's view on the subject. *See* Memorandum of SEC, *Amicus Curiae*, attached to the court's opinion in *In re Baan*, 186 F.R.D. 214, 224 (D.D.C. 1999) ("Construing the term 'group of persons' in light of the language and purpose of the Act, a court generally should only approve a group [as lead plaintiff only if it is] small enough to be capable of

effectively managing the litigation and the lawyers.  The Commission believes that ordinarily this should be no more than three to five persons, a number that will facilitate joint decision-making and also help to assure that each group member has a sufficiently large stake in the litigation.")

In sum, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Centerline Investor Group is believed to have the largest financial interest and should be appointed as lead plaintiff in this action.

### 3.     The Centerline Investor Group Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49 (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *see also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same).  As detailed below, the Centerline Investor Group satisfies both the

typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### (a)  The Centerline Investor Group Fulfills the Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  Typicality exists "where the claims of the Lead Plaintiff arise from the same course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct."  *Glauser*, 236 F.R.D. at 188-89.  However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality.  *See Sczensy Trust*, 223 F.R.D. at 325.

The Centerline Investor Group seeks to represent a class of purchasers of Centerline securities which have identical, non-competing and non-conflicting interests.  The Centerline Investor Group satisfies the typicality requirement because it: (1) purchased Centerline securities during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market.  *See Glauser*, 236 F.R.D. at 189 (discussing typicality requirement). Thus, the Centerline Investor Group's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

### (b)  The Centerline Investor Group Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  In order to meet the adequacy requirement, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally

able to conduct the proposed litigation." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 413 (S.D.N.Y. May 27, 2004). The Centerline Investor Group's interests in this action are perfectly aligned with the interests of absent class members, and Labaton Sucharow LLP and Berger & Montague, P.C., the group's selected lead counsel, have decades of experience in effectively prosecuting securities class actions. The members of the Centerline Investor Group discussed their joint motion for lead plaintiff on conference calls and established a decision-making mechanism in support of their control over this litigation. Accordingly, the Court can be assured that the Centerline Investor Group and its selected counsel will more than adequately protect the interests of absent class members.

## II.    THE COURT SHOULD APPROVE THE CENTERLINE INVESTOR GROUP'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. *See Weiss*, 2006 U.S. Dist. LEXIS 3028, at *20. The Court should not disturb the proposed lead plaintiff's choice of counsel unless necessary to "protect the interest of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000).

The Centerline Investor Group has selected Labaton Sucharow LLP and Berger & Montague, P.C. as its counsel. Labaton Sucharow has had a leading role in numerous important actions on behalf of defrauded investors. Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at that time. *See* Labaton Sucharow Firm Resume, Ellman Decl. Ex. D; *see also In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"). Also, Labaton

Sucharow is currently serving as lead or co-lead counsel in securities fraud class actions against American International Group, HealthSouth, Countrywide, Amgen, and others. In *Middlesex County Retirement System v. Monster Worldwide, Inc*., No. 07-cv-2237 (S.D.N.Y. June 14, 2007), Judge Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to [] courts for the excellence of its representation**."**

    The attorneys at Berger & Montague have significant securities class action litigation experience, and have been instrumental in recovering billions of dollars for institutional and individual investors, including *In re Rite Aid Sec. Litig.*, Master File No. 99-1349 (E.D. Pa.) (settlements totaling $334 million), where the Court praised Berger & Montague, P.C., stating: "[I]t would be hard to equal the skill class counsel demonstrated here." In approving the $220 million settlement of *In re Waste Management, Inc. Sec. Litig.*, Civil Action No. 97-C7709 (N.D. Ill.), Judge Wayne R. Andersen also recognized Berger & Montague, P.C.'s skill by stating: "[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases … in 15 years as a judge and I cannot recall a significant case where I felt people were better represented than they are here … I would say this has been the best representation that I have seen." Other significant recoveries include: *In re Sunbeam Inc. Sec. Litig.*, 98-CV-8258 ($141 million settlement); *In re IKON Office Solutions Sec. Litig.*, Civil Action No. 98-4286 (E.D. Pa.) ($111 million settlement); *Medaphis/Deloitte & Touche*, Civil Action Nos. 96-2088 (N.D. Ga.) and 97-3183 (N.D. Ga.) ($96.5 million settlement); *In re Fleming Companies, Inc. Sec. Litig.*, Civil Action No. 5-03-MD-1530 (E.D. Tex.) ($94 million settlement); *In re CIGNA Corp. Sec. Litig.*, Civil Action No. 02-8088 (E.D. Pa.) ($93 million settlement); and *In re Alcatel Sec. Litig.*, Master Dkt. No. 99-1263 (E.D. Tex.) ($75 million settlement achieved shortly before trial); *see also* Berger & Montague Firm Resume, Ellman Decl. Ex. E.

- 15 -

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

There is nothing to suggest that the Centerline Investor Group or its counsel will not fairly and adequately represent the Class, or that the Centerline Investor Group is subject to unique defenses, which is the only evidence that can rebut the presumption of adequacy under the Exchange Act. Therefore, the Court should appoint the Centerline Investor Group as lead plaintiff and approve its selection of Labaton Sucharow LLP and Berger & Montague, P.C. to serve as lead counsel for the Class.

## <u>CONCLUSION</u>

For the foregoing reasons, the Centerline Investor Group respectfully requests that the Court: (1) appoint the Centerline Investor Group as lead plaintiff; and (2) approve Labaton Sucharow LLP and Berger & Montague, P.C. as Lead Counsel for the Class.

Dated: March 18, 2008

Respectfully submitted,

**LABATON SUCHAROW LLP**

By:  _/s/ Christopher J. Keller_____
Lawrence A. Sucharow (LS-1726)
Christopher J. Keller (CK-2347)
Andrei V. Rado (AR-3724)
Alan I. Ellman (AE-7347)
140 Broadway
New York, New York 10005
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Barbara A. Podell
Eric Lechtzin
1622 Locust Street
Philadelphia, PA 19103
Tel. (215) 875-3000
Fax (215) 875-4604

*Attorneys for the Centerline Investor Group*
*and Proposed Lead Counsel for the Class*