UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CENTERLINE HOLDING COMPANY SECURITIES LITIGATION | Case No. 08 Civ. 00505 (SAS) |

### DECLARATION OF JAMES KELLY-KOWLOWITZ IN SUPPORT OF MOTION OF LOUISE LEVIN, DEBORAH DECHTER, ELIZABETH F. NEWMAN, AND WAI-LAM LI AND PEI-MEI LI FOR APPOINTMENT OF LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

I, James Kelly-Kowlowitz, declare as follows:

1.     I am an associate of the law firm of Wolf Popper LLP, counsel for plaintiffs Louise Levin, Deborah Dechter, Elizabeth F. Newman, Wai-Lam Li, and Pei-Mei Li in the above-captioned action.  I submit this Declaration in support of the motion of Louise Levin, Deborah Dechter, Elizabeth F. Newman, Wai-Lam Li, and Pei-Mei Li ("Movants") to be appointed as Lead Plaintiffs, and for approval of Lead Plaintiffs' selection of Lead Counsel.

2.     Attached as Exhibit 1 is a true and correct copy of the signed Certification of Louise Levin and the analysis of Louise Levin's trading in Centerline Holding Company ("Centerline" or the "Company") common stock, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(2), during the period March 12, 2007 through December 28, 2007, inclusive (the "Class Period").

3.     Attached as Exhibit 2 is a true and correct copy of the signed Certification of Deborah Dechter and the analysis of Deborah Dechter's trading in Centerline common stock, pursuant to the PSLRA during the Class Period.

4.     Attached as Exhibit 3 is a true and correct copy of the signed Certification of

Doc. 160166

Elizabeth F. Newman and the analysis of Elizabeth F. Newman's trading in Centerline common stock, pursuant to the PSLRA during the Class Period.

5.    Attached as Exhibit 4 is a true and correct copy of the signed Certification of Wai-Lam Li and Pei-Mei Li and the analysis of Wai-Lam Li and Pei-Mei Li's trading in Centerline common stock, pursuant to the PSLRA during the Class Period.

6.    Attached as Exhibit 5 is a true and correct copy of the initial notice to class members by Mark K. Goldstein that was published on January 18, 2008, on *PRNewswire*, advising the public of the pendency of a class action filed on behalf of shareholders of Centerline.

7.    Attached as Exhibit 6 is a true and correct copy of charts of Movants' transactions in Centerline common stock and their approximate losses on purchases made during the Class Period.

8.    Attached as Exhibit 7 is a true and correct copy of the firm biography for Wolf Popper LLP, the law firm Movants ask the Court to approve as Lead Counsel.

I hereby declare under penalty of perjury under the laws of the United States and the laws of the State of New York that the foregoing is true and correct to the best of my knowledge, information, and belief.  Executed on March 18, 2008, at New York, New York.

_____
James Kelly-Kowlowitz

## PROOF OF SERVICE

*In re Centerline Holding Company Securities Litigation*, Case No. 08 Civ. 00505 (SAS)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed with Wolf Popper LLP, whose offices are located in the City and State of New York. My business address is: 845 Third Avenue, New York, NY 10022.

That on March 18, 2008, I served the foregoing documents entitled: DECLARATION OF JAMES KELLY-KOWLOWITZ IN SUPPORT OF MOTION OF LOUISE LEVIN, DEBORAH DECHTER, ELIZABETH F. NEWMAN, AND WAI-LAM LI AND PEI-MEI LI FOR APPOINTMENT OF LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR SELECTION OF LEAD COUNSEL in this action, in particular on the following counsel for Defendants:

Curtis V. Trinko
LAW OFFICES OF CURTIS V.
TRINKO, LLP
16 West 46th Street, 7th Floor
New York, NY 10036
(212) 490-9550
Fax: (212) 986-0158

Alan Ian Ellman
Andrei V. Rado
Christopher J. Keller
LABATON SUCHAROW, LLP
140 Broadway
New York, NY 10005
(212)907-0700
Fax: (212)818-0477

*Attorneys for Thomas Lyons*

Arthur L. Shingler, III
Beth Ann Kaswan
David R. Scott
Walter W. Noss
SCOTT & SCOTT, LLP
600 B Street
Suite 1500
San Diego, CA 92101
(619) 233-4565
Fax: (619) 233-0508

*Attorneys for Plaintiff John Carfagno*

Alan Ian Ellman
Andrei V. Rado
Christopher J. Keller
LABATON SUCHAROW, LLP
140 Broadway
New York, NY 10005
(212)907-0700
Fax: (212)818-0477

Sherrie R. Savett
Barbara A. Podell
Eric Lechtzin
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Phone:  (215) 875-3000
Fax:  (215) 875-4604

*Attorneys for Plaintiff Mark K. Goldstein*

Evan J. Smith
BRODSKY & SMITH, L.L.C.
240 Mineola Blvd.
Mineola, NY 11501
516-741-4977

Richard A. Maniskas
D. Seamus Kaskela
SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
Fax: (610) 667-7056

*Attorneys for Peter Frank*

David Avi Rosenfeld
COUGHLIN, STOIA, GELLER, RUDMAN
& ROBBINS, LLP
58 South Service Road
Suite 200
Melville, NY 11747
631-367-7100
Fax: 631-367-1173

Jeffrey Simon Abraham
ABRAHAM FRUCHTER & TWERSKY
LLP
One Penn Plaza
Suite 1910
New York, NY 10119
212-279-5050
Fax: 212-279-3655

*Attorneys for Lori Weinrib*

Richard A. Rosen
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP (NY)
1285 Avenue of the Americas
New York, NY 10019
212-373-3305
Fax: 212-373-2359

*Attorneys for Defendants*

Kim Elaine Miller
Lewis Kahn
KAHN GAUTHIER SWICK, LLC
12 East 41st Street
12th Floor
New York, NY 10017
(212) 696-3730
Fax: (504) 455-1498

*Attorneys for Brian Quill*

  BY ELECTRONIC MEANS:  I caused the above-referenced document to be uploaded onto

the ECF system for the United States District Court, Southern District of New York.

  I declare under penalty of perjury under the laws of the United States and the State of New

York that the foregoing is true and correct.  Executed on March 18, 2008, at New York, New York.

Anthony D. Green

# EXHIBIT 1

## PLAINTIFF CERTIFICATION

I, Louise    Levin, hereby state:

1.    I have reviewed the complaint against Centerline Holding Company ("Centerline"), Marc D. Schnitzer, Robert L. Levy, Jeff T. Blau and Stephen M. Ross, entitled Dechter v. Centerline Holding Company, et. al, and have authorized the filing of a lead plaintiff motion on my behalf by Wolf Popper LLP.

2.    I did not purchase the securities that are the subject of the action at the direction of counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    During the Class Period alleged in the Complaint, I made the following transactions in Centerline common stock:

| Transaction | Trade Date | No. of Shares | Aggregate (Cost)/Proceeds |
|---|---|---|---|
| Sale | 4/25/2007 | 2,600 | $47,084.06 |
| Purchase | 11/15/2007 | 3,100 | ($42,213.01) |
| Purchase | 11/15/2007 | 6,900 | ($93,957.99) |
| Purchase | 11/15/2007 | 10,000 | ($132,704.40) |
| Purchase | 11/15/2007 | 1,900 | ($25,213.84) |

5.    During the three-year period preceding the date of my signing this certification, I have not sought to serve, nor have I served, as a representative on behalf of a class in a private action arising under the federal securities laws.

6.    I will not accept any payment for serving as a representative party on behalf of a class except to receive my pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of March 2008

_____
Louise    Levin

# EXHIBIT 2

## PLAINTIFF CERTIFICATION

I, Deborah Dechter, hereby state:

1.     I have reviewed the draft complaint against Centerline Holding Company ("Centerline"), Marc D. Schnitzer, Robert L. Levy, Jeff T. Blau and Stephen M. Ross, and certain of its senior officers and directors, entitled Dechter v. Centerline Holding Company, et. al. and have authorized the filing of the complaint on my behalf by Wolf Popper LLP.

2.     I did not purchase the securities that are the subject of the action at the direction of counsel or in order to participate in this private action.

3.     I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     During the Class Period alleged in the Complaint, I made the following transactions in Centerline common stock:

| Transaction | Trade Date | No. of Shares | Price |
|---|---|---|---|
| Buy | 6/20/2007 | 1000 | $19,438.75 |
| Buy | 6/26/2007 | 1000 | $18,809.95 |

5.     During the three-year period preceding the date of my signing this certification, I have not sought to serve, nor have I served, as a representative on behalf of a class in a private action arising under the federal securities laws.

