UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CENTERLINE HOLDING COMPANY SECURITIES LITIGATION | Case No. 08 Civ. 00505 (SAS) |

| | |
|---|---|
| BRIAN QUILL, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CENTERLINE HOLDING CO. INC., MARC D. SCHNITZER, ROBERT L. LEVY, STEPHEN M. ROSS, JEFF T. BLAU, and LEONARD W. COTTON <br><br> Defendants. | Case No. 08 Civ. 01902 (SAS) |

**CORRECTED MEMORANDUM OF LAW IN SUPPORT OF TOM BURNS, JOSEPH FRYZER, MELVIN KREVOY, AND STEPHEN LANDAU'S NOTICE OF MOTION AND MOTION FOR CONSOLIDATION OF ALL RELATED ACTIONS; APPOINTMENT AS LEAD PLAINTIFF; AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

**DREIER LLP**
Bruce D. Bernstein
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 328-6100

**KAHN GAUTHIER SWICK, LLC**
Kim E. Miller
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730

**KAHN GAUTHIER SWICK, LLC**
Lewis Kahn
Poydras Center
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone: (504) 455-1400

*Counsel for the Burns Group and*
*Proposed Co-Lead Counsel for the Class*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

ARGUMENT ............................................................................................................. 5

    A.    ALL RELATED ACTIONS SHOULD BE CONSOLIDATED ............................ 5

    B.    THE BURNS GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ............ 6

        1.    The Procedure Required by the PSLRA ...................................... 6

        2.    The Burns Group Is The Most Capable Of Adequately Representing The Interests Of The Class Members ................................. 7

        a.    The Burns Group Has Timely Moved for Appointment as Lead Plaintiff ...................................................................... 7

        b.    The Burns Group Believes That It Has The Largest Financial Interest In The Relief Sought By The Class ................................ 7

        c.    The Burns Group Otherwise Satisfies Rule 23 .......................... 8

    C.    THE COURT SHOULD APPROVE THE BURNS GROUP'S SELECTION OF CO-LEAD COUNSEL ............................................. 10

CONCLUSION ......................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

<u>**PAGE**</u>

### <u>Federal Cases</u>

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d. 398 (S.D.N.Y. 2006) (Owen J.)........................................................5

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992).........................................................................................9

*In re Elan Corp. Sec. Litig.*,
    No 02. Civ. 865, 2002 WL 31720410 (S.D.N.Y. Dec. 3, 2002).................................9

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (2005) (Scheindlin, J.)..................................................................7, 8, 9

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...........................................................................5

*Johnson v. Celotex*,
    899 F.2d 1281 (2d Cir. 1990)......................................................................................5

*Lax v. First Merch. Acceptance Corp.*,
    No. 97-Civ.-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............................6, 8

### <u>Federal Statutes</u>

15 U.S.C. §78u-4 .................................................................................................... *passim*

### <u>Federal Rules</u>

Fed. R. Civ. P. 42(a) ..................................................................................................1, 6

ii

Tom Burns, Joseph Fryzer, Melvin Krevoy, and Stephen Landau (the "Burns Group" or "Movants") respectfully submit this corrected memorandum of law in support of their motion: (1) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a); (2) to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (3) for approval of their selection of the law firm Dreier LLP and Kahn Gauthier Swick, LLC ("Kahn Gauthier") as Co-Lead Counsel for the Class.

## PRELIMINARY STATEMENT

This class action lawsuit arises from allegations against Centerline Holding Company ("Centerline" or the "Company") and certain of its senior officers and directors (collectively, "Defendants") for violations of the federal securities laws. During the period from December 5, 2006 through December 28, 2007 (the "Class Period"), Defendants disseminated materially false and misleading information to investors related to the Company's business model, prospects, operations and financial condition. Defendants' misstatements artificially inflated the price of Centerline securities and caused substantial damages to investors in those securities.

The Burns Group believes that it is the "most adequate plaintiff" as defined by the PSLRA and thus should be appointed as Lead Plaintiff in this action. The Burns Group consists of sophisticated individual investors who suffered a loss of approximately $1,429,403.83 on their gross investment of approximately $2,479,629.99 in Centerline securities – an amount that they believe represents the largest financial interest in the relief sought in this action.[1] In addition to

---

[1] The Certification for each member of the Burns Group are attached as Exhibits A through D, respectively, to the Declaration of Bruce D. Bernstein in Support of the Burns Group's Notice of

their willingness to direct this litigation and ensure its proper prosecution, the Burns Group believes that its significant financial loss unquestionably provides a strong incentive to pursue the maximum recovery for the Class.

