**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE CENTERLINE HOLDING COMPANY
SECURITIES LITIGATION

Civil Action No. 08-CV-00505 (SAS)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION
OF THE CENTERLINE INVESTOR GROUP FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD
COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 5

I.   THE CENTERLINE INVESTOR GROUP HAS THE LARGEST
FINANCIAL INTEREST UNDER THE PROPER CLASS PERIOD .................................. 5

II.  THE BURNS GROUP'S MOTION IS THE PRODUCT OF
MANIPULATION ............................................................................................................ 7

    A.   Counsel for the Burns Group Solicited Class Members Through
Misleading Notices ...................................................................................... 7

         (a)   The Expanded Class Period Is Patently Unsupportable ........................ 10

    B.   The Burns Group is Inadequate ................................................................... 14

III. THE CENTERLINE INVESTOR GROUP IS A COHESIVE
GROUP THAT IS CAPABLE OF EFFECTIVELY AND
EFFICIENTLY LEADING THIS LITIGATION .............................................................. 15

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aronson v. McKesson HBOC, Inc.*,
  79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999) ........................................................ 6

*In re Cendant Corp. Litig.*,
  264 F.3d 201, 267 (3d Cir. 2001)....................................................................... 14

*In re Comdisco Sec. Litig.*,
  150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) ............................................................ 7

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2,
  2007) ........................................................................................................... 11

*In re Critical Path, Inc. Sec. Litig.*,
  156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001)................................................... 7

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................... 6

*Glauser v. EVCI Cent. Colls. Holding Corp.*, 236 F.R.D. 184, 190
  (S.D.N.Y. 2006) .............................................................................................. 5

*In re Initial Pub. Offering Sec. Litig.*,
  214 F.R.D. 117, 123 (S.D.N.Y. 2002) ................................................................. 4

*In re Initial Public Offerings Sec. Litig.*,
  471 F.3d 24, 41 (2d Cir. 2006)......................................................................... 10

*Kaplan v. Gelfond*,
  240 F.R.D. 88, 93 (S.D.N.Y. 2007) ..................................................................... 7

*Lax v. First Merch. Acceptance Corp.*,
  No. 97-cv-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .............................. 6

*Leech v. Brooks Automation, Inc.*,
  No. 06-cv-11068-RWZ, 2006 WL 3690736 (D. Mass. Dec. 13,
  2006) ........................................................................................................... 6

*In re MicroStrategy Inc. Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ................................................................ 14

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999)............................................................................ 11

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................ 6

*In re Pfizer, Inc. Sec. Litig.*
    233 F.R.D. 334 (S.D.NY. 2005) ...................................................................... 11

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) ........................................................ 5

*Sakhrani v. Brightpoint*,
    78 F. Supp. 2d 845, 848 n.2 (S.D. Ind. 1999) ................................................ 15

*In re Star Gas Sec. Litig.*, No. 3:04CV1766 (JBA),
    2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) ............................................ 11

*Switzenbaum v. Orbital Sci. Corp.*,
    187 F.R.D. 246, 251 (E.D. Va. 1999) .............................................................. 15

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
    No. 05-cv-04617 (RJH), 2006 WL 197036(S.D.N.Y. Jan. 25, 2006) .................................. 5

## UNDOCKETED CASES

*In re Unitedhealth Group Inc. PSLRA Litig.*,
    No. 06-cv-1691 (JMR/FLN) ............................................................................ 10

*Off v. Ross*, C.A. No. 3468-VCP
    (Del. Ch. filed Jan. 15, 2008) .......................................................................... 4

On March 18, 2008, J. Michael Fried, Joseph A. Braddock, Norman Millman, and

Edward Friedlander, as trustee for the Ed Friedlander Trust (the "Centerline Investor Group"),

moved this Court pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation

Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for an

order: (i) appointing the Centerline Investor Group as lead plaintiff of a class of purchasers of the

securities of Centerline Holding Company ("Centerline" or the "Company"); and (ii) approving

the Centerline Investor Group's selection of Labaton Sucharow LLP ("Labaton Sucharow") and

Berger & Montague, P.C. ("Berger & Montague") as lead counsel for the Class.

This is the Centerline Investor Group's opposition brief to the lead plaintiff/lead counsel

motions filed by the competing movants.[1]

## **INTRODUCTION**

The Court should appoint as lead plaintiff the movant with the largest financial interest in

the litigation that also satisfies the adequacy and typicality requirements of Fed. R. Civ. P. 23.

