UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CENTERLINE HOLDING COMPANY SECURITIES LITIGATION | Case No. 08 Civ. 00505 (SAS) |
| BRIAN QUILL, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CENTERLINE HOLDING CO. INC., MARC D. SCHNITZER, ROBERT L. LEVY, STEPHEN M. ROSS, JEFF T. BLAU, and LEONARD W. COTTON<br><br>Defendants. | Case No. 08 Civ. 01902 (SAS) |

**REPLY BRIEF IN SUPPORT OF THE BURNS GROUP'S MOTION FOR CONSOLIDATION OF ALL RELATED ACTIONS; APPOINTMENT AS LEAD PLAINTIFF; AND APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS**

**DREIER LLP**
Bruce D. Bernstein
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 328-6100

**KAHN GAUTHIER SWICK, LLC**
Kim E. Miller
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730

-and-

Lewis Kahn
Poydras Center
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone: (504) 455-1400

*Counsel for the Burns Group and
Proposed Co-Lead Counsel for the Class*

**INTRODUCTION**

Lead Plaintiff Movant the Burns Group, with losses of $1,429,403.83—more than $327,000 greater than the losses of the second-largest lead plaintiff movant—respectfully submits its reply brief in support of its motion to appoint the Burns Group as Lead Plaintiff, and approve its selection of the law firms of Kahn Gauthier Swick, LLC ("KGS") and Dreier LLP ("Dreier") as co-lead counsel.

The Burns Group is the presumptive Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). *See also Sofran v. LaBranche* & Co., 220 F.R.D. 398, 402 (S.D.N.Y. 2004). Thus, the burden is on the four competing movants to rebut this presumption with ***"proof"*** that the Burns Group will not fairly and adequately represent the class, or is subject to unique defenses that will render it incapable of adequately representing the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). The competing movants can do neither.

Among the four competing movants, two have already conceded that they are not the most adequate Lead Plaintiff. *See* April 4, 2008 Response of Movants Louise Levin, Deborah Dechter, Elizabeth F. Newman, Wai-Lam Li, and Pei-Mei Li and April 4, 2008 Response of Movant David Garfinkle. The remaining two movants utterly fail to rebut the Lead Plaintiff presumption afforded to the Burns Group.

One of those movants, the five Goldenberg individuals (the "Goldenberg Group"), with losses of approximately $73,478.81 (*i.e.*, less than 6% of the Burns Group's losses), argues that movant groups without a pre-litigation relationship are somehow improper despite the fact that in the Second Circuit the overwhelming majority view is that small manageable groups—such as the Burns Group, comprised of Tom Burns, a sophisticated individual investor and three additional experienced investors who all share a single investment advisor—are perfectly appropriate Lead Plaintiffs. The other competing movant, the "Centerline Investor Group" or "CIG", with approximate losses of $1,101,513, has entirely abandoned the Class Period that they

1

fully embraced in their Lead Plaintiff motion.[1] Indeed, in order to secure the position of Lead Counsel for the Class, counsel for CIG is willing to ignore its fiduciary duties to the Class and jettison the losses of all Class members for the full Class Period–including losses of one of their very own clients.[2]

## ARGUMENT

As set forth in the Burns Group's Initial Memorandum and Opposition Memorandum ("Opp."), the Burns Group: (i) has the largest financial interest in this matter and is therefore the presumptive Lead Plaintiff; and (ii) also meets the requirements of Rule 23. In order to rebut the PSLRA's most adequate plaintiff presumption, competing movants must offer "proof" that the Burns Group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." § 7u-4(a)(3)(b)(iii)(II); *see also Sofran*, 220 F.R.D. at 403. Indeed, "speculative and hypothetical" allegations "should not prevent the appointment" of lead plaintiff. *See also Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *21-23 (S.D.N.Y. July 15, 2004) (rejecting as a "red herring" attempts by counsel to use "innuendo and inferences rather than established fact" to rebut a proposed lead plaintiff group's most adequate plaintiff presumption.").

