UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CENTERLINE HOLDING COMPANY SECURITIES LITIGATION. | Consolidated C.A. No. 08-CV-00505 (SAS) |

**REPLY MEMORANDUM OF THE CENTERLINE INVESTOR GROUP
IN FURTHER SUPPORT FOR ITS MOTION FOR APPOINTMENT AS
<u>LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................................1

I.  By Making Full Disclosure of its Trading in Centerline Stock,
    The Centerline Investor Group Has Not Endorsed the Class Period
    Alleged By the Burns Group ...............................................................................................1

II. The Class Period Used By the Burns Group to Calculate Its Financial
    Interest is the Result of Its Counsel's Manipulation of the Litigation ................................2

III. The Burns Group is Not Adequate to Represent the Class .................................................4

IV. The Goldenberg Group's Motion Should Be Denied ..........................................................5

V.  The Centerline Investor Group Satisfies the Requirements for a
    Lead Plaintiff Group ............................................................................................................6

    A.  Groups of Unrelated Investors May Serve as Lead Plaintiff ..................................6

    B.  The Centerline Investor Group Has Submitted Evidence
        That It Is a Cohesive Group ....................................................................................7

CONCLUSION ................................................................................................................................9

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bhojwani v. Pistiolis*,
  No. 06-13761 (CM) 2007 U.S. Dist. LEXIS 96246 (S.D.N.Y. July 31, 2007) .............8

*Borochoff v. Glaxosmithkline PLC*,
  246 F.R.D. 201 (S.D.N.Y. 2007) ....................................................................................5

*In re Cardinal Health, Inc., Sec. Litig.*,
  226 F.R.D. 298 (S.D. Ohio 2005) ..................................................................................7

*City of Brockton Retirement System v. Shaw Group, Inc.*,
  No. 06-CV-8245 (CM), 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007)........................6

*In re Comdisco Sec. Litig.*,
  150 F. Supp. 2d 943 (N.D. Ill. 2001) .............................................................................5

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................4, 5, 6, 7

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ...................................................................................7

*Lentz v. Citadel Sec. Software, Inc.*,
  2005 WL 1249441 (N.D.Tex. May 25, 2005) ..............................................................8

*In re Northwestern Corp. Sec. Litig.*,
  299 F. Supp. 2d 997 (D.S.D. 2003) ...............................................................................7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .....................................................................................6

*In re Razorfish, Inc. Sec. Litig.*,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001)............................................................................8

*In re Ribozyme Pharms., Inc. Sec. Litig.*,
  192 F.R.D. 656 (D. Colo. 2000) ....................................................................................8

*Schoenfeld v. Dendreon Corp.*,
  No. 07-CV-800, 2007 WL 2916533 (W.D. Wash. Oct. 4, 2007).................................7

*In re Star Gas Sec. Litig.*,
  No. 3:04-CV-1766 (JBA), 2005 WL 818617 (D. Conn. Apr. 8, 2005)........................6

*In re Tarragon Corp. Sec. Litig.*,
   No. 07-CV-7972 (PKC), 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) ..................... 6, 8

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. 07-cv-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ......................................... 3

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................................. 6

J. Michael Fried, Joseph A. Braddock, Norman Millman, and Edward Friedlander, as trustee for the Ed Friedlander Trust (the "Centerline Investor Group") submit this reply memorandum in further support for their Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel.

## ARGUMENT

**I.     By Making Full Disclosure of its Trading in Centerline Stock, The Centerline Investor Group Has Not Endorsed the Class Period Alleged By the Burns Group**

As set forth in detail in the Centerline Investor Group's opposition memorandum filed on April 4, 2008 ("Centerline Investor Group Opp. Br."), the Court should not utilize the class period asserted in the *Quill* complaint (filed by counsel to the Burns Group) for purposes of determining the most adequate lead plaintiff in this case because, (1) there are no facts to support an extension of the class period, and (2) the extended class period is a contrivance designed to inflate the "financial interest" of the Burns Group.[1] *See Quill v. Centerline Holding Co.*, No. 08-cv-1902 (S.D.N.Y. Feb. 26, 2008) ("*Quill* complaint").

This is not changed merely because the Centerline Investor Group disclosed the trading of its members during the longest class period alleged in any complaint on file with the Court.[2]

---

[1]   Two other lead plaintiff movants also believe that the class period used by the Burns Group is improper. *See* Garfinkle Response Mem. at 1 [Dkt. No. 30] ("Although the Burns Group purports to claim the largest financial interest, the Class Period that it has utilized in calculating its financial interest appears to be improper and inconsistent with the underlying allegations of the complaint."); Levin Response Mem. at 1 [Dkt. No. 40] ("As a result of the investigation conducted by Movant's [sic] counsel, Wolf Popper LLP, Movants believe that Kahn Gauthier Swick, LLC had no basis to extend the class period in the amended complaint filed in *Quill*, and did so for the sole purpose to increase the Burns Group's losses and chances of being appointed lead plaintiff.")