6.     I will not accept any payment for serving as a representative party on behalf of a class except to receive my pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of February 2008.

_Deborah Dechter_
DEBORAH DECHTER

# EXHIBIT 3

## PLAINTIFF CERTIFICATION

I, Elizabeth F. Newman, hereby state:

1.      I have reviewed the draft complaint against Centerline Holding Company ("Centerline"), Marc D. Schnitzer, Robert L. Levy, Jeff T. Blau and Stephen M. Ross, and certain of its senior officers and directors, entitled <u>Dechter v. Centerline Holding Company, et. al,</u> and have authorized the filing of a motion for lead plaintiff on my behalf by Wolf Popper LLP.

2.      I did not purchase the securities that are the subject of the action at the direction of counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      During the Class Period alleged in the Complaint, I made the following transactions in Centerline common stock:

| Transaction | Trade Date | No. of Shares | Price |
|---|---|---|---|
| Buy | 6/13/07 | 900 | $19.20 |
| Buy | 6/13/07 | 600 | $19.21980 |

5.      During the three-year period preceding the date of my signing this certification, I have not sought to serve, nor have I served, as a representative on behalf of a class in a private action arising under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of a class except to receive my pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of March 2008. *Elizabeth F. Newman*

Elizabeth F. Newman

# EXHIBIT 4

## PLAINTIFF CERTIFICATION

Wai-Lam Li and Pei-Mei Li hereby state:

1.    We have reviewed the draft complaint against Centerline Holding Company ("Centerline"), Marc D. Schnitzer, Robert L. Levy, Jeff T. Blau and Stephen M. Ross, and certain of its senior officers and directors, entitled <u>Dechter v. Centerline Holding Company, et. al</u>, and have authorized the filing of a motion for lead plaintiff on our behalf by Wolf Popper LLP.

2.    We did not purchase the securities that are the subject of the action at the direction of counsel or in order to participate in this private action.

3.    We are willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    During the Class Period alleged in the Complaint, we made the following transactions in Centerline common stock:

| Transaction | Trade Date | No. of Shares | Price |
|---|---|---|---|
| **Wai-Lam Li and Pei-Mei Li Joint Account** | | | |
| Buy | 10/12/07 | 2000 | $15.33 |
| Buy | 10/17/07 | 1000 | $14.45 |
| Buy | 10/17/07 | 1000 | $14.22 |
| Buy | 10/19/07 | 1000 | $14.00 |
| Buy | 10/24/07 | 1000 | $13.60 |
| Buy | 10/29/07 | 1000 | $13.75 |
| Buy | 10/30/07 | 1000 | $13.75 |
| Buy | 10/30/07 | 1000 | $13.60 |
| Buy | 1031/07 | 1000 | $13.45 |
| Buy | 11/01/07 | 1000 | $13.45 |
| Sell | 12/21/07 | 2000 | $11.08 |
| **Wai-Lam Li ROTH IRA** | | | |
| Buy | 12/03/07 | 1765 | $11.49 |

5.    During the three-year period preceding the date of my signing this certification, we have not sought to serve, nor have we served, as a representative on behalf of a class in a private action arising under the federal securities laws.

6.    We will not accept any payment for serving as a representative party on behalf of a class except to receive my pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

We declare under penalty of perjury that the foregoing is true and correct.

Executed this _17th_ day of March 2008.

_Wai-Lam Li_
Wai-Lam Li

Executed this _17th_ day of March 2008.

_Pei-Mei Li_
Pei-Mei Li

-2-

# EXHIBIT 5

Yahoo!  My Yahoo!  Mail    Make Y! your home page          Search:                                    Web Search

**YAHOO!** ® FINANCE    **Sign In**          Finance Home - Help                    PR Newswire
                         New User? Sign Up                                          *Kind Business News*

**Welcome** [Sign In]                          To track stocks & more, Register

**Financial News**

          Enter symbol(s)                    Basic ▾   Get   Symbol Lookup

**Press Release**                              Source: Berger & Montague, P.C.

# Berger & Montague, P.C. Files Class Action Lawsuit Against Centerline Holding Company and Certain of its Officers and Directors

Friday January 18, 5:01 pm ET

PHILADELPHIA, Jan. 18 /PRNewswire/ -- The law firm of Berger & Montague, P.C. announces it has filed a class action lawsuit, Goldstein v. Centerline Holding Company, et al., No. is 08-cv-00505 (SAS), in the U.S. District Court for the Southern District of New York on behalf of all purchasers of the common stock of Centerline Holding Company ("Centerline" or the "Company") (NYSE: CHC - News) between March 12, 2007 and December 28, 2007, inclusive (the "Class Period"). The suit alleges that Centerline, its Chief Executive Officer Marc D. Schnitzer, Chief Financial Officer Robert L. Levy, Chairman Stephen M. Ross, and Managing Trustee Jeff T. Blau ("Defendants"), violated the Securities Exchange Act of 1934.

The Complaint alleges that Defendants issued a series of materially false and misleading statements about Centerline's business model and financial condition, including statements concerning its portfolio of tax-exempt first mortgage bonds, which generated the majority of the Company's revenues and supported the Company's $1.68 per share annual dividend. Defendants' statements concealed from the investing public that Defendants were in the midst of structuring a sale of the Company's mortgage revenue bond portfolio to a third party. On December 28, 2007, Centerline shocked the financial markets with a press release announcing that the Company had sold its "$2.8 billion tax-exempt affordable housing bond portfolio" to a third party and, in the process, transformed the Company's business model to a pure asset management firm. As a result of this transaction, the Company disclosed that it would be slashing its annual dividend from $1.68 per share to only $0.60 per share. Even more shocking was the revelation that Defendants had entered into a related party transaction with a company owned by certain of the Defendants called The Related Companies, L.P. ("TRCLP"), whereby TRCLP agreed to provide Centerline $131 million in financing, in exchange for 12.2 million shares of newly-issued convertible preferred stock that will pay Company insiders an 11% dividend. In reaction to this news, the price of Centerline stock plummeted from $10.27 per share on December 27, 2007, to close at $7.70 per share on December 28, 2007, representing a 25% single-day decline, on unusually heavy trading volume of 4,152,688 shares.

If you purchased Centerline common stock between March 12, 2007 and December 28, 2007 and sustained losses, you may, no later than March 18, 2008, request that the Court appoint you as lead plaintiff. A lead plaintiff is a representative party acting on behalf of other class members in directing the litigation. If you wish to discuss this action or your rights as an investor in Centerline during the Class Period, please contact Berger & Montague toll free at 1-888-891-2289 or at investorprotect@bm.net for a more thorough explanation of the lead plaintiff selection process and the litigation. A copy of the complaint is available from the Court, or can be viewed on Berger & Montague, P.C.'s website at http://www.bergermontague.com.

The law firm of Berger & Montague, P.C. consists of over 60 attorneys, all of whom represent plaintiffs in complex litigation. The Berger firm has extensive experience representing institutions and other investor plaintiffs in class action securities litigation and has played lead roles in major cases over the past 30 years that have resulted in recoveries of billions of dollars to investors. The firm has represented investors as lead counsel in such leading securities actions as *Rite Aid, Sotheby's, CIGNA, Waste Management, Sunbeam, Boston Chicken* and *IKON Office Solutions*. The standing of Berger & Montague, P.C. in successfully conducting major securities litigation has been recognized by numerous courts. For example:

        "In short, it would be hard to equal the skill class counsel

demonstrated here." In Re Rite Aid Corporation Securities
Litigation, MDL Docket No. 1360, Master File No. 99-1349 (E.D. Pa.)
($334 million settlement).

"Class Counsel did a remarkable job in representing the class
interests." In re IKON Office Solutions Securities Litigation,
Civil Action No. 98-4286 (E.D. Pa.) (partial settlement for $111
million).

"[Y]ou have acted the way lawyers at their best ought to act.
And I have had a lot of cases .... In 15 years now as a judge and I
cannot recall a significant case where I felt people were better
represented than they are here .... I would say this has been the
best representation that I have seen." In re Waste Management, Inc.
Securities Litigation, Civil Action No. 97-C7709 (N.D. Ill.) ($220
million settlement).

"The Court is aware of and attests to the skill and efficiency of
class counsel: they have been diligent in every respect, and their
briefs and arguments before the Court were of the highest quality.
The firm of Berger & Montague took the lead in the Court
proceedings; its attorneys were well prepared, articulate and
persuasive." In re CIGNA Corp. Securities Litigation, Master File
No. 2:02-CV-8088 (E.D. Pa.) ($93 million settlement).