## FACTUAL BACKGROUND

This case is a straightforward example of a public company seeking to maintain a fraudulently inflated stock price through the intentional or reckless dissemination of material misrepresentations concerning the company's financial position and prospects. ¶¶1, 15, 19, 88, 89.[2]

Centerline (formerly Chartermac), is a statutory trust which conducts the majority of its business through subsidiaries. ¶7. The Company operates as a full service real estate finance and investing company, providing capital solutions to real estate developers and owners, in addition to investment products to retail and institutional investors.

Centerline's five main business segments are: (1) Affordable Housing, (2) Commercial Real Estate, (3) Asset Management, (4) Credit Risk Products, and (5) Consolidated Partnerships. *Id.* The Affordable Housing segment manages Centerline's mortgage revenue bond portfolio (comprised mostly of tax-exempt first mortgage bonds). ¶34. At the inception of the Class Period, the Affordable Housing segment was responsible for the vast majority of the Company's total revenues, generating approximately 56% of Centerline's revenues in the third quarter of 2006. ¶7.

---

Motion and Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel ("Bernstein Decl., Exh. ___").

[2] The factual allegations set forth herein are taken from the class action complaint captioned *Quill v. Centerline Holding Co., et al.*, 08 CV 01902 (S.D.N.Y. filed on Feb. 26, 2008). ¶ __ refers to paragraphs set forth in the *Quill* complaint.

On December 5, 2006, the first day of the Class Period, Defendants hosted an "investor luncheon," during which Defendants made a presentation to investors on behalf of the Company. ¶26. According to introductory statements made by Defendant Schnitzer, the purpose of the investor presentation was to "articulate [the Company's] strategy in a clearer and clearer way so that we can tell more people about it, can hopefully interest more people in following our company." *Id.* During the course of the luncheon, Defendants, among other things, purportedly articulated the Company's overall business strategy, which included the Company's so-called "blueprint for growth" and continued expansion. ¶¶27, 29, 30.

Thereafter, on March 12, 2007, Centerline issued a press release announcing the Company's purported financial results for the fourth quarter and full year ended December 31, 2006. ¶31. The press release emphasized the growth in the Company's portfolio of tax-exempt first mortgage bonds, which had increased to $2.397 billion, compared to $2.294 billion at the end of 2005. *Id.* In addition, on May 10, 2007, in connection with its press release announcing first quarter 2007 financial results, defendant Schnitzer stated, among other things, that: "[b]ased on the progress we have made executing our business plan to date, we remain confident that we will meet our investment and financial goals for the year and do not believe it is necessary to revise our guidance at this time." ¶40. In addition, Defendants stated that "[w]hile [the Company's] dividend payout ratio is above 100% in this quarter, we are comfortable that our annual dividend will continue to have adequate coverage." *Id.*

These statements and all subsequent statements made by Defendants during the Class Period failed to disclose that, among other things, Defendants were negotiating a sale of the Company's mortgage revenue bond portfolio to The Federal Home Loan Mortgage Corporation ("Freddie Mac"). ¶58. Defendants also failed to inform investors that the imminent sale of the

mortgage revenue bond portfolio would fundamentally alter the Company's growth, expansion, business model and investor profile, and drastically reduce the dividend.  ¶¶58, 59.

On December 28, 2007, Centerline shocked the financial markets with a press release revealing that the Company was performing well below expectations and announcing that it had sold the Company's $2.8 billion tax-exempt affordable housing bond portfolio to Freddie Mac, thereby transforming the Company into a pure asset management firm, which would be, among other things, unsuitable for investors seeking income for dividends.  ¶¶58, 59, 64.  As a result of the sale, Centerline disclosed that it would be reducing its annual dividend 64%, from $1.68 per share to only $0.60 per share.  ¶65.  The Company also revealed that it had entered into a related party transaction with a company owned by Defendants Ross and Blau called The Related Companies, L.P.  Pursuant to the transaction, The Related Companies would provide Centerline with $131 million in financing, in exchange for 12.2 million shares of newly-issued convertible preferred stock that will pay these insiders an 11% dividend.  ¶¶61, 65.  Following this announcement, shares of Centerline stock fell $2.57 per share, or more than 25%, to close at $7.70 per share, on very heavy trading volume.  ¶¶64, 71.