*See* 15 U.S.C. § 78u-4(a)(3)(B). The Centerline Investor Group is the only movant that meets

both of these requirements. Although the Burns Group claims a larger investment loss than the

Centerline Investor Group, the claimed interest is illusory and the group does not meet the

PSLRA's adequacy requirement.

As established below, the Burns Group achieved this loss through manipulating the

starting date of the class period to conform to its trading history rather than the facts of the case.

---

[1]    Movants the Levin Group, the Goldenberg Group, and David Garfinkle suffered LIFO losses of approximately $292,405, $71,384, and $25,202, respectively. Their financial interest is relatively small compared to the Centerline Investor Group and the Burns Group and places them outside serious contention for lead plaintiff appointment. A comparison of all of the movants' financial interest is included *infra*, Section I.

The actions of the Burns Group and its counsel, as shown herein, are inconsistent with the aims of the PSLRA and should not be rewarded with appointment as lead plaintiff, to the detriment of the class and the integrity of the PSLRA lead plaintiff selection process.

The Burns Group's members were recruited by fake PSLRA press releases designed to fool investors into thinking that the firms issuing them had filed a complaint in the litigation, when they did not and misleading investors into believing (erroneously) that they needed to retain an attorney to participate in the class action. *See* Declaration of Alan I. Ellman in Further Support of the Motion of the Centerline Investor Group for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel and in Opposition to the Competing Motions ("Ellman Decl.") at Exs. 1 and 2, Dreier LLP ("Dreier") Press Release dated January 25, 2008 and Kahn Gauthier Swick, LLC ("KGS") Press Release dated January 27, 2008, respectively.  In these notices, counsel for the Burns Group stated that the class period for this case is "March 12, 2007 through December 28, 2007." *Id.*  Then, in an about-face, on February 26, 2008, only a few weeks before the March 18, 2008 deadline for the filing of lead plaintiff motions, counsel for the Burns Group filed a complaint ("*Quill* Complaint,") (*Quill v. Centerline Holding Co., Inc.*, No. 08-cv-1902 (S.D.N.Y. filed Feb. 26, 2008), alleging a class period beginning on December 5, 2006, more than three months earlier than the March 12, 2007 beginning date alleged in every other complaint filed in this consolidated action and in their own published notices.[2]

The allegations of record establish that there is no basis for beginning the class period on December 5, 2006.  In the December 28, 2007 Centerline conference call, at the end of the class period, Defendant Marc D. Schnitzer ("Schnitzer") admitted that the sale of Centerline's

---

[2]     On March 12, 2008 (only six days before lead plaintiff motions were due), the Burns Group provided notice to the public of its extension of the class period back to December 5, 2006.  *See* Ellman Decl. at Ex. 3.

mortgage revenue bond portfolio to Federal Home Loan Mortgage Corporation ("Freddie Mac") ***"has been in the works for close to a year."***  The *Quill* Complaint does not contain this pivotal quote, but instead paraphrases this admission in a manner that manipulates the facts. The *Quill* Complaint states:

> Immediately following the publication of this [December 28, 2007 press] release, the Company also hosted a conference call during which Defendants revealed that their plan to radically revise Centerline from a tax-exempt bond fund into a much higher risk, asset manager ***had been in the planning stages since at least the inception of the [December 5, 2006 to December 28, 2007]*** Class Period.

*Quill* Complaint, ¶ 62 (emphasis added).  There is no basis for the Burns Group to allege that the class period should begin on December 5, 2006, more than one year before the December 28, 2007 conference call.[3]  The Burns Group's class period is insupportable because they are alleging that defendants failed to disclose a transaction that was not contemplated at that time. There is not a single fact pled in the *Quill* Complaint which supports a class period beginning December 5, 2006.