---

[1] In fact, at least four out the five competing movants (the Burns Group, CIG, the Goldenberg Group, and David Garfinkle) have adopted December 5, 2006 through December 28, 2007 as the proper Class Period in their respective lead plaintiff motions. The lead plaintiff motion of the fifth movant, the Levin Group, does not set forth whether it is based on the shorter, initial period (*i.e.*, March 12, 2007 through December 28, 2007) or the extended Class Period.

[2] CIG member Norman Millman's purchases of Centerline stock in January and February 2007 resulted in losses of more than *$50,000*. *See* Decl. of Allan Ellman in Support of CIG lead plaintiff motion, Exh. B (sworn certification of Norman Millman, setting forth his "transactions in the securities of Centerline Holding company between and including December 5, 2006 through December 28, 2007, inclusive (the "Class Period")"). His counsel, however, appears to have abandoned those losses.

### A. Competing Lead Plaintiff Movants Have Failed to Rebut the Lead Plaintiff Presumption Favoring the Burns Group

#### 1. The Burns Group Is a Proper Lead Plaintiff Group

The Goldenberg Group argues that the Burns Group is an improper lead plaintiff movant because it is a group of "unrelated" investors. Goldenberg Opp. Mem. at 10. In doing so, the Goldenberg Group ignores that courts in this Circuit permit plaintiffs to aggregate their losses for the purposes of Lead Plaintiff selection, particularly when the appointment of such a group would not replace an institutional investor whose losses are greater than the individual members of the group. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) (the "majority view" in the Second Circuit holds that "unrelated investors may aggregate;" and the Court concluded that "where aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff, assuming they meet other necessary requirements"); *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (permitting aggregation of the losses of a "group of seven" unrelated investors)).

Here, as noted previously, the Burns Group includes a sophisticated individual investor, as well as three other investors who share a single investment advisor. In further support of their Lead Plaintiff motion, and in addition to their statutory certifications, the members of the Burns Group have submitted a Joint Declaration in conjunction with this filing that addresses the group's willingness and ability to: (i) work together; (ii) oversee this litigation; and (iii) work with its chosen counsel to vigorously prosecute the action. *See Rozemboom v. Van Der Moolen Holding, N.V.*, No. 03 Civ. 8284, 2004 WL 816440, at *4 (S.D.N.Y. Apr. 14, 2004) (citing cases saying that "previously unrelated persons may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive.").

3

### 2. Competing Movants Previously Conceded the Longer Class Period Is Proper

In its lead plaintiff motion, CIG fully adopted the lengthier Class Period set forth in the *Quill* Complaint (December 5, 2006 through December 28, 2007) to: (i) calculate its losses; and (ii) "demonstrate that [it] will adequately represent the entire class of persons who purchased Centerline stock" CIG Initial Mem. at 3 n. 4. However, after filing the motion and realizing that another group had a far greater financial interest, counsel for CIG promptly reversed course, entirely abandoned their initial position, and suddenly argued that the extended period was the result of the Burns Group "manipulating the starting date of the class period to conform to its trading history rather than the facts of the case." CIG Opp. Mem. at 1.³ CIG's new position, however, is erroneous, as well as ironic.

Indeed, in addition to abandoning the position taken in their clients' lead plaintiff motion, counsel for CIG's attempt to reconfigure the class period and manufacture the largest financial interest is contrary to the law, the facts, and their fiduciary duties to putative class members, including CIG, *e.g.*, their own clients. As CIG acknowledged in its opening brief, courts routinely utilize the largest class period alleged among related actions in determining the largest financial interest among competing lead plaintiff movants. CIG Initial Mem. at 3 n. 3 (citing cases); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). Furthermore, it is well established that it is inappropriate to adjudicate factually intensive issues concerning the merits of the alleged claims, including questions concerning the length of a proposed class period, at this stage of the proceedings⁴ -- and only appropriate to a limited extent at ***class certification***.⁵

---

³ Although the Goldenberg Group also adopted the extended Class Period for purposes of this motion, it did not argue that the extended Class Period is improper.