[2]   The Burns Group incorrectly states that the Certification of Norman Millman sets forth his Centerline Holding Co. ("Centerline") transactions between March 12, 2007 and December 28, 2007 (Burns Response at 8 n.6 [Dkt. No. 42]). Mr. Millman's Certification discloses his Centerline transactions between December 5, 2006 and December 28, 2007. *See* Ex. A to Declaration of Alan I. Ellman in Support of the Motion of the Centerline Investor Group for

*(continued ... )*

By doing so, the Centerline Investor Group only sought to put all potentially relevant information before the Court.

## II. The Class Period Used By the Burns Group to Calculate Its Financial Interest is the Result of Its Counsel's Manipulation of the Litigation

In most cases, there may be legitimate factual bases for more than one class period. In this case, however, it became clear <u>after</u> all lead plaintiff motions were filed on March 18, 2008 that the extension of the class period in *Quill* by counsel for the Burns Group was not founded on any facts alleged in any complaint, but instead was manufactured solely to increase the losses of the Burns Group. *See* Centerline Investor Group Opp. Br. at 10-14.

The extension of the class period back to December 5, 2006 directly contradicts facts alleged in every complaint, including *Quill*, because in defendants' December 28, 2007 conference call, defendant Marc D. Schnitzer admitted that the sale of Centerline's mortgage revenue bond portfolio had been in the works for "close to a year." The *Quill* complaint alleges that the December 28, 2007 conference call took place, but omits the key part of the conference call quote containing defendant Schnitzer's admission of "close to a year." *See Id.* at 13. The allegations of record only support a class period beginning on March 12, 2007, when defendants made their first public statement in which they failed to disclose that negotiations with Freddie Mac were then taking place which would result in a fundamental change in the nature of Centerline's business. Based on the December 28, 2007 conference call, the allegations of record also establish that no such negotiations were taking place on December 5, 2006 – more than one year prior to December 28, 2007.

---

( ... continued)
Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("First Ellman Decl.") [Dkt. No. 15]. Mr. Braddock had no Centerline transactions between December 5, 2006 and March 12, 2007.

2

Upon closer investigation, counsel for the Burns Group – Kahn Gauthier Swick, LLC ("KGS") and Dreier LLP ("Dreier") – extended the class period solely to conform to their clients' trading history rather than the facts of the case. As demonstrated in the Centerline Investor Group's opposition brief, KGS and Dreier, which had not filed a complaint, issued "trolling" press releases bearing the proper class period (beginning March 12, 2007) for the sole purpose of soliciting investors to retain their firms. *See Id.* at 8. KGS "*urged*" Centerline shareholders to contact the firm, reinforcing the idea that shareholders needed to retain counsel quickly. *Id.* at 9. Once shareholders responded, KGS and Dreier filed the *Quill* complaint with an expanded class period that captured the Burns Group's numerous purchases from December 5, 2006 through March 11, 2007. Not surprisingly, a majority of the losses claimed by the Burns Group – $819,972 out of $1,428,404 – resulted from its purchases of Centerline stock prior to March 12, 2007.

KGS has just recently been chastised by the court in *Tsirekidze v. Syntax-Brillian Corp.*, for issuing similar solicitation press releases which "urge" investors to retain the firm, also where it did not file an initial complaint:

> [A] [c]ompeting movant . . . has brought to our attention a "press release" issued by the Farrukh Group's counsel [KGS] the day before the lead-plaintiff window closed, which "urges" Syntax investors to sign up with the firm. All members of the Farrukh Group signed certifications in support of lead plaintiff the next day, . . . the day lead plaintiff motions were due . . . . Without determining the ethical implications of counsel's patent effort to solicit clients, we conclude that the Farrukh Group's formation runs directly contrary to the goals of the PSLRA – to reduce lawyer-driven litigation.

No. 07-cv-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008); *see also* Mot. of the Farrukh Group to Consolidate All Similar Cases, to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel at 1, *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204 (D. Ariz. filed Jan. 15, 2008) (showing that KGS represented the Farrukh Group) (attached

3

as Ex. 1 to the Third Declaration of Alan I. Ellman In Further Support of the Motion of the Centerline Investor Group For Appointment As Lead Plaintiff and Approval of Selection of Lead Counsel ("Third Ellman Decl.")). The record evidence is clear that the class period relied upon by the Burns Group was invented by counsel in order to secure lead plaintiff/lead counsel designation. We are aware of no authority allowing plaintiffs (and their counsel) to arbitrarily broaden a class period for that purpose. The Burns Group's financial interest should be evaluated accordingly.