"... [W]e have had some marvelous counsel appear before us and make
superb arguments, but they really don't come any better than Mrs.
Savett ...." In re U.S. Bioscience Securities Litigation, Civil
Action No. 92-0678 (E.D. Pa.) ($15.25 million settlement).

If you purchased Centerline common stock during the Class Period, or have any questions concerning this notice or
your rights with respect to this matter, please contact:

Sherrie R. Savett, Esq.

Barbara A. Podell, Esq.

Eric Lechtzin, Esq.

Kimberly A. Walker, Investor Relations Manager

Berger & Montague, P.C.

1622 Locust Street

Philadelphia, PA 19103

Telephone: 1-888-891-2289 or 215-875-3000

---

Source: Berger & Montague, P.C.

---

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 PR Newswire. All rights reserved. Republication or redistribution of PRNewswire content is expressly prohibited without the prior
written consent of PRNewswire. PRNewswire shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.

# EXHIBIT 6

**Summary Of Losses**

Centerline Holding Company (CHC)
Class Period:                                   3/12/2007-12/28/2007

| Plaintiff | | Loss |
|---|---|---|
| Louise Levin | $ | 150,408.53 |
| Wai-Lam Li & Pei-Mei Li | $ | 92,765.85 |
| Deborah Dechter | $ | 27,048.70 |
| Elizabeth F. Newman | $ | 22,181.88 |
| | $ | **292,404.96** |

Centerline Holding Company (CHC)
Class Period:          3/12/2007-12/28/2007

**Plaintiff:**

| *Louise Levin* | Date | Buy | Sell | Price | Cost | Proceeds |
|---|---|---|---|---|---|---|
| PURCHASES: | 11/15/2007 | 3100 | | $13.62 | $42,213.01 | |
| | 11/15/2007 | 6900 | | $13.62 | $93,957.99 | |
| | 11/15/2007 | 10000 | | $13.27 | $132,704.40 | |
| | 11/15/2007 | 1900 | | $13.27 | $25,213.84 | |
| **Total Purchases** | | **21900** | | | **$294,089.24** | |
| SALES: | | | | | | |
| | 12/31/2007 | | 3100 | $6.54 | | $20,285.47 |
| | 12/31/2007 | | 6900 | $6.74 | | $46,531.51 |
| | 12/31/2007 | | 10000 | $6.44 | | $64,430.70 |
| | 12/31/2007 | | 1900 | $6.54 | | $12,433.03 |
| **Total Sales** | | | **21900** | | | **$143,680.71** |
| | | | | | | |
| **Loss:*** | | | | | **($150,408.53)** | |

* Loss calculations are based on a Last-In-First-Out ("LIFO") methodology where Class Period sales are matched against prior Class Period purchases. Louise Levin's sale of 2,600 shares on 4/25/07, which shares were acquired on 11/16/2006, resulting in a market loss of $9,183.34, are excluded from the calculations. If that transaction were applied under a different methodology Levin would have offset proceeds of $47,084.06.

Centerline Holding Company (CHC)
Class Period:                3/12/2007-12/28/2007

**Plaintiff :**

| *Wai-Lam Li and Pei-Mei Li* | Date | Buy | Sell | Price | Cost | Proceeds |
|---|---|---|---|---|---|---|
| | 10/12/2007 | 2000 | | $15.33 | $30,660.00 | |
| | 10/17/2007 | 1000 | | $14.45 | $14,450.00 | |
| | 10/17/2007 | 1000 | | $14.22 | $14,220.00 | |
| | 10/19/2007 | 1000 | | $14.00 | $14,000.00 | |
| | 10/24/2007 | 1000 | | $13.60 | $13,600.00 | |
| | 10/29/2007 | 1000 | | $13.75 | $13,750.00 | |
| | 10/30/2007 | 1000 | | $13.75 | $13,750.00 | |
| | 10/30/2007 | 1000 | | $13.60 | $13,600.00 | |
| | 10/31/2007 | 1000 | | $13.45 | $13,450.00 | |
| | 11/1/2007 | 1000 | | $13.45 | $13,450.00 | |
| | 12/3/2007 | 1765 | | $11.49 | $20,279.85 | |
| **Total Purchases** | | **12765** | | | **$175,209.85** | |
| | 12/21/2007 | | 2000 | $11.08 | | $22,160.00 |
| **Total Sales** | | | **2000** | **$11.08** | | **$22,160.00** |

| | | |
|---|---|---|
| 1 Average Close 12/31/08-3/18/08: | $5.60 |
| 2 Retained Shares | 10,765.00 |
| 3 Value of Retained Shares | $60,284.00 |
| 4 Value of Retained Share + Sales Proceeds: | $82,444.00 |
| 5 LOSS: | ($92,765.85) |

Centerline Holding Company (CHC)
Class Period:              3/12/2007 - 12/28/2007

**Plaintiff :**

| *Deborah Dechter* | Date | Buy | Price | Cost |
|---|---|---|---|---|
| Buy | 6/20/2007 | 1000 | $19.44 | $19,438.75 |
| Buy | 6/26/2007 | 1000 | $18.81 | $18,809.95 |
| **Total** | | **2000** | **$38.25** | **$38,248.70** |

| | | |
|---|---|---|
| 1 **Average Close 12/31/08-3/18/08:** | $5.60 |
| 2 **Retained Shares** | 2,000.00 |
| 3 **Value of Retained Shares** | $11,200.00 |
| 4 **Value of Retained Share + Sales Proceeds:** | $11,200.00 |
| 5 **LOSS:** | ($27,048.70) |

Centerline Holding Company (CHC)
Class Period:                3/12/2007 - 12/28/2007

**Plaintiff :**

| *Elizabeth F. Newman* | Date | Buy | Sell | Price | Cost | Proceeds |
|---|---|---|---|---|---|---|
|  | 6/13/2007 | 900 |  | $19.20 | $17,280.00 |  |
|  | 6/13/2007 | 600 |  | $19.22 | $11,531.88 |  |
| **Total Purchases** |  | **1500** |  | **$38.42** | **$28,811.88** |  |
|  | 3/6/2008 |  | 1500 | $4.42 |  | $6,630.00 |
| **Total Sales** |  |  | **1500** |  |  | **$6,630.00** |

| | |
|---|---|
| **1 Average Close 12/31/08-3/18/08:** | $5.60 |
| **2 Retained Shares** | - |
| **3 Value of Retained Shares** | $0.00 |
| **4 Value of Retained Share + Sales Proceeds:** | $6,630.00 |
| **5 LOSS:** | ($22,181.88) |

# EXHIBIT 7

### BIOGRAPHICAL SKETCH OF WOLF POPPER LLP

Wolf Popper LLP ("Wolf Popper" or "the Firm") is a nationally recognized law firm with decades of experience in the field of securities and consumer class actions and securities derivative actions. Since the Firm was founded in 1945, Wolf Popper has been a leader in efforts to protect the interests of defrauded investors and consumers, prosecuting hundreds of actions under federal and state laws throughout the United States. The Firm's efforts have resulted in the recovery of billions for aggrieved parties.

The Firm also has a substantial practice in corporate and commercial law. Wolf Popper's commercial litigation practice encompasses the representation of defendants as well as plaintiffs. The Firm's corporate practice includes business transactions, and the law of foreign missions. Among the Firm's clients are domestic and international individuals and businesses, and foreign missions to the United Nations.

The Firm's members have been on the faculty of the Practicing Law Institute and are active members in a variety of professional legal associations, including serving on or chairing a number of committees of such associations. The Firm's members include graduates from the law schools of Harvard, Columbia, and New York University, and many of the Firm's members have written extensively on a variety of subjects for numerous professional associations and legal periodicals. Many of the Firm's current and former members have held responsible positions in government both at the federal and the state level. For example, Benedict Wolf (now deceased) was the First Secretary and Chief Trial Examiner of the National Labor Relations Board, and Martin Popper (now deceased) was a consultant to the U.S. Delegation to the Founding Conference of the United Nations and was vice-president of the Consular Law Society.

Wolf Popper has an exemplary record in its representation of plaintiffs, and the skill and experience of the attorneys at the Firm have been repeatedly recognized by Courts throughout the country. In recognition of its high standing at the bar, Courts have frequently appointed Wolf Popper to serve as lead or co-lead counsel in complex, multi-party actions, including securities and antitrust actions. Recently five Wolf Popper attorneys were selected as New York "Super Lawyers"® for 2007. This selection represents the top 5% of attorneys practicing in New York City. Robert M. Kornreich, Marian P. Rosner, Robert C. Finkel, and Patricia I. Avery were recognized in the Securities Litigation category and Lester L. Levy was recognized in the Consumer and Class Action category.