Numerous securities class actions were filed in the Southern District of New York in the wake of this announcement and consequent market correction.  The first complaint, styled, *Goldstein v. Centerline Holding Company, et al.,* was filed on January 18, 2008. Numerous notices of the pendency of this class action were also published, alerting Class Members to the March 18, 2008 deadline to submit a motion seeking to serve as Lead Plaintiff on behalf of Centerline investors.  The first such notice, attached to the Bernstein Decl. as Exh. F, referred to a putative class period from March 12, 2007 to December 28, 2007.  A subsequent notice

extended this period by approximately three months, to run from December 5, 2006 to December 28, 2007. *See* Bernstein Decl., Exh. G.

On March 3, 2008 this Court entered an Order approving the Stipulation submitted jointly by counsel for plaintiffs in five related securities fraud class actions pending before it on behalf of investors in *Centerline* securities. *See* Bernstein Decl., Exh. H.[3] On March 17, 2008 the securities class action captioned *Quill v. Centerline Holdings Co.*, et. al, No. 08-Civ. 01902 (the "Quill Action") was "accepted as related" with the Consolidated Actions against *Centerline*. *See* Bernstein Decl., Exh. I.

## ARGUMENT

### A.     ALL RELATED ACTIONS SHOULD BE CONSOLIDATED

The *Quill* Action presents nearly identical factual and legal issues raised by the (previously) Consolidated Actions as all of the actions concern many of the same false and misleading statements, and allege the same claims arising under the Exchange Act. Accordingly, consolidation of the *Quill* Action with the Consolidated Actions is appropriate here. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex*, 899 F.2d 1281, 1285 (2d Cir. 1990) (consolidation is appropriate when there are "common questions of law or fact").[4]

---

[3] These actions were entitled: (i) *Goldstein v. Centerline Holding Company, et al.*, No. 08 Civ. 00505; (ii) *Frank v. Centerline Holding Company, et al.*, No. 08 Civ. 01026; (iii) *Weinrib v. Centerline Holding Company, et al.*, No. 08 Civ. 01158; (iv) *Lyons v. Centerline Holding Company, et al.*, No. 08 Civ. 01458; and (v) *Dechter v. Centerline Holding Company, et al.*, No. 08 Civ. 01593 (collectively, the "Consolidated Actions").

[4] As noted above, the *Quill* complaint extended the putative class period by approximately three months so as to include Defendants' December 5, 2006 misleading statements made at an investor conference concerning Centerline's growth and prospects. Slight differences in the length of the class periods set forth in the initial pleadings, however, does not prohibit consolidation. *See In re Doral Fin. Corp. Sec. Litig.,* 414 F. Supp. 2d, 398, 403 (S.D.N.Y. 2006) (Owen J.) (appointing lead plaintiff in consolidated litigation consisting of 24 actions and "at least five different class periods"); *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998) (consolidating four actions even though one action alleged a slightly different

**B.      THE BURNS GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

**1.      The Procedure Required by the PSLRA**

The PSLRA sets forth a procedure that governs the appointment of a Lead Plaintiff for class actions alleging claims under the Exchange Act, brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).  The plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action. 15 U.S.C. §78u-4(a)(3)(A)(i).  This notice informs Class Members of their right to file a motion to be appointed Lead Plaintiff.  *Id*.  Within sixty days after publication of the notice, any person who is a member of the proposed class may petition the Court to be appointed Lead Plaintiff, regardless of whether they have previously filed a complaint in the action.  15 U.S.C. §78u-4(a)(3)(A)(i)(II) and (B)(i).

The PSLRA also provides that within ninety days after publication of the notice, the Court shall consider any motion by a Class Member and shall appoint as Lead Plaintiff the member of the Class that the Court determines is the "most capable of adequately representing the interests of the Class Members."  15 U.S.C. §78u-4(a)(3)(B)(i)  For purposes of determining the "most adequate plaintiff," the PSLRA states:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that --
>
>> (aa) has either filed the complaint or made a motion in response to a notice …
>>
>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

class period than the other three actions); *Lax v. First Merch. Acceptance Corp.*, No. 97-Civ.-2715, 1997 WL 461036, at *7 (N.D. Ill. Aug. 11, 1997) ("The varying class periods can nevertheless be harmonized because all of the complaints are based on a common set of operative facts.").