One can reasonably surmise based upon the patterns of purchases of the Burns Group investors that the selection of the class period in the *Quill* complaint was not a product of a reasoned analysis, but rather an effort to generate larger losses for its investor clients and the "largest financial interest" on this motion:

- Total Burns Group losses in the supportable Class Period are only $609,432, compared to claimed losses of $1,429,404 for the longer class period;

- Almost half of their purchases (70,832 out of 142,832) were made prior to March 12, 2007;

---

[3]  Movant David Garfinkle agrees with this analysis, stating: "Although the Burns Group purports to claim the largest financial interest, the Class Period that it has utilized in calculating its financial interest appears to be improper and inconsistent with the underlying allegations of the complaint.  Accordingly, when the proper Class Period is considered, it appears that the Centerline Investor Group represents the largest financial interest of any movant." (emphasis added). (Garfinkle Response Mem. at 1. [Dkt #30])

- Two members of the Group – Joseph Fryzer and Melvin Krevoy – made all of their purchases before March 12, 2007 and should be excluded entirely;

- One member of the Group – Tom Burns – was partially "in-and-out," *i.e.*, he sold 42,948 of the 51,832 shares he purchased during the proper class period prior to any curative disclosure.

Moreover, the Burns Group is not a proper group pursuant to the PSLRA. It is an attorney creation that cannot meet the PSLRA's adequacy requirement. Indeed, on April 1, 2008, just days after the Jones Group filed its lead plaintiff petition, Jona Goldrich withdrew from the Burns Group, reflecting the artificiality of its initial formation.

In short, the Burns Group's motion is the product of manipulation. The Burns Group was recruited through manipulation of the PSLRA's notice requirements, its losses were engineered by manipulating the class period and its status as a "group" is specious. As this Court has held, the PSLRA was enacted "to ensure that securities litigation was investor-driven, as opposed to lawyer-driven." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002). The Burns Group lacks the largest financial interest, is inadequate, and is attorney driven. Its motion does not meet the statutory requirements, undermines the statute's purpose, and should be denied.

In contrast, the Centerline Investor Group is comprised of knowledgeable and committed members, who have spoken together three times to discuss the litigation and how they will work together to supervise their counsel and its counsel. The Centerline Investor Group's counsel first investigated the facts and filed the first complaint. Both the group and its counsel have not only complied with the letter and spirit of the PSLRA, but have also established their commitment to protect the class by monitoring the derivative and class actions against Centerline which have been settled in the Delaware Chancery Court. *See Off v. Ross*, C.A. No. 3468-VCP (Del. Ch. filed Jan. 15, 2008) ("*Off* Action"). The Centerline Investor Group, through counsel, has

challenged the release in the *Off* Action, which purports to release claims in this consolidated

action, and has advised Vice Chancellor Parsons that it intends to object to the settlement of the

*Off* Action unless the release excludes any claims that arise under the federal securities laws. *See*

Ellman Decl. at Ex. 4 (letter from Jessica Zeldin to Vice Chancellor Parsons, dated March 27,

2008).

When the appropriate class period is used to calculate financial interest (the class period

alleged in every complaint except the one filed by the Burns Group's counsel), the Centerline

Investor Group has the largest financial interest. The Centerline Group also satisfies the

adequacy and typicality requirements of Rule 23. Its members have spoken together several

times to discuss the litigation and how they will supervise counsel and cohesively work together

to ensure the largest recovery for the class. Therefore, the Centerline Investor Group meets the

statutory requirements and its motion should be granted.

## <u>ARGUMENT</u>

### I.   **THE CENTERLINE INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST UNDER THE PROPER CLASS PERIOD**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the

class member who represents the largest financial interest in the relief sought by the litigation.

*See Glauser v. EVCI Cent. Colls. Holding Corp.,* 236 F.R.D. 184, 190 (S.D.N.Y. 2006)

(McMahon, J.) (appointing lead plaintiff movant with largest financial interest); *see also Weiss v.*

*Friedman, Billings, Ramsey Group, Inc.*, No. 05-cv-04617 (RJH), 2006 WL 197036, at *1

(S.D.N.Y. Jan. 25, 2006) (Holwell, J.) (same); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286,

295 (E.D.N.Y. 1998).[4] This Court has previously applied the *Olsten* factors in determining

---

[4]   *In re Olsten Corp.* is one of the earliest, and most cited, cases setting forth these four
factors, which are commonly referred to as the "*Olsten* factors." Other courts refer to them as

which plaintiff has the greatest financial interest in the outcome of securities litigation. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (Scheindlin, J.). Under the *Olsten* factors, courts examine four factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (Sweet, J.) (citations omitted). "These factors are useful, because they look to relatively objective indicators, such as number of shares purchased or sold, rather than to the ultimate question of damages." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999).