⁴ *See, e.g., Kaplan*, 240 F.R.D. at 91; *In re Star Gas Sec. Litig.*, No. 04CV1766, 2005 WL 818617 (D. Conn. Apr. 8, 2005); *Lax v. First Merchs. Acceptance Corp.*, No. 97C2715, 1997 WL 461036, at *5 n 8 (N.D. Ill. Aug., 15, 1997).

⁵ CIG's citation to *In re Initial Pub. Offering Sec., Litig.*, ("IPO") 471 F.3d 24 (2d Cir. 2006), is misplaced. In *IPO*, 471 F.3d at 27, the Second Circuit held that the "fact that a Rule 23 requirement might overlap with an issue on the merits does not avoid the court's obligation to make a ruling as to whether the requirement is met, although such a circumstance might

Indeed, in *In re Star Gas Sec. Litig.*, No. 04CV1766, 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005), one of the cases that CIG cited in support of its initial position that the appropriate period "for this Motion" is the "longest period" (CIG Initial Mem. at 3 n.3), the Labaton firm (counsel for CIG) successfully rebuffed a competing movant's contention that there "was really no basis"[6] for Labaton's clients to include losses for a ***period*** <u>***three years***</u> ***longer*** than that set forth in the initial PSLRA notice:

> The Dombowsky Group argues that only those who purchased Star Gas stock during the shortest proposed class period (December 4, 2003-October 18, 2004) should be appointed lead plaintiffs because there is insufficient evidence that Star Gas committed securities fraud before this period, and because the notice published by the first-filing plaintiff was limited to the shorter period. However, it would be premature to limit the plaintiff class in this way at such an early stage of the litigation. The appointed lead plaintiffs can decide how to frame their amended complaint in terms of an appropriate class period in their best judgment.

Here, in contrast to their efforts in *Star Gas*, counsel for CIG asks this Court to ***limit*** the size of the class by making, at the very least, an entirely premature determination that any losses incurred by Centerline investors during the *extended period* (*i.e.*, the <u>***three months***</u> between December 5, 2006 and March 11, 2007), were not the result of Defendants' wrongful conduct. *See* CIG Opp. at 10-11. Specifically, counsel for CIG contends that the expanded Class Period is "patently unsupportable," because, on the last day of the Class Period, December 28, 2007 (*i.e.*,

---

appropriately limit the scope of the court's inquiry ***at the class certification stage***") (emphasis added). *See also Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982) (at class certification stage, "it would be improper for a district court to resolve substantial questions of fact going to the merits when deciding the scope or time limits of the class."); *Koch v. Dwyer*, No.. 98 Civ. 5519, 2001 WL 289972, at *6 (S.D.N.Y. Mar. 23, 2001) (refusing to shorten class period and noting "whether claims falling outside some narrower time window within the class period are, in fact, groundless on the merits is a question that should not be answered when the court decides whether to certify a class.").

[6] *See* Supplemental Declaration of Lewis Kahn ("Kahn Supp. Decl."), Exh. A (quoted section from transcript of oral argument of competing lead plaintiff motions in *Star Gas*, No. 04-CV-1766 (D. Conn.)).

5

approximately 55 weeks after the first day of the Class period), Defendants conceded that the "institutional metamorphosis" of its business (from a conservative bond holder to an asset managing company), had "been in the works for close to a year." *Id.* [7] The contention made by CIG's counsel essentially attempts to persuade this court, contrary to the law at the pleading stage, to conduct a factually-intensive parsing analysis in which it wrongly construes all inferences in favor of Defendants. *See ATSI Comm., Inc. v. Shaar Fund*, *Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (on a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and drew all reasonable inferences in plaintiffs' favor). *But see* CIG Opp. Mem. at 12-13 (erroneously contending, in this securities fraud action, that the phrase "close to a year" can only be construed to mean "less than a year" as opposed to "more than a year.").[8]

Even if plaintiffs were ultimately unable to prove that Defendants' December 5, 2006 statements were not materially misleading at the time they were made, Defendants may still be liable for failing to update those statements between December 5, 2006 and March 12, 2007, *i.e.*,