### III.     The Burns Group is Not Adequate to Represent the Class

Adequacy depends upon the existence of common interests between class members and the representative party and a showing of a willingness by the representative party to prosecute vigorously the action on behalf of all class members. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 103 (S.D.N.Y. 2005) (Scheindlin, J.). The Burns Group does not satisfy the adequacy requirement because it is advocating an improper extension of the class period which will (i) dilute the interests of the purchasers during the proper class period; (ii) divert the attention of the parties from the legitimate issues in the litigation; and (iii) ultimately be prejudicial to the interests of purchasers during the proper class period.

The Burns Group relies on the *Quill* complaint, which omits a crucial admission by a key defendant solely to improve its chances of being appointed lead plaintiff. In order to manipulate the lead plaintiff process, counsel for the Burns Group has purposefully filed a complaint which is weaker than it can be. This evidences that the Burns Group will not be able to adequately protect the interests of the class.[3]

---

[3] Although all parties allege a similar course of events, the Burns Group's failure to acknowledge defendant Schnitzer's December 28, 2007 admission of "close to a year," which is important to plaintiffs' proof of scienter, precludes the Burns Group from making the same
*(continued ... )*

4

## IV. The Goldenberg Group's Motion Should Be Denied

Because the Centerline Investor Group has the largest financial interest in the litigation during the correct class period and otherwise meets the typicality and adequacy requirements of Fed. R. Civ. P. 23(a), the Court need not consider the Goldenberg Group's baseless claim that it is more adequate despite its admittedly smaller financial stake in this case. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) and (II); *In re eSpeed*, 232 F.R.D. at 98-99 ("The lead plaintiff determination does not depend on the court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfils the requirements of the Act.").

The Goldenberg Group fails to rebut the presumption that the Centerline Investor Group is the most adequate plaintiff to lead this litigation. Also, as a net seller of Centerline stock during the class period, the Goldenberg Group is not an adequate class representative. Specifically, the Goldenberg Group is a net seller of 324 shares of Centerline stock during the class period (thus benefiting from the alleged artificial inflation in the price of Centerline stock) and has a LIFO loss of $71,384, as compared to the Centerline Investor Group, which is a net purchaser of 132,939 shares (more than any other movant) and has a LIFO loss of $1,050,787 – more than *14 times* greater than the loss claimed by the Goldenberg Group. *See* Centerline Investor Group Opp. Br. at 6. As a net seller, the Goldenberg Group is "totally out of the running for designation as lead plaintiff." *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001); *see also Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (rejecting movant that was a "net seller" even though it "may have sustained a small loss" because "it does not adequately represent the proposed class of purchasers.").

---

*( … continued)*
arguments to prove defendants' liability as the Centerline Investor Group and the class of purchasers from March 12, 2007 through December 28, 2007, also rendering the Burns Group
*(continued … )*

Moreover, *each member* of the Centerline Institutional Investor Group has a larger loss than the entire Goldenberg Group's aggregate loss of $71,384. *See* Centerline Investor Group Loss Analysis, Ex. B to the First Ellman Decl. (demonstrating that the Centerline Investor Group member with the smallest loss is Edward Friedlander with $80,959 in losses). Accordingly, even if the Court declines to aggregate the losses of the Centerline Investor Group, the losses of each of its members surpass the Goldenberg Group's losses.

## V. The Centerline Investor Group Satisfies the Requirements for a Lead Plaintiff Group

### A. Groups of Unrelated Investors May Serve as Lead Plaintiff

Although the Goldenberg Group acknowledges that "groups of persons may serve together as lead plaintiffs," (Goldenberg Opp. at 2 [Dkt. No. 38]), it argues that it should be appointed because it is a related group that is better suited than a cohesive group that has taken demonstrable steps to protect the class.[4] The Goldenberg Group is mistaken.

As this Court has held: "[T]he majority view . . . hold that *unrelated* investors may aggregate under certain circumstances." *In re eSpeed*, 232 F.R.D. at 99 (emphasis added) (citing *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998)) (appointing a group of three unrelated individual investors as co-lead plaintiff with an institutional investor).[5]

---

*( … continued)*
atypical.

[4] The Goldenberg Group cannot take succor in *City of Brockton Retirement System v. Shaw Group, Inc.*, No. 06-CV-8245 (CM)(MHD), 2007 WL 2845125, at *4-5 (S.D.N.Y. Sept. 26, 2007), where the court appointed as lead plaintiff two public pension funds that had the largest financial interest of any movant. Indeed, the court contrasted this "group" of institutional shareholders with "vast assets [and] apparent investment sophistication" with "a collection of individual, and presumptively unsophisticated, shareholders who [like the Goldenberg Group] may have suffered relatively small losses." Moreover, and critically, the winning movant in that case had the largest financial interest. The Goldberg Group lacks the largest financial interest.