Wolf Popper has achieved notable and significant successes over the years, some of which are detailed below. Most recently, the Firm was appointed by the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York as Co-Lead Counsel in an ERISA action brought on behalf of participants and beneficiaries who acquired interests in Citigroup common stock through certain Citigroup 401(k) employee benefit plans. The action alleges that defendants breached their fiduciary duties under ERISA by imprudently investing participants' assets in Citigroup common stock despite the fact that such investment posed an undue risk due to, inter alia, (i) Citigroup's underwriting of subprime and "low documentation" loans, (ii) undisclosed losses owing to such subprime loans and (iii) Citigroup's involvement in issuing commercial paper through off-balance-sheet structured investment vehicles (SIVs).

Wolf Popper LLP
Page -2-

A sample of some of the outstanding recoveries achieved and decisions obtained by the Firm is described below.

**Securities Actions:**

- In the Motorola Securities Litigation, 03C287 (RRP) (N.D. Ill.), Wolf Popper represented the Lead Plaintiff, the State of New Jersey, Department of Treasury, Division of Investment. On the eve of trial, the defendants paid $190,000,000 to the class to resolve the federal securities litigation. This recovery was obtained after more than four years of litigation. During the litigation, Wolf Popper, among other things, defeated Motorola's motion to dismiss the complaint (2004 U.S. Dist. LEXIS 18250 (Sept. 9, 2004, N.D. Ill.)) and Motorola's motions for summary judgment (2007 U.S. Dist. LEXIS 9530 (Feb. 8, 2007, N.D. Ill.)).

- In Thurber v. Mattel, Master File No. CV-99-10368-MRP(CWx) (C.D. Cal.) (§10(b) claims) and Dusek v. Mattel, Master File No. CV-99-10864-MRP(CWx) (C.D. Cal.) (§14(a) claims), Wolf Popper was a member of the Executive Committee of Plaintiffs' counsel, but was also specifically appointed by the Federal Court to have primary responsibility for the prosecution of the Dusek v. Mattel §14(a) claims. After more than three years of extremely hard-fought litigation, including two rounds of motions to dismiss, the production of millions of documents, and the taking or defending of more than 40 depositions, both cases settled for the aggregate sum of $122 million, with $61 million allocated for the Dusek v. Mattel §14(a) claims, believed to be the largest settlement of a §14(a) case. Upon approving the settlement, the Judge complimented counsel saying that the settlement was an "awfully good result." The Judge also specifically found that "Wolf Popper LLP vigorously prosecuted the Dusek action and zealously represented the interests of the Dusek class members" and that Wolf Popper zealously performed in a "very capable and professional manner."

- In Middlesex Retirement System v. Quest Software, Inc., No. 06-06863-DOC(RNBx) (C.D. Cal.), Wolf Popper was appointed lead counsel in a federal securities class action against Quest Software, Inc. ("Quest"), a company that designs, develops, distributes and supports software products. The case is based on allegations that Quest issued materially false and misleading statements to cover up its failure to account properly for backdated stock options, causing Quest's operating and net income to be overstated and its stock price to be artificially inflated. Following comprehensive briefing opposing defendants' motion to dismiss, the Court on October 22, 2007, denied virtually all of defendants' motion. The litigation is proceeding.

- Wolf Popper LLP was a co-lead settlement counsel for the plaintiff class in In re Service Corporation Internat'l, Civil Action No. H-99-280 (S.D. Tex.). The action alleged that defendants made material misrepresentations in connection with Service Corp.'s January 1999 stock-for-stock acquisition of Equity Corp. International. Based on the strength of the amended complaint, and presentation at mediation sessions, Wolf Popper recovered $63 million for the plaintiff class. The settlement, approved in 2004, was an extraordinary recovery inasmuch as there were no allegations of insider trading, a SEC investigation, or an accounting restatement, and the District Court had spent over four years deliberating over defendants' motion to dismiss the complaint, lessening plaintiffs' leverage in settlement negotiations.

Wolf Popper LLP
Page -3-

- In <u>Stanley v. Safeskin</u>, Lead Case No. 99cv454-BTM(LSP) (S.D. Cal.), Wolf Popper served as Court-appointed Co-lead Counsel for Plaintiffs, in which the Court approved a $55 million settlement in favor of plaintiffs on March 20, 2003. The Honorable Barry T. Moskowitz thereafter complimented Plaintiffs' Co-Lead Counsel, noting his "incredible respect for the work that the lawyers did." Describing Plaintiffs' counsel as "highly skilled in these cases," Judge Moskowitz commented that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ." The Court subsequently further complimented Co-Lead Counsel, stating that "competency is too weak of a word -- the extraordinary ability of these firms * * * I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard." Paying Plaintiffs' Co-Lead Counsel perhaps an ultimate compliment, the Court further said, "From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case."

- In <u>Buxbaum v. Deutsche Bank, A.G.</u>, 98 Civ. 8460 (JGK) (S.D.N.Y.), Wolf Popper recovered $58 million as co-lead counsel in a major securities fraud action against Deutsche Bank, A.G. and its senior officer. The action alleged that Deutsche Bank defrauded Bankers Trust shareholders by misrepresenting the status of takeover negotiations for Deutsche Bank to acquire Bankers Trust. The District Court's opinion denying defendants' motion to dismiss is reported at Fed. Sec. L. Rep. (CCH) ¶90,969 (S.D.N.Y. 2000). The decision denying defendants' motion for summary judgment is reported at 2002 U.S. Dist. LEXIS 1893 (S.D.N.Y., Jan. 30, 2002). The $58 million recovery, obtained on the eve of trial, was equivalent to approximately 48% of the class' maximum possible recovery, and approximately 96% of the class' most likely recovery.

- In <u>In re Sunbeam Sec. Litig.</u>, 98-8258-Civ.-Middlebrooks (S.D. Fl.), Wolf Popper was appointed co-lead counsel. The case was brought against Sunbeam, its auditors, and former officers and directors of the company, including "Chainsaw" Al Dunlap. Plaintiffs reached a partial settlement with Sunbeam's auditors, Arthur Andersen, for $110 million - one of the largest settlements ever with an accounting firm in a securities class action - and reached a separate settlement with the individual defendants that included more than $18 million in cash plus a separate $13 million recovery from the company's excess insurance policies.

- In <u>In re Providian Financial Sec. Litig.</u>, MDL No. 1301 (E.D. Pa.), Wolf Popper was co-lead counsel for the plaintiff class and obtained a $38 million recovery from the defendants. The Court, in approving the settlement in June 2002, remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work, which the Court stated it had seen throughout the litigation. The Court also noted the "extremely high quality" of Wolf Popper's work is reflected in the result which it obtained and in the fact that it is a nationally prominent firm with extensive experience in the field.

- Wolf Popper was co-lead counsel in <u>In re FTD.com, Inc. Shareholder Litig.</u>, C.A. No. 19458-NC (Del. Ch.), an action in Delaware Chancery Court that alleged that members of the board of directors of FTD.com abused their control of the company by taking FTD.com private under terms advantageous to them but not to FTD.com's public shareholders. After mediation, co-lead counsel obtained a recovery which came to more than 99% of the damages claimed by members of the class.

Wolf Popper LLP
Page -4-

- In <u>Danis v. USN Communications, Inc.</u>, No. 98 C 7482 (N.D. Ill., May 30, 2001), the Court recently approved a settlement Wolf Popper obtained of approximately $45 million for investors, expressly thanking Plaintiffs' co-lead counsel "for all the work you have done and constructive results."

- In an arbitration before a court appointed arbitrator in <u>Retsky Family Limited Partnership v. Price Waterhouse LLP</u>, No. 97 C 7694 (N.D. Ill., June 18, 2001), after a full hearing and several days of testimony, the arbitrator awarded plaintiffs the total damages claimed.

- Wolf Popper achieved a benefit of over $50 million in the settlement of the litigation over the merger of the American Stock Exchange and the NASD in <u>Philipson v. American Stock Exchange</u>, 98 Civ. 4219 (DC) (S.D.N.Y., Transcript of Proceedings, February 18, 1999, at 8-11), in which the Court complimented the Firm for its "terrific job" in negotiating a "substantial [recovery]."

- Wolf Popper was co-lead counsel in <u>In re Chambers Development Co. Sec. Litig.</u>, C.A. No. 92-0679 (W.D. Pa.) that resulted in a $95 million cash settlement for the class in 1996.