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)

> 2.    **The Burns Group Is The Most Capable Of Adequately Representing The Interests Of The Class Members**

> > a.    **The Burns Group Has Timely Moved for Appointment as Lead Plaintiff**

Here, any Class Member who is interested in moving for Lead Plaintiff appointment in this matter must do so by March 18, 2008.  15 U.S.C. §78u-4(a)(3)(A) and (B).  Pursuant to the PSLRA, and within the requisite time frame after publication of the required notice (published on January 18, 2008), the Burns Group hereby moves this Court in a timely manner to be appointed Lead Plaintiff on behalf of all members of the Class.  Each member of the Burns Group has signed and filed a Certification stating that, among other things, he or she has reviewed the allegations in this case and is willing to serve as a representative party on behalf of the Class.  *See* Bernstein Decl. Exhs. A-D.

> > b.    **The Burns Group Believes That It Has The Largest Financial Interest In The Relief Sought By The Class**

The Burns Group, which consists of several sophisticated individual investors, including three investors who all invested through the same investment advisor, and Tom Burns, who is a long term investor in Centerline (and its predecessor companies), should be appointed Lead Plaintiff because it believes that it has the largest financial interest in the relief sought by the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii).[5]  Courts generally look to four factors in determining

---

[5] The PSLRA specifically provides that a "member or members" of the class, or a "person or group of persons" may join together to comprise the "largest financial interest" entitled to the presumptive appointment as Lead Plaintiff.  *See In re eSpeed*, *Inc. Sec. Litig.*, 232 F.R.D. 95, 98-99 (2005) (Scheindlin, J.) (appointing Lead Plaintiff group consisting of family members and unrelated individual investor).  Nonetheless, although the Burns Group believes that it is the most capable of adequately representing the interests of Class Members, each member of the Burns Group is willing to serve individually as Lead Plaintiff should the Court deem that person to be the "most adequate plaintiff."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

which movant has the largest financial interest in the litigation. These factors -- sometimes called the "*Lax* Factors" after *Lax v. First Merch. Acceptance Corp.*[6]-- are: (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate losses suffered. *See, e.g., eSpeed*, 232 F.R.D. at 100. In light of each of these factors, the Burns Group believes that it has the largest financial interest in the outcome of this lawsuit.

During the Class Period, the Burns Group purchased 142,832 shares of Centerline common stock on a gross basis. During the same period, the Burns Group sold only 71,848 shares, for net purchases of 70,984 shares. The Burns Group expended a total gross amount of $2,479,629.99 on these purchases. As a result of Defendants' fraudulent disclosures, the Burns Group lost $1,429,403.83 on this investment when calculated on a LIFO ("last in, first out") basis.[7]

| *Lax* Factor | Burns Group Position |
|---|---|
| Gross Purchases: | 142,832 shares |
| Net Purchases: | 70,984 shares |
| Net Expenditures: | $1,398,463.11 |
| Approximate Loss (LIFO calculation): | $1,429,403.83 |

Accordingly, the Burns Group believes that it has the largest financial interest of any qualified movant seeking appointment as Lead Plaintiff.

### c.    The Burns Group Otherwise Satisfies Rule 23

The Burns Group should be appointed Lead Plaintiff because it also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. On a motion to serve as Lead Plaintiff, the movant "need only make a preliminary showing that it satisfies the typicality and

---

[6] *See Lax*, No. 97-Civ.-2715, 1997 WL 461036, at *5.

[7] Tables setting forth each member of the Burns Group's transactions and losses in Centerline (utilizing LIFO calculations) are attached as Exhibit J to the Bernstein Decl.

2em

adequacy requirements of Rule 23." *eSpeed*, 232 F.R.D. at 102 (citation omitted). The Burns Group unquestionably satisfies both requirements in this case.

The Burns Group's claims are typical of the claims of other Class Members. "Typicality is satisfied where the claims arise from the same conduct from which the other Class Members' claims and injuries arise." *eSpeed*, 232 F.R.D. at 102; *see also In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) ("Rule 23(a)(3) is satisfied when each Class Member's claims arises from the same course of events, and each Class Member makes similar legal arguments to prove the defendant's liability."). "Typicality [] does not require that the situations of the named representatives and the Class Members be identical." *In re Elan Corp. Sec. Litig.*, No 02. Civ. 865, 2002 WL 31720410, at *4 (S.D.N.Y. Dec. 3, 2002) (citation omitted). Here, the Burns Group's claims arise from the very same course of misconduct at Centerline as the claims of other Class Members, *i.e.*, the artificial inflation and consequent market corrections of Centerline stock caused by Defendants' fraudulent public disclosures.