Based upon the Olsten factors, the Centerline Investor Group has the largest financial interest in this litigation using the proper class period, beginning on March 12, 2007:[5]

| Movant | Total Shares Purchased | Net Shares Purchased | Net Expenditures | LIFO Loss |
|---|---|---|---|---|
| Centerline Investor Group | 132,939 | 132,939 | $1,812,941 | $1,050,787 |
| Burns Group | 70,832 | 27,884 | 589,311 | 609,432 |
| Levin Group | 38,165 | 36,165 | 514,200 | 292,405 |
| Goldenberg Group | 12,076 | (324) | 73,724 | 71,384 |
| Garfinkle | 3,700 | (190) | (2,717) | 25,202 |

Because the net shares analysis is designed to evaluate who paid the most net inflation, some courts have held that the net shares analysis is the most important factor and should be outcome determinative. *See Leech v. Brooks Automation, Inc.*, No. 06-cv-11068-RWZ, 2006

---

"*Lax* factors." *See Lax v. First Merch. Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036, at *7 (N.D. Ill. Aug. 11, 1997).

[5] Furthermore, the Centerline Investor Group includes the individual investor with the largest single loss, *i.e.*, J. Michael Fried, who suffered losses of $504,191.

WL 3690736, at *2 (D. Mass. Dec. 13, 2006) ("[C]ourts have equated 'largest financial interest' with largest 'potential recovery'. . . .  Under this method, 'the number of net shares purchased during the class period is determinative' because the plaintiff who purchased the most net shares would receive the largest 'potential recovery.'"); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (favoring the "net shares purchased" factor as the best measure of the "largest financial interest."); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) (holding that the "net shares purchased" factor is outcome-determinative). Other courts have placed the most emphasis on the approximate loss suffered by the movant. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (Buchwald, J.) ("Although courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.") As the above table demonstrates, the Centerline Investor Group wins under each factor in the proper class period.

Notably, the Centerline Investor Group and has the largest financial interest as measured by the "net shares" factor **even in the longest class period**. In the longer class period, the Centerline Investor Group has net purchases of 136,289 shares, while the Burns Group has net purchases of only 70,984 shares.

Therefore, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Centerline Investor Group is the presumptive lead plaintiff in this action.

## II.    THE BURNS GROUP'S MOTION IS THE PRODUCT OF MANIPULATION

### A.    Counsel for the Burns Group Solicited Class Members Through Misleading Notices

On January 18, 2008, Berger & Montague and Labaton Sucharow filed the initial complaint against Centerline, alleging a class period of March 12, 2007 to December 28, 2007,

and issued the notice required by 15 U.S.C. § 78u-4(a)(3)(A)(i), which directs the plaintiff in the first action to publish a notice announcing the filing of the action and class members' right to seek appointment as lead plaintiff. *See* Declaration of Alan I. Ellman in Support of the Motion of the Centerline Investor Group for Appointment as Lead Plaintiff, dated March 18, 2008, at Ex. C [Dkt. #15]. Subsequently, four additional class action complaints were filed alleging the same class period.[6]

Having filed no complaint, in late January 2008, counsel for the Burns Group, KGS and Dreier each issued "trolling" press releases made to look like a statutorily required PSLRA notice. The sole purpose of these releases was to get investors to retain their firms. *See* Ellman Decl. at Exs. 1 and 2. Notably, KGS and Dreier's press releases indicated the case for which they were providing notice had a class period of March 12, 2007 and December 28, 2007, the same as in the existing actions. On February 26, 2008, KGS filed the *Quill* Complaint.

The PSLRA requires that only the plaintiff in the first action issue a notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Moreover, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)." 15 U.S.C. § 78u-4(a)(3)(A)(ii) (emphasis added). While this language does not prohibit the issuance of notices by plaintiffs in follow-on actions, the statute does not even contemplate the issuance of notices by law firms who don't represent anybody and have not filed anything. The statute does not allow, and Congress would not have countenanced, what counsel

---

6    *See Peter Frank v. Centerline Holding Company, et al.*, 08-CV-1026-SAS (filed Jan. 31, 2008) at ¶ 1; *Weinrib v. Centerline Holding Company, et al.*, No. 08-CV-1158 (filed Feb. 4, 2008) at ¶ 1; *Thomas Lyons v. Centerline Holding Company, et al.*, No. 08-CV-1458 (filed Feb. 11, 2008) at ¶ 4; and *Deborah Dechter v. Centerline Holding Company, et al.*, No. 08-CV-1593-SAS (filed Feb. 15, 2008) at ¶ 1.

for the Burns Group has done here – issued notices that look like PSLRA notices announcing the filing of an action by <u>someone else</u> (although even this fact is kept hidden) that literally "urged" readers to contact KGS.  The problem meant to be cured by the PSLRA – the race to the courthouse – has been replaced by counsel for the Burns Group with an even worse practice – the race to issue misleading press releases (by counsel who did not file an action) that confuse investors into believing they need to retain counsel to protect their interests.