---

[7] CIG ignores Defendants' statements at the December 5, 2006 investor luncheon and the context in which they were made. *See* Kahn Supp. Decl., Exh. B (Tr. of Defendants' statements at investor luncheon) at 1 ("so the first thing we really want to accomplish with you is to try and lay out for you what our strategy is."); ("we are obviously a dividend paying company, paying out $1.68 per share annually'). *See also Quill* Cmpt. ¶58-65 (allegations concerning the revelation of Defendants' wrongful conduct, *e.g.*, ¶ 58 ("The transaction represents a major step in Centerline's plan to transform itself into an alternative asset management company. "); ¶65 ("Centerline executives angered long-term shareholders by cutting the tax advantaged dividend by 64%"—from $1.68 to 60 cents annually.")).

[8] CIG's citation to the transcript of the lead plaintiff argument and the subsequent sparse, unpublished order in *In re UnitedHealth Group Inc. PSLRA Litig.*, No. 06-cv-1691 (Ellman Decl., Exhs. 5 and 6), is inapposite. The order does not support, or even address, CIG's argument that the Class Period here is improper. Further, the most that can be surmised from the transcript (which is, at best, quite confusing given that counsel is referencing a chart or exhibit not provided here) is that counsel for one lead plaintiff movant that sought to extend the class period by several years to the maximum permitted by the statute of limitations *conceded* that "buyers [of the company stock] in [the] earlier three-or four-year period, don't have a loss." Ellman Decl., Exh. 5. Here, as CIG member Millman's own certification shows, that is not the case.

the "extended class period." *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268 ("[W]e hold that when a corporation is pursuing a specific business goal and announces that goal as well as an intended approach for reaching it, it may come under an obligation to disclose other approaches to reaching the goal when those approaches are under serious consideration"). As **all** of the Burns Group's losses in Centerline stock are attributable to transactions that took place **on or after February 27, 2007**, *i.e.*, well within a year of Defendants' announcing the "close of [Centerline's] transformational transaction," those losses may be attributable to Defendants' failure to update their December 5, 2006 statements. *See* Kahn Decl. Exh. B (tables reflecting revised calculations of Burns Group's approximate Class Period loss pursuant to LIFO).[9]

### 3. The Press Releases Issued by all Counsel Further the Goals of the PSLRA

"[The] PSLRA imposes procedural protections intended to encourage investors with substantial security holdings, whose interests are likely to be strongly aligned with the interests of the shareholder class, to participate in litigation as lead plaintiffs." *Marsden v. Select Med. Corp.*, No. 04 Civ. 4020, 2005 WL 113128, *1 (E.D. Pa Jan. 18, 2005) (citations omitted). Specifically, the PSLRA requires the plaintiff in the first filed action issue a notice. 15 U.S.C. 78u-(a)(3)(A)(ii)). The purpose of such notice is to notify purported class members of the pendency of the action and its claims, 15 U.S.C. §78u-4(a)(3)(A)(i), as well as to notify "**any member of the purported class,**" that he or she "may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. §78u-4(a)(3)(A)(i)-(ii). While the PSLRA clarifies that only

---

[9] CIG's contention that Tom Burns "sold 42,948 of the 51,832 shares he purchased during the proper class period" is misleading. CIG Opp. Mem. at 4. Indeed, the statement fails to make clear that it is referring, *albeit inaccurately*, to Mr. Burns's transactions in Centerline stock between March 12, 2007 through December 28, 2007, as opposed to the "longer" period that counsel for CIG initially embraced as the *proper* Class Period. Moreover, the statement still fails to accurately set forth Mr. Burns's transactions in Centerline stock even during this shortened period. Specifically, on August 1, 2007, Mr. Burns sold 42,948 shares of Centerline stock (which, under LIFO, largely corresponded to shares purchased prior to March 2007). On August 3, 2007, *i.e.*, two days after this sale, Mr. Burns purchased 41,832 shares of Centerline stock, ***all of which he has retained***. *See* Bernstein Decl in support of Burns Group's lead plaintiff motion., Exh A, certification of Tom Burns.