[5] *See also Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (permitting aggregation of the losses of seven unrelated investors); *In re Star Gas Sec. Litig.*, No. 3:04-CV-1766 (JBA),
*(continued … )*

6

In appointing groups of unrelated investors as lead plaintiff, this Court has adopted a "rule of reason" approach that takes into account the PSLRA's preference for institutional investors. *In re eSpeed*, 232 F.R.D. at 99. As such, this Court has held:

> [T]hat a group of unrelated investors should not be considered as lead plaintiff when that group would displace the institutional investor preferred by the PSLRA. But where aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff . . . .

*Id*. at 100. The Goldenberg Group is not an institutional investor, so it cannot avail itself of this narrow limitation on aggregation. Since the Centerline Investor Group does not "displace" an institution, it is appropriate to serve as lead plaintiff. *Id*.

### B. The Centerline Investor Group Has Submitted Evidence That It Is a Cohesive Group

The Goldenberg Group asserts that the Centerline Investor Group has not provided evidence of communication among its members or that it has acted as a group. This is wrong. The Joint Declaration submitted by the Centerline Investor Group amply demonstrates that it is a cohesive group that has spoken on three conference calls, plans to communicate regularly in the future, understands its duties as class representatives, and has established mechanisms for decision making and supervision of counsel.[6] *See* Declaration of Alan I. Ellman in Further

---

*( … continued)*
2005 WL 818617, at *5 (D. Conn. Apr. 8, 2005) (appointing unrelated group of two individuals and one institution).

[6] A group's submission of a joint declaration provides evidence of its members' prior communication and proof that the members will control counsel. *See Schoenfeld v. Dendreon Corp.*, No. 07-CV-800 MJP, 2007 WL 2916533, at *4 (W.D. Wash. Oct. 4, 2007) ("proposed groups with no pre-litigation connection should submit a declaration providing information about the group's members, its structure and its intended functioning") (quoting *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999)); *In re Cardinal Health, Inc., Sec. Litig.*, 226 F.R.D. 298, 307 (S.D. Ohio 2005) (appointing group that "adduced information about its proposed manner of communication and decision-making" through a joint declaration); *Ferrari v. Gisch*, 225 F.R.D. 599, 607-08 (C.D. Cal. 2004) (appointing group of three investors
*(continued … )*

Support of the Motion of the Centerline Investor Group for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel and in Opposition to the Competing Motions at Ex. 7 [Dkt. No. 47]. Thus, the Centerline Investor Group makes a sufficient showing "that the members of the group will act collectively and separately from their lawyers." *In re Tarragon Corp. Sec. Litig.*, No. 07-CV-7972 (PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) (noting that "[t]he issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may.").

On the other hand, the Goldenberg Group (like the Burns Group) has failed to evidence the cohesiveness of the group, their organization, or ability to control counsel.[7] The decisions rejecting groups, upon which the Goldenberg Group relies, address the issue of whether a "group of persons may combine their losses to create 'the largest financial interest' for purposes of the PSLRA." *In re Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000). That is not a concern with the Centerline Investor Group because each member individually has a greater loss than the aggregated losses of the Goldenberg Group. *See supra* at IV. Even courts averse to aggregation have appointed the group, or member of the group, that contains the movant with the single largest financial interest.[8]

---

*( … continued)*
that submitted a joint declaration); *In re Northwestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D.S.D. 2003) (same).

[7] The Goldenberg Group completely mischaracterizes the decision in *Bhojwani v. Pistiolis*, No. 06-13761 (CM)(KNF), 2007 U.S. Dist. LEXIS 96246, at *12 (S.D.N.Y. July 31, 2007) (McMahon, J.), where the court refused to appoint a group of two unrelated investors because of a number of discrepancies in one of the group members' trading data, which "indicates a certain carelessness about detail that undermines the adequacy of Mr. Cole (and his associated group) as a lead plaintiff." The same group member also did not timely file a lead plaintiff motion. *See Id.* at *10.

[8] *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001); *Lentz v. Citadel Sec. Software, Inc.*, 2005 WL 1249441, at *2 (N.D. Tex. May 25, 2005).

8

**CONCLUSION**

For the foregoing reasons and the reasons set forth in the Centerline Investor Group's opening and opposition memoranda, the Centerline Investor Group requests that its Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel be granted.

Dated: April 14, 2008                           Respectfully submitted,

**LABATON SUCHAROW LLP**

By:  *s/ Christopher J. Keller*
     Lawrence A. Sucharow (LS-1726)
     Christopher J. Keller (CK-2347)
     Andrei V. Rado (AR-3724)
     Alan I. Ellman (AE-7347)
     140 Broadway
     New York, New York 10005
     Telephone: (212) 907-0700
     Facsimile:  (212) 818-0477

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Barbara A. Podell
Eric Lechtzin
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604

*Attorneys for the Centerline Investor Group and Proposed Lead Counsel for the Class*