- Wolf Popper was the Chair of Plaintiffs' Executive and Scheduling Committees in the consolidated litigation arising out of the national scandal at Wedtech Corporation. <u>In re Wedtech Sec. Litig.</u>, M 21-36 (LBS) MDL 735 (S.D.N.Y.). The action was settled in 1992 for $77.5 million, one of the then largest settlements in a securities fraud action.

- Wolf Popper served as co-lead counsel in <u>In re Prime Motor Inns Shareholder Litig.</u>, Master File No. 90-87 (DRD) (D.N.J.). At the conclusion of the case in 1993, Judge Debevoise complimented plaintiffs' counsel, stating, "The plaintiffs' attorneys have performed their work aggressively, skillfully and with good effect."

- Wolf Popper served as a member of Plaintiffs' Executive Committee and as Plaintiffs' Lead Settlement Counsel in <u>In re Gulf Oil/Cities Service Tender Offer Litig.</u>, 82 Civ. 5253 (MBM) (S.D.N.Y.), where a settlement of $34 million, achieved only after the case was fully prepared for trial, was approved by the Court in May 1992.

- Wolf Popper was the plaintiffs' co-trial counsel in <u>Bella Abzug, et ano. v. Kerkorian, et al.</u>, CA 000981, Superior Court, Los Angeles, California, which was settled during trial in October 1990 for $35 million.

- Wolf Popper was the plaintiffs' co-lead counsel in a litigation that resulted in the then largest recovery in the history of securities class actions. In re The Standard Oil Company/British Petroleum Litig., Consolidated Case No. 12676, Court of Common Pleas, Cuyahoga County, Ohio, plaintiffs' counsel negotiated and obtained a benefit for the class in excess of $600 million. In its ruling which approved in full counsels' application for attorneys' fees, the Court commented favorably on the quality of co-lead counsel:

> The professional skill required to achieve the resultant benefits to this Class has been evidenced on nearly a daily basis by this Court.

Wolf Popper LLP
Page -5-

As a result of this professional skill and excellent representation, these benefits to the Class would not have otherwise been achieved.

The Court has fully weighed in its decision the benefits bestowed on the Class. At this juncture the Court finds that the benefit is unprecedented.

●     Wolf Popper was co-lead counsel in the case producing the largest recovery in a securities class action prior to the Standard Oil litigation. In Joseph, et al v. Shell Oil Company, et al., Consolidated Civil Action No. 7450 (Del. Ch., April 19, 1985), the plaintiff stockholders successfully petitioned the Delaware Chancery Court to enjoin the proposed merger of Shell Oil Company and Royal Dutch Petroleum Company, 482 A.2d 335, Del. Ch. 1984). In approving the $205 million recovery in the Shell Oil Litigation, Vice Chancellor Maurice Hartnett stated: "The results achieved in this case for the class are outstanding."

●     Wolf Popper played a major role in representing the rights of shareholders in the notorious Boesky/Drexel/Milken trading scandal involving Ivan F. Boesky, Dennis B. Levine, Kidder Peabody & Co. Incorporated, Goldman, Sachs & Co., Drexel, Michael R. Milken, and others. These actions arose from the illegal use by various individuals of non-public information about publicly traded corporations, conveyed to them from high level executives at these large investment firms, to reap illicit profits for personal gain. Wolf Popper was appointed co-lead counsel in several of these actions, including the Boesky insider trading class litigation pending in the Southern District of New York, to represent classes of shareholders who suffered losses as a result of these illicit activities. In re Ivan F. Boesky Sec. Litig., MDL 732, MDL-21-45-MP (S.D.N.Y.). The Firm is also one of the lead counsel in the Drexel/Milken litigation also pending in the Southern District of New York. In re Drexel Burnham Lambert Group Inc., et al., Debtors, 90 Civ. 6954 (MP), 90-B-10421 (FGC) (S.D.N.Y.). After intensive litigation, the Firm helped recover in excess of $800 million for investors. In the global settlement of these Milken related litigations, the Court specifically certified a worldwide class of investors after notice was given throughout the world, in addition to publications in newspapers worldwide.

●     Wolf Popper was a court-appointed co-lead counsel representing a class of Salomon Brothers securities purchasers who brought an action under the federal securities laws arising out of violations of rules of the United States Department of the Treasury in connection with certain auctions of government securities, In re Salomon Brothers Inc. Sec. Litig., 91 Civ. 5442 (RPP) (S.D.N.Y.). The litigation ultimately settled for over $54 million.

●     The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, Heckmann v. Ahmanson, C.A. 000851 (Superior Court, Cal.) (co-lead counsel for derivative actions). There the Los Angeles Superior Court in September 1989 approved a settlement providing for a cash payment of $45 million plus the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

Numerous other cases in which the Firm acted as sole lead or co-lead counsel for plaintiffs resulted in multi-million dollar settlements in favor of plaintiffs, including, for example:

Wolf Popper LLP
Page -6-

- In re Grand Casinos, Inc. Sec. Litig., Master File No. 4-96-890 (JRT/RLE) (settled in August 2001; in one of the very early decisions under the Private Securities Litigation Reform Act of 1995, the court sustained various claims finding that plaintiffs met rigorous pleading standards of the then new Act, 988 F. Supp. 1270 (D. Minn. 1997));
- Jonas v. Aspec Technology, Inc., Lead Case No. CV775037 (Superior Court of the State of California, County of Santa Clara (approved in 2001);
- In re Adac Laboratories Sec. Litig., Master File No. C-98-4934-MHP;
- In re Exide Corp. Sec. Litig., 98-CV-60061-AA (E.D. Mich.)
- In re Archer Daniels Midland Co. Securities Litig., (C.D. Ill.) ($30 million recovery approved in 1997);
- In re JWP, Inc. Sec. Litig.,Master File No. 92 Civ. 5815 (S.D.N.Y.) (recovery of $36.2 million from officers, directors, and outside auditors, approved in 1996);
- Polikoff v. Eamer, Case No. BC039354 (Superior Court, Los Angeles, Cal.) ( equitable and therapeutic relief in addition to substantial damages approved  in 1996);
- PS Group Inc. Sec. Litig., Master File No. 93-2046 (C.D. Ill., October 1995) (approved in 1995);
- In re Pacific Enterprises Sec. Litig., CV920841 JSL (EEx) (C.D. Ca., March 28, 1994) ($35 million recovery approved in 1994)(where the Judge complimented plaintiffs' co-lead counsel as being "outstanding lawyers" who "could not be improved on for this kind of litigation," and "this group of lawyers merits [respect].");
- In re American Business Computers Corporation Sec. Litig., Docket No. MDL 913 (CLB) (S.D.N.Y.)
- In re McDonnell Douglas Equipment Leasing Sec. Litig., MDL No. 873 (S.D.N.Y.)(the Court described the Firm as "experienced and competent counsel");
- In re: Fleet/Norstar Sec. Litig., C.A. No. 90-0173-B (FJB)(D.R.I.);
- In re Marion Merrell Dow Inc. Sec. Litig., Master File No. 92-0609-CV-W-6 (W.D. Mo.);
- Hwang v. Smith Corona Corp., CA B 89-450 (TFGD) (D. Conn.) ($24.5 million recovery);
- Pill v. Metromedia, (Del. Ch. Court);
- Watkins v. Beatrice, (Del. Ch. Court) ($190 million recovery);
- In re International Systems & Controls Sec. Litig., MDL 440 (S.D. Tex.) (recovery for the class members of 100% of their damages);
- American Southwest Mortgage Sec. Litig., Civ. 89-462 TUC RMB (D. Az. 1992);
- Seidman v. Stauffer Chemical Co., (D.Conn.);
- Flohr v. Borman's, (S.D.N.Y.) (recovery for class members of over 90% of their damages);
- In re Elscint, Ltd. Sec. Litig., MDL 675 (D. Mass.);
- Zinberg v. Washington Bancorp, Inc., (D.N.J.) (recovery for the class members of 200% of their damages);
- In re Philips N.V. Sec. Litig., Master File 90 Civ. 3044 (RPP) (S.D.N.Y.);
- Rand v. Lorimar, 88 Civ. 3179 (LLS) (S.D.N.Y.);
- In re Jefferson Smurfit Corporation Shareholders' Litig., consolidated C.A. No. 11006 (Del. Ch.);
- In re National Education Corp. Sec. Litig., Master File No. SACV-89-405-AHS (RWRX) (C.D. Cal.);
- In re Phillips Petroleum Sec. Litig., Master File No. Misc. 85-75-MMS (D. Del.);