The Burns Group likewise satisfies the adequacy requirement of Rule 23. The adequacy requirement prescribed by Rule 23(a)(4) is satisfied "where (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the Class Members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *eSpeed*, 232 F.R.D. at 102.

Here, the Burns Group is a more than adequate representative of the Class. As evidenced by its losses of $1,429,403.83, suffered as a result of Defendants' materially false and misleading statements, the Burns Group's interest in aggressively pursuing the claims against Defendants are clearly aligned with the interests of the Class Members, who all similarly suffered losses due to Defendants' false and misleading statements. There is no antagonism between the interests of

the Burns Group and those of other Class Members. Each member of the Burns Group has also submitted a Certification affirming their understanding of the duties owed to Class Members through their commitment to oversee the prosecution of this class action. *See* Bernstein Decl., Exhs. A-D. Through the Certifications, the Burns Group accepts the fiduciary obligations it will assume if appointed Lead Plaintiff in this action.

Finally, the Burns Group has demonstrated its adequacy through its selection of Dreier LLP and Kahn Gauthier as proposed Co-Lead Counsel to represent the Class. As discussed more fully below, the attorneys at Dreier LLP and Kahn Gauthier are both highly qualified and experienced in the area of securities class action litigation and, respectively, have repeatedly demonstrated their ability to prosecute complex securities class action litigation effectively.

Accordingly, the Burns Group *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for purposes of this motion.

### C.    THE COURT SHOULD APPROVE THE BURNS GROUP'S SELECTION OF CO-LEAD COUNSEL

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. Here, the Burns Group has selected Dreier LLP and Kahn Gauthier as Co-Lead Counsel to represent it and the Class. The attorneys at Dreier LLP and Kahn Gauthier possess extensive experience litigating securities fraud class actions such as this one and have successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Bernstein Decl. Exs. K-L.

Accordingly, the Court should approve the Burns Group's selection of Dreier LLP and Kahn Gauthier as Co-Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, the Burns Group satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed Lead Plaintiff. Thus, the Burns Group respectfully requests that this Court: (1) consolidate all related Actions; (2) appoint the Burns Group as Lead Plaintiff; (3) approve the Burns Group's selection of Dreier LLP and Kahn Gauthier as Co-Lead Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

DATED:      April 1, 2008                    Respectfully submitted,

**DREIER LLP**

By: /s/  Bruce D. Bernstein
Bruce D. Bernstein
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 328-6100
Fax: (212) 710-5968

**KAHN GAUTHIER SWICK, LLC**
Lewis Kahn
Poydras Center
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone: (504) 455-1400
Fax: (504) 455-1498

-and-

**KAHN GAUTHIER SWICK, LLC**
Kim E. Miller
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730
Fax: (504) 455-1498
*Counsel for the Burns Group and Proposed*
*Co-Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the e-mail addresses listed on the attached Electronic Mail Notice List, and I hereby certify that I served the foregoing via U.S. Mail to the non-CM/ECF participants listed on the Attached Manual Notice List.

<u>/s/  Rebecca Tingey</u>
Rebecca Tingey
**DREIER LLP**
499 Park Avenue
New York, New York 10022
Telephone: (212) 328-6100
Fax: (212) 710-5968

# Mailing Information for a Case 1:08-cv-00505-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennifer Fletcher Beltrami**
  jbeltrami@wolfblock.com,erkaplan@wolfblock.com

- **Bruce D. Bernstein**
  bbernstein@dreierllp.com

- **Thomas George Ciarlone , Jr**
  tciarlone@lawssb.com

- **Alan Ian Ellman**
  aellman@labaton.com

- **Jacob Goldberg**
  jgoldberg@faruqilaw.com,abarinov@faruqilaw.com

- **Christopher J. Keller**
  ckeller@labaton.com,ElectronicCaseFiling@labaton.com

- **James Clayton Kelly**
  jkelly@wolfpopper.com

- **Andrei V. Rado**
  arado@labaton.com

- **Richard A. Rosen**
  rrosen@paulweiss.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com,amartin@csgrr.com

- **Ralph M. Stone**
  rstone@lawssb.com

- **Rebecca A Tingey**
  rtingey@dreierllp.com

- **Antonio Vozzolo**
  avozzolo@faruqilaw.com

## Manual Notice List

Case 1:08-cv-00505-SAS     Document 36     Filed 04/01/2008     Page 17 of 17

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)