Specifically, in bold letters near the beginning of the release, KGS states that:

UNLESS A CLASS IS CERTIFIED, YOU ARE NOT PERSONALLY REPRESENTED BY COUNSEL UNLESS YOU RETAIN AN ATTORNEY

<u>If you purchased shares of Centerline, you are urged to contact Lewis Kahn,</u> Managing Partner, KGS . . . .

Ellman Decl. at Ex. 2 (emphasis added).  A layperson will interpret this statement to mean that they must be personally represented by counsel in order to recover in the action. This is untrue. Members of the putative class can recover as absent class members. The next sentence, exhorting purchasers to contact KGS, reinforces the idea that investors need to retain counsel - and fast.[7]

The PSLRA notice provision was enacted as part of Congress' wish to end attorney-driven securities litigation.  *In re Initial Public Offerings Sec. Litig.*, 214 F.R.D. at 123. The PSLRA notice provision was not enacted so that attorneys without clients could issue "act now" come-ons to investors.

---

[7]    Under the Disciplinary Rules of the Code of Professional Responsibility of the State of New York, any lawyer who engages in "solicitation" directed to a recipient in New York must file a copy of the solicitation at the time of its dissemination with the attorney disciplinary committee of the judicial district or judicial department wherein the lawyer or law firm maintains its principal office.  22 N.Y.C.R.R. § 1200.8(c)(1).  "Solicitation" means "any advertisement initiated by or on behalf of a lawyer or law firm that is directed to, or targeted at, a specific recipient or group of recipients … the primary purpose of which is the retention of the lawyer or law firm, and a significant motive for which is pecuniary gain."  22 N.Y.C.R.R. § 1200.8(b). The solicitations must, of course, be truthful and not mislead readers.

KGS' notice had its desired effect. A month after the KGS notice was published, on February 26, 2008, KGS filed the *Quill* Complaint, which alleged a class period beginning December 5, 2006, which not surprisingly doubled the size of the Burns Group's claimed loss in this case. Out of a total of six complaints, **no other complaint alleged this class period**.

(a) <u>The Expanded Class Period Is Patently Unsupportable</u>

The Second Circuit has held that district courts, in assessing whether a movant has met the requirements of Fed. R. Civ. P. 23 at the class certification stage should, if necessary, consider issues that touch upon the merits. *See In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). While the Rule 23 analysis at the lead plaintiff stage is not as searching as at the class certification stage, the PSLRA lead plaintiff provisions require that the Court find that the movant preliminarily meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Consistent with *In re Initial Public Offerings* it is appropriate for the Court to consider whether the allegations asserted in *Quill* Complaint support a start date for the class period of December 5. *See In re Initial Public Offerings Sec. Litig.*, 471 F.3d at 41 ("there is no reason to lessen a district court's obligation to make a determination that every Rule 23 requirement is met before certifying a class just because of some or even full overlap of that requirement with a merits issue.").  Put another way, there is no reason for a district court to automatically accept a class period for purposes of making any Rule 23 related decisions where the allegations and/or facts do not support the stated class period, particularly where there exists evidence that suggests manipulation.