plaintiffs in the first filed action are *required* to publish such notice, the statute places no restrictions on the filing of such notice by other attorneys thereafter.[10]

In furtherance of Congress's goals in enacting the PSLRA, it is important that investors with substantial holdings are made aware of their choices in legal representation and of the fact that unless a class is certified, they are not personally represented by counsel, and also will not be able to steer the litigation in which they have a great financial stake unless they step forward as a lead plaintiff movant. KGS's release did exactly that. To limit such notices from being filed would deprive potential class members from selecting counsel from a diverse pool of qualified firms– clearly a contrary result to the PSLRA notice's intended effect of informing class members about the action and their rights to serve as lead plaintiff. Moreover, while CIG expresses concern over the interpretation of a statement in KGS's press release by a "layperson," (a statement which is both true, and important to investors) (CIG Opp. at 9) it fails to acknowledge that a "layperson" may believe he or she has a right only to select counsel from the finite group of law firms that issue press releases—and CIG seeks to greatly limit that group to the detriment of investors and the Class.

In an attempt to deny the Burns Group its right to select counsel provided to it under the PSLRA, CIG, through its counsel, Berger & Montague and Labaton, mischaracterizes KGS' press release regarding the commencement of the action it filed, *see* 15 U.S.C. § 78u-4(a), as "misleading." *See* CIG Opp. at 9. Such arguments have routinely been rejected as bases to rebut the adequacy of a lead plaintiff or its choice of counsel. *See, e.g., In re Optionable Sec. Litig.*, 07 Civ. 3753 (LAK) (S.D.N.Y. November 20, 2007) (Presumptive lead plaintiff KLD Investment Management, Inc. appointed lead plaintiff and its choice of lead counsel KGS ratified by Judge Lewis Kaplan despite similar arguments from competing movant concerning the propriety of

---

[10] Indeed, the Labaton firm filed a notice two weeks after its proposed co-counsel, Berger & Montague, issued the initial PSLRA notice. *See* Kahn Supp. Decl. Exh. C (notice published by Labaton on 02/04/08). In addition, press releases regarding filing of a class action against Centerline were issued by, among others: Schatz & Nobel (on 1/31/08); Coughlin Stoia (on 2/4/08); and The Brualdi Law Firm (on 2/8/08).

8

press releases) attached at Exh. D to Kahn Supp. Decl.

Furthermore, KGS's press releases were factually accurate and designed to provide investors with information statutorily required to be disseminated, *see* 15 U.S.C. § 78u-4(a)(3)(A), and a choice of counsel to represent them. KGS's press release stated that "KGS [] encourages you to carefully evaluate any other firm you may consider to represent your interests in the Centerline class action." The issuance of other press releases, by multiple law firms besides Berger & Montague and Labaton Sucharow, provided Class members with a choice of counsel – a benefit that the Berger & Montague and Labaton firms would have this Court, potentially unconstitutionally, limit. Contrary to CIG's argument at pages 8 and 9 of its Opposition, a goal of the PSLRA is to provide Class members with greater information and options, and expressly not to limit those options to those law firms which have already filed complaints. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (citing H.R. Conf. Rep. No. 104-369, at 32 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731)).

### 4. The Burns Group's Immaterial Changes To Its Client Certifications Have No Impact On Its Loss Calculations and Do Not Affect Its Adequacy As Lead Plaintiff

The Burns Group initially consisted of five members. After Mr. Goldrich's withdrawal from the Burns Group, the Group's approximate losses changed from $1,579,969.00 to $1,429,403.83, as demonstrated in the Burns Group's corrected motion for Lead Plaintiff. As noted in the previously-filed Declaration of Lewis Kahn correcting calculations submitted with the opposition motion for Lead Plaintiff, there were minor changes regarding pre-class period holdings for Mr. Landau and Mr. Burns which had no impact whatsoever on the calculation of the estimated Class Period loss of the Burns Group.[11]

---

[11] Mr. Landau's certification inadvertently omitted his sales of 18,900 shares of Centerline common stock in December 2006 as well as his purchase of 1,600 shares in April 2007. Also, Mr. Burns made sales of 24,348 of Centerline stock on August 1, 2007 which, while included in his initial certification, were omitted from calculations of net purchases and net expenditures. None of these purchases or sales had an impact on the Burns Group's estimated Class Period losses.