Wolf Popper LLP
Page -7-

- <u>Fine, et al. v. Houston Oil Trust, et al.</u>, C.A. No. H-82-551 (S.D. Tex.) (settlement of approximately $45 million);
- <u>In re Beverly Enterprises Sec. Litig.</u>, Master File No. CV-88-01189 (RSWL) (Tx) (C.D. Cal.);
- <u>In re Tenneco Inc. Sec. Litig.</u>, Master File No. H-912010 (S.D. Tex.) ($50 million settlement);
- <u>In re Telerate, Inc. Shareholders Litig.</u>, Civil Action No. 1115 (consolidated) (Del. Ch.) (acquiring company required to pay $3 more per share);
- <u>In re Henley Manufacturing Corporation Shareholders Litig.</u>, Consolidated Civil Action No. 10445 (Del. Ch.) (class recovery of $10 per share increase in tender offer price, a $26 million benefit, plus additional therapeutic benefits);
- <u>In re Kaypro Corporation Shareholder Litig.</u>, Master File No. 84-2091 N(M) (S.D. Cal.);
- <u>Rand v. Lorimar Telepictures Corp.</u>, 88 Civ. 3179 (LLS) (S.D.N.Y.);
- <u>Grobow v. Dingman</u>, Civil No. 575076 (Superior Court, Cal.) and Civil No. 87-0889 JLI (IEG) (S.D. Cal.) (settlement, comprised of monetary and equitable relief, valued by experts at in excess of $52 million, of federal and state class and derivative actions);
- <u>In re E.F. Hutton Banking Practices Litig.</u>, MDL No. 649 (WK);
- <u>Weinberger v. Shumway</u>, Civil No. 547586 (Superior Court., Cal.);
- <u>In re Saxon Sec. Litig.</u>, 82 Civ. 3103 (S.D.N.Y.);
- <u>Rubenfeld and Polikoff v. Harte-Hanks Communications, Inc.</u> Civil Action Nos. 7558, 7565 (Del. Ch.);
- <u>Bacine v. Scharffenberger</u>, C.A. 7862 (Del. Ch.);
- <u>In re Itel Sec. Litig.</u>, C-79-2168A (N.D. Cal.) ($40 million recovery);
- <u>In re United States Surgical Corp.</u>, (D. Conn. No. B-83-775);
- <u>In re Digital Equipment Corporation Sec. Litig.</u>, Master File No. CA 83-3255 Y (D. Mass.).

***Consumer Class Actions:***

Wolf Popper's strong presence in prosecuting class actions on behalf of defrauded consumers has similarly resulted in the return of millions of dollars to thousands of victims of unfair business practices. These litigations in which the Firm served as sole lead or co-lead counsel include, among others:

- <u>In re Coordinated Title Insurance Cases</u>, Index No. 009600/03 (Sup. Ct., Nassau County, NY), a New York consumer fraud action brought against various Title Insurance Companies for their failure to charge the discounted rate for title insurance premiums in qualified refinancing transactions and their failure to provide borrowers with notice of the discount. In approving the settlement of over $31 million, one of the largest consumer class actions in the history of that court, at the hearing held on July 29, 2005, the court stated:

> And it's this Court's very strong opinion that what we have had before
> us on all sides – Plaintiffs' side, which involves two firms, and the
> Defendants, eight Defendants which involve five firms representing the
> eight different Defendants – was lawyering of the highest quality. It's
> always enjoyable for the Court to have high quality lawyering in front of
> it. It's always my opinion that it raises the level of the Bench when the

Wolf Popper LLP
Page -8-

lawyers before it proceed in a very high fashion, which has happened in this case.

- <u>Sims v. First Consumers National Bank</u>, Index No. 01/604536 (Sup. Ct., NY County), this consumer fraud action challenged the misleading disclosure of fees in fine print in connection with the issuance of the bank's credit cards. The lower court's dismissal of the action was unanimously reversed by the appellate court and the action was settled in 2005 with a recovery of 100% of the damages for the class.

- <u>Canning v. Concord EFS, Inc.</u>, Docket No. L-6609-02 (Super. Ct., NJ, Law Division, Camden County), a consumer fraud action brought in New Jersey on behalf of recipients of certain public assistance benefits who were being illegally surcharged to access their benefits through ATM machines. The settlement, approved in May 2005, provided for a recovery of 90% of the surcharges and an injunction halting the illegal surcharging.

- <u>Taylor v. American Bankers Insurance Group, Inc.</u>, 700 N.Y.S.2d 458 (App. Div., 1st Dept.1999), in which the Firm successfully defended against an appeal by defendants of the certification of a nationwide class on behalf of consumers who alleged that defendants had violated §§349 and 350 of the General Business Law by misleading consumers about the purchase of insurance and improperly denying insurance claims. The Firm achieved a complete recovery for class members as defendants agreed to pay class members' disputed coverage claims in full, as well as revise their solicitations to prevent a recurrence.

- <u>Champod v. Iomega Corp.</u>, No. 98/600887 (Sup. Ct, N.Y. Cty. 1999), in which purchasers of computer storage devices alleged that the product could not read certain tapes that it was advertised as being capable of reading, and that they were improperly charged for customer assistance calls. The Firm achieved a settlement that provided a software fix to correct the problem with reading the tapes or, if not corrected, ultimately provided for a return of the product; the Firm also obtained a refund of 50% of the charges for the customer assistance calls.

- <u>Princeton Economics Group, Inc. v. American Telephone & Telegraph Co.</u>, Civil Action No. L-91-3221 (N.J. Super. Ct. 1995), the largest class action ever brought in New Jersey State Court. The action, based upon AT&T's marketing and sales of a telephone system that it advertised as well suited to small businesses because of its "conference call" features, revealed that the phone system did not function as advertised. The participants to calls could not hear each other because the conference feature lacked amplification. This litigation resulted in a settlement valued by the Court at $85-90 million. At the conclusion of the case, the Court noted the complexity and difficulty of the issues involved and favorably commented that, "[i]f not for the skill and experience of class counsel, a settlement may not have been reached or, if it had been reached, may have resulted in a significantly diminished recovery for the class."

- <u>Tanzer v. HIP</u>, (1997 WL 773695), in a unanimous decision obtained by the Firm, the New York Court of Appeals, New York's highest court, upheld a class action complaint on behalf of insureds who had been denied medical insurance coverage. The Firm subsequently obtained partial summary judgment against HIP for breach of HIP's contract with its health insurance subscribers for

Wolf Popper LLP
Page -9-

failing to reimburse the subscribers for anesthesia-related expenses in conjunction with surgical procedures performed in New York State since June 7, 1993. Tanzer v. HIP, Index No. 114263-95, slip op., January 27, 1999. Ultimately, a settlement was reached which paid members of the class 100% of their damages.

- Feinberg v. Empire Blue Cross-Blue Shield Consumer Litig., 88 Civ. 2532 (RO) (S.D.N.Y.), in which participants in a Blue Cross Blue Shield medical insurance program alleged that the program breached its contract with customers by paying subscribers amounts below the "usual and customary" rates that it represented it would pay in its contract of insurance. The action was ultimately settled with Empire agreeing to reimburse subscribers.

### Transactional Litigation

Wolf Popper's transactional litigation department has represented plaintiffs in Delaware and other states' courts when investors in merged or acquired companies are offered inadequate compensation for their stock or are provided inadequate information to allow such investors to make an informed decision whether to vote for such a transaction, tender their shares in a tender offer, or seek appraisal. Examples of merger and acquisition litigation challenging such transactions where Wolf Popper acted as lead or co-lead counsel and contributed to the benefit include:

- Rice v. Lafarge North America, Inc., Civ. No. 268974-V (Md. Cir.) ($383 million aggregate benefit)
- In re Aramark Corp. Shareholders Litig., Consol. C.A. No. 2117-N (Del. Ch.) ($222 million aggregate benefit).
- In re Nortek, Inc. Shareholder Litig., Consol. C.A. No. 19538-NC (Del. Ch.) ($63 million aggregate benefit)
- In re New Valley Corp. Shareholder Litig., Consol. C.A. No. 1678-N (Del. Ch.) ($28 million aggregate benefit).
- In re Net2Phone, Inc. Shareholders Litig., Consol. C.A. No. 1467-N (Del. Ch.)
- In re William Lyon Homes Shareholder Litig., Consol. C.A. No. 2015-N (Del. Ch.)
- In re ftd.com Inc. Shareholder Litig., Consol. C.A. No. 19458 (Del. Ch.)