Even before *In re Initial Public Offerings*, courts have declined to compare the financial interest of lead plaintiff movants on unsupportable class periods.  In *In re Unitedhealth Group Inc. PSLRA Litig.*, No. 06-cv-1691 (JMR/FLN) (D. Minn.), the court appointed the movant who argued against use of the longer class period because a claims in a portion of the longest filed

- 10 -

class period did not exist. *See* Order Designating Lead Pltff., dated Sep. 14, 2006 (*see* Ellman Decl. at Ex. 5); Hrg. Tr. 19:16-21:11, Aug. 7, 2006 (*see* Ellman Decl. at Ex. 6).[8]

Courts have also been willing to reject conclusory allegations at the lead plaintiff stage in making other lead plaintiff determinations, such as determining the "largest financial interest." In a recent opinion by Judge Garafus, the court rejected an "in and out" trader because he viewed assertions of "partial disclosures" (which would have established a basis for loss causation) as being conclusory and unsupported by the facts alleged in the complaint. *See, e.g., In re Converse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *6 (E.D.N.Y. Mar. 2, 2007) ("[I]t would be unfair to speculate that [the movant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege facts in support thereof. Moreover, such a practice would encourage plaintiffs competing to lead a PSLRA litigation to overstate their losses at the outset of a lawsuit, in hope of a court's declining to look beyond those conclusory allegations until after discovery, when it might be too late to appoint a more deserving lead plaintiff.")[9]

---

[8]    In *In re Pfizer, Inc. Sec. Litig.*, Judge Owen declined to use the longer class period because it was not noticed to class members. *See* 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (Owen, J.). Similarly, KGS noticed their contrived class period on January 12, 2008, a mere six days before motions for lead plaintiff were due, giving investors very little time to apprise themselves of the longer class period. *See* Ex. 3. Yet KGS was able to obtain the certification of Jona Goldrich that same day, and the rest of its clients' certifications before January 18. *See* Decl. of Bruce D. Bernstein in Support of the Burns Group Motion, Ex. A-E [Dkt. #25]. Oddly, KGS filed the *Quill* Complaint more than two weeks earlier, on February 26, 2008.

[9]    The Burns Group will hide behind a line of cases finding that courts should utilize the longest class period in determining which the plaintiff applicant has the largest financial interest.. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The [*Catanzarite v. Party City Corp.*, Civil Action No. 99-1317 (D.N.J.)] Action is relied upon for purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants."); *see also In re Star Gas Sec. Litig.*, No. 3:04CV1766 (JBA), 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (finding that the longest class period alleged is to be utilized in determining the largest financial interest). However, this Court is not bound by the

Having successfully recruited class members using look-alike PSLRA notices, counsel for the Burns Group next engineered a class period that would increase its chances of winning the lead plaintiff motion. While such motives standing alone may or may not be inappropriate, the class period must be supported, or at least not be contradicted, by other allegations in the complaint. The facts underlying some cases allow for any number of plausible class periods, making it difficult for a court to hold that one should not be utilized in the lead plaintiff analysis. However, this is not such a case. We do not say that courts will need to engage in the analysis we urge here to decide lead plaintiff motions in all, or even most, instances.

All of the complaints filed in this action – including the *Quill* Complaint – allege that the truth was disclosed in a December 28, 2007 statement by Centerline.[10]  In the main, each of the complaints alleges that defendants failed to disclose that Centerline was planning to fundamentally change its business, from a conservative bond owner paying a large dividend to a risky asset manager who had sold off the bond portfolio to FreddieMac.  An important issue in this case will be when defendants knew that they were going to change the nature of the business and when serious negotiations began with FreddieMac. One of the primary allegations of scienter is Defendant Schnitzer's admission in a December 28, 2007 conference call, stating that Centerline had been planning this institutional metamorphosis for "close to" a year:

> This morning, <u>we announced the closing of a transformational transaction that has been in the works for close to a year</u> and a significant strategic investment in our firm by our larger shareholder.

---

rulings of other district courts, particularly where the longest class period is a contrivance and where the allegations in the *Quill* complaint do not support an extension of the class period.

    [10]  Compare the *Quill* Complaint at ¶¶ 58-64, with the other consolidated complaints: *Goldstein v. Centerline Holding Co.*, No. 08-CV-505 (filed Jan. 18, 2008), at ¶¶ 8-13, 68-75; *Frank v. Centerline Holding Co.*, 08-CV-1026-SAS (filed Jan. 31, 2008) at ¶¶ 34-36; *Weinrib v. Centerline Holding Co.*, No. 08-CV-1158 (filed Feb. 4, 2008) at ¶¶ 28-29; *Lyons v. Centerline Holding Co.*, No. 08-CV-1458 (filed Feb. 11, 2008) at ¶¶ 68-75; and *Dechter v. Centerline Holding Co.*, No. 08-CV-1593-SAS (filed Feb. 15, 2008) at ¶¶ 52-59.