As noted in the Burns Group's opposition, the Burns Group respectfully submits herewith the revised certification for Mr. Landau with updated trade data. Kahn Supp. Decl. at Exh. E. Such minor unintentional errors, such as those here, which do not affect the Group's estimated Class Period losses, do not undermine the Burns Group's adequacy as Lead Plaintiff. In fact, even where errors are material and impact the loss calculation, court routinely hold they are no cause for concern. *See e.g., Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 410-11 (D. Minn. 1998) (court allowed lead plaintiff movant to correct "technical deficiencies" in initial certification with supplemental filing); *McKitty v. Advance Tissue Scis., Inc.* (*In re Advance Tissue Scis. Sec. Litig.*, 184 F.R.D. 346, 351 n 12 (S.D. Cal. 1998) (court rejected argument that error in loss calculation should overcome statutory presumption favoring movant with largest financial interest).

In addition, CIG has failed to address and or correct errors made in its opening papers regarding its certifications and loss calculations. Instead, in its opposition brief, CIG raises additional troubling issues, including the fact that despite having multiple meetings, one of the members of CIG, Mr. Fried, could not even be bothered to sign his own declaration and instead it was signed with the initials, "AE." Plainly, this is a reference to Alan Ellman, the Labaton attorney who submitted the client declaration.

## CONCLUSION

For the foregoing reasons, the Burns Group respectfully requests that the Court grant its motion in full and appoint the Burns Group as Lead Plaintiff and approve its selection of KGS and Dreier as Co-Lead counsel.

DATED:   April 14, 2008                                  Respectfully submitted,

**KAHN GAUTHIER SWICK, LLC**

By: /s/ Kim E. Miller
Kim E. Miller
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730

Fax: (504) 455-1498

**KAHN GAUTHIER SWICK, LLC**
Lewis Kahn
Poydras Center
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone: (504) 455-1400
Fax: (504) 455-1498

**DREIER LLP**
Bruce D. Bernstein
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 328-6100
Fax: (212) 710-5968

*Counsel for the Burns Group and Proposed Co-Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

     I hereby certify that on April 14, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the e-mail addresses listed on the attached Electronic Mail Notice List, and I hereby certify that I served the foregoing via U.S. Mail to the non-CM/ECF participants listed on the Attached Manual Notice List.

                By: /s/ Kim E. Miller
                Kim E. Miller
                **KAHN GAUTHIER SWICK, LLC**
                12 East 41st Street, 12th Floor
                New York, NY 10017
                Telephone: (212) 696-3730
                Fax: (504) 455-1498

# Mailing Information for a Case 1:08-cv-00505-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennifer Fletcher Beltrami**
  jbeltrami@wolfblock.com

- **Bruce D. Bernstein**
  bbernstein@dreierllp.com

- **Thomas George Ciarlone , Jr**
  tciarlone@lawssb.com

- **Alan Ian Ellman**
  aellman@labaton.com

- **Jacob Goldberg**
  jgoldberg@faruqilaw.com,abarinov@faruqilaw.com

- **Christopher J. Keller**
  ckeller@labaton.com,ElectronicCaseFiling@labaton.com

- **James Clayton Kelly**
  jkelly@wolfpopper.com

- **Andrei V. Rado**
  arado@labaton.com

- **Richard A. Rosen**
  rrosen@paulweiss.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com,amartin@csgrr.com

- **Ralph M. Stone**
  rstone@lawssb.com

- **Rebecca A Tingey**
  rtingey@dreierllp.com

- **Antonio Vozzolo**
  avozzolo@faruqilaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Tony Broy**
,

**John Carfagno**
,