Wolf Popper has served as lead or co-lead counsel in other cases challenging transactions involving, among others: The Topps Co., EDO Corp., James River Group, Inc., CentraCore Properties Trust, Bioenvision, Inc., Mossimo, Inc., Genencor International Inc., Uni-Marts, Inc., Nassda Corp., and Chaparral Steel, Co.

### Antitrust Actions:

Wolf Popper's antitrust department has represented plaintiffs nationwide in price fixing cases and other violations of the federal antitrust laws. For example, in In the Matter of the Ocean Shipping Antitrust Litig., MDL 395 (S.D.N.Y.) Wolf Popper was co-lead counsel and recovered over $50 million on behalf of transatlantic shippers of goods who brought an action against the leading carriers of containerized shipping in the United States-Europe trade for conspiracy to fix the charges made for shipping services. The Firm served as lead or co-lead counsel in numerous other antitrust class actions, including: Wholesale Tobacco Distributors antitrust litigation and in In re Milk Antitrust Litig., 81 Civ.

Wolf Popper LLP
Page -10-

1963 (RO), (S.D.N.Y. 1981); In re Bread Antitrust Litig., Master File No. CV-85-2013 (CPS) (E.D.N.Y.); In re Shopping Carts Antitrust Litig., M.D.L. No. 451 (S.D.N.Y.); In re Wiring Device Antitrust Litig., MDL 331 (E.D.N.Y.) (where Chief Judge Weinstein described counsel for the plaintiffs as "outstanding and skillful").

### *Environmental Or Health Actions:*

The Firm's strong commitment to and experience in class actions concerning environmental or health matters is demonstrated by the Firm's strong presence and important roles in several cases arising from environmental disaster and health hazards. These include, among other cases, In re Exxon Valdez Oil Spill Litig., 3AN-89-2533 Civil (Sup. Ct. Alaska) and A-89-095 Civil (D. Alaska) in which the jury awarded judgment for the plaintiffs in the amount of $5 billion; In re Asbestos School Litig., 83-0268 (E.D. Pa.); Holifield v. BP America, Inc., CV-90-0722 RJX (C.D. Cal.); In re Johns-Manville Corporation, Debtors, 82 B 11656-11676 (BRL) (Bkr. S.D.N.Y.); and Ross v. A. H. Robins, Inc., 77 Civ. 1407 (CBM).

### *Trial Experience:*

One of the reasons Wolf Popper maintains a favorable, formidable reputation is because of the Firm's demonstrated willingness to prosecute cases through trial in order to achieve a favorable result for our clients. The Firm's trial (and arbitration) experience includes, among other cases:

- Zuckerman v. FoxMeyer Health Corp., 3-96-CV 2258-L (N.D. Tex. 2002), where Wolf Popper successfully prosecuted a mini-trial before a former Magistrate Judge from the N.D. Cal. in the context of an ADR Proceeding to determine a binding fair value of a settlement of the action. Notwithstanding the fact that the defendant company was on the brink of insolvency (and subsequently filed for bankruptcy), the company providing the initial layer of insurance coverage was in liquidation, and the individual defendants were not wealthy, after presentation of the evidence, the neutral arbiter determined in plaintiffs' favor.

- In an arbitration before a court appointed arbitrator in Retsky Family Limited Partnership v. Price Waterhouse LLP, No. 97 C 7694 (N.D. Ill., June 18, 2001), after a full hearing and several days of testimony, the arbitrator awarded plaintiffs the total damages claimed.

- The Firm served as arbitration counsel in 1997, 1998, and 1999 in several extensive commercial arbitrations on behalf of an international airline.

- Plaintiffs' co-trial counsel in Abzug, et ano. v. Kerkorian, et al., CA 000981, Superior Court, Los Angeles, California, which was settled during trial in October 1990 for $35 million.

- The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, Heckmann v. Ahmanson, C.A. 000851 (Superior Court, Cal.) (co-lead counsel for derivative actions). There the Los Angeles Superior Court in September 1989 approved a settlement at trial providing for a cash payment of $45 million plus

Wolf Popper LLP
Page -11-

the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

- _Citron v. E.I. duPont de Nemours & Co._, Del. Ch. (Civil Action No. 6219), in Delaware Chancery Court in which the Vice-Chancellor complimented plaintiffs' counsel "for the able way in which they presented the case," their "well-done" pre-trial briefs, and the "good job" done.

- _Odmark v. Westside Bancorporation, Inc._, No. C85-1099R (W.D. Wash.), settled mid-way through trial in Seattle, Washington.

- Co-trial counsel for a plaintiff class in _Kreindler v. Sambo's_, 79 Civ. 4538 (WK)(S.D.N.Y.), which was settled during trial.

- Co-counsel for the plaintiff class in the successful trial of _Sirota v. Solitron Devices, Inc._, 75 Civ. 1383 (CLB) (S.D.N.Y.), a complex securities fraud class action prosecuted under §10(b) of the Securities Exchange Act of 1934. After an eleven-day trial, the jury brought in a verdict for the plaintiff class on all issues of liability and damages which was sustained on appeal. See _Sirota v. Solitron Devices, Inc._, 673 F.2d 566 (2d Cir. 1982).

- _Baum v. Centronics Data Computer Corp._, 85-363-L (D.N.H.), settled after trial had commenced in New Hampshire.

- The Firm also has tried several other actions on behalf of plaintiff classes in securities actions in Delaware and elsewhere.

### Court Commentary On The Firm:

Throughout the history of the Firm, the Courts before whom Wolf Popper has appeared have commented favorably and repeatedly on the ability, expertise, and performance of the Firm and its members. A sampling of some of the praise the Firm has consistently received over the course of its practice include the following cases:

- In approving the $190,000,000 recovery for the Class in the _Motorola Sec. Litig._, 03C287 (N.D. Ill.), where Wolf Popper represented the lead plaintiff, the Court stated as follows "You did a great very professional job here. This was a hard fought, but extremely professionally fought battle and I appreciate it. Thank you."

- In _Dusek v. Mattel_, Master File No. CV-99-10864-MRP (CWx) (C.D. Cal.), in approving the settlement of the action along with a companion action, for $122 million, the Judge, in her Findings of Fact and Conclusions of Law entered on November 6, 2003, complimented counsel saying that "Wolf Popper LLP vigorously prosecuted the _Dusek_ action and zealously represented the interests of the _Dusek_ Class members," and that Wolf Popper performed in a "very capable and professional manner."

Wolf Popper LLP
Page -12-

- The Firm served as Co-Lead Counsel for plaintiffs in <u>Stanley v. Safeskin</u>, Lead Case No. 99cv454-BTM(LSP) (S.D. Cal.), in which the Judge noted in approving a $55 million settlement that "Plaintiffs' counsel are highly skilled in these cases" and that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ." The Honorable Barry T. Moskowitz subsequently further complimented Co-Lead Counsel at a hearing on November 20, 2003, stating:

> I think I learned more about the honorability of the firms and the competency -- and competency is too weak of a word -- the extraordinary ability of these firms in handling the cost aspects of it, and expenses aspect of it, . . .I don't think I've seen lawyers so honest with the Court . . . .I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard.
>
> * * *
>
> And it's not usual that the court sees lawyers behave -- we usually see them behave well, but this is extraordinarily positive. And I wanted to make that notation. . . I can -- come out of it having incredible respect for the work that the lawyers did in this case.
>
> * * *
>
> From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case.

- In approving the settlement of the <u>In re Exide Corp. Sec. Litig.</u>, Case No. 98-CV-60061-AA (E.D. Mich., Transcript of Proceedings, September 2, 1999, at 34, 35-6), the Honorable George Caram Steeh complimented the Firm for its diligence and skill, saying:

> The court is satisfied indeed that the settlement that was reached in arm's length bargaining, that was undertaken only after very thorough preparation on the part of plaintiff's counsel. That the counsel itself was extremely competent and considerable experience in pursuing such matters. . . .
>
> * * *
>
> So the court is satisfied that the attorneys on both sides of this litigation should be commended for their effort and professionalism in developing and presenting the issues and for their common sense in arriving at the settlement as it has been presented to the court for confirmation.

- In the <u>In re Marketspan Corporation /LILCO Shareholder Litig.</u>, Index No. 15731/98 (Sup. Ct., NY, Transcript of Proceedings, April 28, 1999, at 9), Justice Ute Wolff Lally commended the Firm when he preliminarily approved a proposed settlement, stating:

> Let me first state that having had the stipulation of settlement prior to today, I have, of course, perused it at length, and I want to thank and I want to commend the executive committee and the head law firm, Wolf Popper, in adhering to the timetable which this Court has set in the various orders that have been issued and in completing

Wolf Popper LLP
Page -13-

the discovery and the complex negotiations in accordance with the Court's order. The court appreciates that because it was an enormously complex litigation, and I certainly commend you for reaching this agreement.