(emphasis added).[11]  Defendant Schnitzer's statement shows that the transaction at issue was in the works for less than one year before the disclosure *i.e.*, after December 28, 2006. Accordingly, we are unaware of any basis to allege that statements made before December 28, 2006, were false or misleading.

The *Quill* complaint quotes from the December 28, 2007, conference call, though the particular quote above is paraphrased -- incorrectly -- rather than quoted:

> the Company hosted a conference call during which Defendants revealed that their plan to radically revise Centerline from a tax-exempt bond fund into a much higher risk, asset manager had been in the planning stages since at least the inception of the class period.

*Quill* Complaint at ¶ 62. *compare with Goldstein v. Centerline Holding Co.*, No. 08-CV-505 (filed Jan. 18, 2008), at ¶¶ 8-13, 68-75 ("has been in the works for close to a year.") The class period alleged in the *Quill* complaint is therefore inconsistent with other allegations in the complaint.  The reason for KGS and Dreier's artificial extension of the class period is evident by comparing the Burns Group's purchases (total and net), net expenditures, and losses during the two class periods:

|  | Total Purchases | Net Purchases | Net Expenditures | LIFO Losses |
|---|---|---|---|---|
| Using Class Period Beginning Dec. 5, 2006 | 142,832 | 70,984 | $1,398,463 | $1,429,404 |
| Using Class Period Beginning Mar. 12, 2007 | 70,832 | 27,884 | $589,311 | $609,432 |

---

[11]  This quote appears in all of the consolidated complaints except the *Quill* Complaint and the complaint filed in *Weinrib v. Centerline*, No. 08-CV-1158, which alleges a class period beginning on March 12, 2007, but does not include any reference to the December 28, 2007 conference call.  Moreover, the shareholder derivative complaints filed in this Court include Schnitzer's "close to a year," statement.  *See Carfagno v. Schnitzer*, No. 08-CV-912-SAS (filed Jan. 25, 2008) at ¶ 58; *Kanter, v. Ross*, No. 08-CV-1827 (filed Feb. 22, 2008) at ¶ 43.

The Court should not reward the filing of complaints containing allegations removed from reality, especially in the context of a case governed by a statute enacted to do away with these types of tactics. Accordingly, the transactions of the Burns Group occurring before the class period beginning March 12, 2007 should be disregarded for purposes of the financial interest analysis.

### B.    The Burns Group is Inadequate

As this Court has held, courts are split over the appropriateness of aggregating class members into lead plaintiff groups, and that a "rule of reason" prevails. *In re eSpeed*, 232 F.R.D. at 99. The rule is that a group should be reasonably sized and otherwise capable of spearheading the litigation, and that it should not be attorney driven. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If . . . a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner.") (citations omitted).

In order to meet the rule of reason, a group should demonstrate that it is "cohesive," that is, able to work together to supervise counsel in the litigation. *See, e.g., In re MicroStrategy Inc. Sec. Litig.,* 110 F. Supp. 2d 427 (E.D. Va. 2000) (rejecting a group where "there was nothing in the record to provide any assurance that the group was cohesive, comprised of like-minded members, or otherwise likely to function as a unified group. The group failed to present evidence with respect to its formation, its operational structure, or whether the members of the group had ever communicated with one another about their roles.") The Centerline Investor Group has demonstrated its cohesiveness in a declaration evidencing that all the members spoke to each other numerous times regarding this litigation, that they understand their duties as lead

plaintiffs and that they have established a mechanism for reaching decisions and for supervising counsel. *See Infra* Point III.

The Burns Group is not "cohesive," and not only because it has not submitted any evidence of its cohesiveness. To the contrary, the record shows that the "group" <u>is already fracturing</u>. Jona Goldrich, a member of the Burns Group, abruptly withdrew his motion on April 1, 2007. *See* Dkt #34. Having already lost a member at this nascent stage of the litigation, the remainder of the Burns Group should not be entrusted to spearhead a complex litigation that make take years to resolve and must withstand attacks by defendants who will have the opportunity to depose lead plaintiffs and class representatives.