- In approving the proposed settlement of the litigation over the merger of the American Stock Exchange and the NASD, Judge Denny Chin stated in <u>Philipson v. American Stock Exchange</u>, 98 Civ. 4219 (DC) (S.D.N.Y., Transcript of Proceedings, February 18, 1999, at 8-11):

> I've considered the papers and what I have heard today, and I find that the settlement is fair, reasonable and adequate. . . . The recovery is substantial. There is the $30 million for the seat market program. . . . There is the potential revenue sharing, which I think at a reasonable estimate would be $20.7 million at least, . . . .

> So the benefits of the proposed settlement are substantial. * * * I think that the benefits of the proposed settlement compare very well to any conceivable reasonable potential recovery. * * * There are very experienced and very good counsel on both sides. The negotiations were difficult and went on for quite a long time. * * * So, having considered all those factors, I conclude that the settlement is fair, reasonable and adequate and is approved.
> * * *
> Terrific job on both sides.

- Judge Donna F. Martinez complimented the Firm when she approved the settlement of a securities fraud action in <u>Germano v. Cognitronics Securities Corp.</u>, Docket No. 3:93-CV-00539 (DFM) (D. Conn., Transcript of Proceedings, September 11, 1998, at 2, 3-4), stating:

> Your presentations. . .were extraordinary – extraordinarily thorough and highly expert. . . .
> * * *
> The issues presented were complicated. They were difficult, and as we've all said more than once now, they were bitterly and expertly fought.
> * * *
> You've ended a long piece of litigation. I know that there was hard work involved not only in the litigation, but a lot of hard work and considerable number of hours that went into the efforts to resolve the case, and you're all to be commended for your very, very excellent representation of your respective clients.

- In a securities fraud action against Caremark International, Inc. arising out the company's failure to disclose violations of state fraud statutes, the Firm served as Co-Lead Counsel for plaintiffs and recovered $25 million on behalf of defrauded investors. The Court complimented plaintiffs' counsel on their handling of the case, stating:

> Congratulations * * *I know [this case] was a complex piece of litigation. * * * thank you very much for your efforts. I think the class and the defense were very well represented.

Wolf Popper LLP
Page -14-

<u>In re Caremark International, Inc. Sec. Litig.</u>, Docket No. 94 C 4751 (Transcript of proceedings, December 15, 1997, at 7-8).

- In the investor actions arising out of the failed public offering involving In-Store Advertising in which the Firm was co-lead counsel, Judge Peter K. Leisure, in approving the settlement stated at the settlement hearing held on December 18, 1996:

> Now, having reviewed the excellent work of counsel with regard to the preparation of the papers, and the research that was done, and having conducted independent research on the law, I am fully satisfied with the quality of the lawyers' work in this matter.

<u>In re In Store Advertising Sec. Litig.</u>, Master File No. 90 Civ. 5594 (PKL) (S.D.N.Y., December 18, 1996)

- Wolf Popper was lead counsel in <u>Carpi v. McDonnell Douglas Capital Income Fund-I</u>, 90 Civ. 3448 (JMC) where 95% of the class damages was recovered for the class. Judge Cannella praised lead counsel in a decision dated January 21, 1994, as follows:

> Plaintiffs' lead counsel has at all times demonstrated to this Court the highest caliber of representation, measurable both in quantitative terms (i.e., the benefits of the settlement to the class members), and in the professionalism, the timeliness, and the thoroughness of lead counsel's written submissions.

- Wolf Popper was co-lead counsel in investor actions brought against Valley National Bank of Arizona. Judge Robert C. Broomfield stated in approving a settlement on January 31, 1994:

> I commend counsel, particularly counsel who litigated this matter, on the quality of their representation of their respective counsel. The quality of representation was very high on behalf of all parties.

<u>Hoexter, et al. v. Simmons, et al.</u>, No. CV-89-1069-PHX-RCB (D. Az.).

- Judge James F. Holderman complimented counsel for the quality of their efforts in <u>In re Salton/Maxim Sec. Litig.</u>, Docket No. 91 C 7693 (N.D. Ill.), in which Wolf Popper was Co-Lead Counsel, at the hearing approving the settlement and awarding counsel fees, the Court stated:

> I want to not only compliment you lawyers for the professionalism that you showed in the course of reaching this compromise resolution, but I want to compliment you on the professionalism that you showed during the course of the litigation. This was a hard fought litigation. It was well briefed. The issues were presented crisply. . . . [A]s a judge presiding over this case, it was a pleasure to preside over it because of the skill and the quality of the lawyering on everyone's part in connection with this case.

Wolf Popper LLP
Page -15-

- Judge Dickinson R. Debevoise stated at the February 3, 1993 hearing at which he approved the settlement in In re Prime Motor Inns Shareholder Litig., Master File No. 90-87 (DRD) (D.N.J.):

> The plaintiffs' attorneys have performed their work aggressively, skillfully and with good effect. I do not detect any duplication of work....The attorneys have earned generous compensation.

- Judge Leonard B. Sand of the Southern District of New York, in In re Wedtech Sec. Litig., 21-46 (LBS) MDL 735 (S.D.N.Y.), in approving the settlement and counsel's fee application (in which the Firm was Chair of the Plaintiffs' Executive and Scheduling Committees in the consolidated litigation), stated:

> My observation has been that this litigation has at all times been conducted at a very high-skilled professional level. I have had no sense in this case of make-work activity or any sense that the matter was not pursued by all parties diligently but not excessively . . . .

- In the In re Gulf Oil/Cities Service Tender Offer Litig., 82 Civ. 5253 (MBM) (S.D.N.Y.) litigation, where Wolf Popper served as Plaintiffs' Lead Settlement Counsel and as a member of Plaintiffs' Executive Committee and in which a settlement of $34 million was achieved only after the case was fully prepared for trial, the Honorable Michael B. Mukasey stated to the Wolf Popper partner in charge of the case, at a hearing held on January 3, 1992, "to the extent you have fiduciary obligations, you have discharged them magnificently in this case. You have gotten the best settlement that you can negotiate for your client." Judge Mukasey further stated in his Opinion and Order approving the settlement and awarding counsel fees:

> [P]laintiffs' counsel] did all the work on their own....class counsel consistently have been skillful, resourceful and diligent without also being captious -- no mean feat. They invested time and money in this case, and well deserve the payment they request.

In re Gulf Oil/Cities Service Tender Offer Litig., Fed. Sec. L. Rep. (CCH) ¶ 96,845, at 93,391 (S.D.N.Y. 1992).

- In the International Systems & Controls Sec. Litig., MDL 440 (S.D. Tx.) case, Judge Black stated at the conclusion of the action that the quality of the plaintiffs' lawyers was "extraordinary." In Seidman v. Stauffer Chemical Co., B-84-543 (D. Conn.) at the conclusion of the case, Chief Judge Daly remarked, in approving the settlement, that plaintiffs' co-lead counsel had acted throughout the litigation "...in accord with the highest standards of the bar, and it was a pleasure to deal with you and to listen to you, and to review your work...".

- Judge Nicholas H. Politan stated at the hearing approving the settlement in In re Electro-Catheter Corporation Sec. Litig., Civil No. 87-41 (D.N.J. September 7, 1989), in which the Firm was co-lead counsel:

Wolf Popper LLP
Page -16-

> I'm satisfied that counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation that I participated in, which was perhaps the major portion of the Court litigation here, always well prepared, well spoken, and knew their stuff and they were a credit to their profession. They are the top of the line. It is good to see top-of-the-line people come in here and top-of-the-line people should be paid top-of-the-line fees. . . . I'm very satisfied with counsel. . . . I compliment them. . . .

- At the settlement hearing held on September 30, 1985 in In re Saxon Sec. Litig., 81 Civ. 3103 (S.D.N.Y.), in which the Firm served as co-lead counsel, Judge Mary Johnson Lowe praised the quality of work performed in the case:

> I have never had the pleasure of working with such an outstanding group of attorneys. . . .
>
> * * *
>
> We had claims which aggregated many times the value of what was available, and I think you were all just superb, and from this Court to all of the lawyers who participated you have my admiration, my thanks -- and I don't know what other accolades I can give you other than that, but that is the way I feel about what happened here, and I am very proud to be a lawyer to be associated with you.

---