A group's "shifting membership" has been criticized by courts as indicative of inadequacy. *See Sakhrani v. Brightpoint*, 78 F. Supp. 2d 845, 848 n.2 (S.D. Ind. 1999) (where a member of group filed notice of withdrawal, court found that "the shifting membership and alliances provide good evidence that this is not the sort of 'group of persons' contemplated by the PSLRA."); *Switzenbaum v. Orbital Sci. Corp.*, 187 F.R.D. 246, 251 (E.D. Va. 1999) (finding that due to a group's changing membership, the group "cannot credibly claim to offer adequate representation to others.").

The Burns Group does not meet the rule of reason standard. The Burns Group's involvement in the case is the product of gamesmanship at every step, beginning with its investor recruitment using fake PSLRA notices, the baseless extension of the class period to include more of its losses, and ending with the submission of a joint motion that has already unraveled.

### III. THE CENTERLINE INVESTOR GROUP IS A COHESIVE GROUP THAT IS CAPABLE OF <u>EFFECTIVELY AND EFFICIENTLY LEADING THIS LITIGATION</u>

The Centerline Investor Group has demonstrated that it is a cohesive group with members committed to working closely with one another and with class counsel to obtain the best possible

recovery for the Class.  *See* Joint Declaration of the Centerline Investor Group, Ellman Decl. at Ex. 7.  Accordingly, the Centerline Investor Group satisfies the requirements of Fed. R. Civ. P. 23(a)(4) that it will "fairly and adequately protect the interests of the class."

The Centerline Investor Group has had three conference calls during which its members discussed at length their responsibilities as lead plaintiff in overseeing the work of lead counsel to ensure that the litigation is handled efficiently, and that the resulting fees and expenses are fair and reasonable, relative to the size, complexity and risk of the litigation.  *Id.* ¶ 4.  Each member of the Centerline Investor Group understands his fiduciary duty to the Class to monitor and control the Centerline securities class action and they understand the scope of the lead plaintiff's responsibilities under the PSLRA.  *Id.* ¶ 5.  The Centerline Investor Group has also agreed upon a procedure for resolving disagreements between members.

A number of courts have pointed to a group's submission of a declaration evidencing its members' prior communication as proof that the members will control counsel.  *See Schoenfeld v. Dendreon Corp.*, No. 07-cv-800 MJP, 2007 WL 2916533, at *4 (W.D. Wash. Oct. 4, 2007) ("proposed groups with no pre-litigation connection should submit a declaration providing information about the group's members, its structure and its intended functioning") (citing *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999)); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 307 (S.D. Ohio 2005) (appointing a small group of investors which "adduced information about its proposed manner of communication and decision-making" through submission of a joint declaration); *Ferrari v. Gisch*, 225 F.R.D. 599, 607-08 (C.D. Cal. 2004) (appointing a group of three investors who submitted a joint declaration); *In re NorthWestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D.S.D. 2003) ("The Court is satisfied based upon the Joint Declaration submitted by the three members of the

Carpenters Group that they will work as a cohesive group and each has a significant financial incentive to maximize the recovery for all NorthWestern securities' holders involved in this action.").

The Centerline Investor Group and its counsel have further established their commitment to protect the class by actively monitoring the derivative and class actions against Centerline which have been settled in the Delaware Chancery Court. *See Off* Action. The Centerline Investor Group has challenged the release in the *Off* Action, which purports to release claims in this consolidated action, and has advised Vice Chancellor Parsons that it intends to object to the settlement of the *Off* Action unless the release excludes any claims that arise under the federal securities laws. *See* Ellman Decl. at Ex. 4.

## <u>CONCLUSION</u>

For the foregoing reasons, the Centerline Investor Group respectfully requests that the Court: (1) appoint the Centerline Investor Group as lead plaintiff; and (2) approve Labaton Sucharow LLP and Berger & Montague, P.C. as Lead Counsel for the Class.

Dated: April 4, 2008                                  Respectfully submitted,

**LABATON SUCHAROW LLP**

By:   /s/ Christopher J. Keller
Lawrence A. Sucharow (LS-1726)
Christopher J. Keller (CK-2347)
Andrei V. Rado (AR-3724)
Alan I. Ellman (AE-7347)
140 Broadway
New York, New York 10005
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477

**BERGER & MONTAGUE, P.C**.
Sherrie R. Savett
Barbara A. Podell
Eric Lechtzin
1622 Locust Street
Philadelphia, PA 19103
Tel. (215) 875-3000
Fax (215) 875-4604

*Attorneys for the Centerline Investor Group*
and *Proposed Lead Counsel for the Class*