

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE CENTERLINE HOLDINGS COMPANY
SECURITIES LITIGATION

   :
   :
   :
   :
   :
   :
   :
   :
   :

**NOTICE OF APPEAL**

08 civ. 0505 (SAS)

---

Notice is hereby given that the Centerline Investor Group, comprised of J. Michael Fried,

Joseph A. Braddock, Norman Millman and Ed Friedlander, as trustee for the Ed Friedlander

Trust, hereby appeals to the United States Court of Appeals for the Second Circuit from the

Judgment, Opinion and Order dismissing the Amended Consolidated Class Action Complaint for

violation of Federal securities laws entered in this action on the 7th day of August, 2009 and

from the Orders of Dismissal dated January 12, 2009 and August 4, 2009.

Dated: September 2, 2009

Labaton Sucharow LLP
Lawrence A. Sucharow (LS-1726)
lsucharow@labaton.com
Joseph Sternberg (JS-0144)
jsternberg@labaton.com
Jesse Strauss (JS-0212)
jstrauss@labaton.com
140 Broadway
New York, NY 10005
Tel. (212) 907-0700
Fax: (212) 818-0477

Berger & Montague, P.C.
Sherrie R. Savett
ssavett@bm.net
Barbara A. Podell
bpodell@bm.net
Eric Lechtzin
elechtzin@bm.net
1622 Locust Street
Philadelphia, PA 19103
Tel. (215) 875-3000
Fax (215) 875-4604

*Co-Lead Counsel for Lead Plaintiff*
*Centerline Investor Group and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

IN RE CENTERLINE HOLDINGS
COMPANY SECURITIES LITIGATION

------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:          8/7/09
```

08 **CIVIL** 0505 (SAS)
**JUDGMENT**

Defendants having moved to dismiss the Amended Consolidated Class Action Complaint

("Amended Complaint"), and the matter having come before the Honorable Shira A. Scheindlin,

United States District Judge, and the Court, on August 4, 2009, having rendered its Opinion and

Order granting defendants' motion to dismiss, and denying leave to re-plead, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated August 4, 2009, defendants' motion to dismiss is granted, and leave

to re-plead is denied; accordingly, the case is closed.

**Dated:** New York, New York
          August 7, 2009

**J. MICHAEL McMAHON**
_____
**Clerk of Court**

BY:       _____
          **Deputy Clerk**

**THIS DOCUMENT WAS ENTERED**
**ON THE DOCKET ON** _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/12/09

IN RE CENTERLINE HOLDINGS
COMPANY SECURITIES LITIGATION

**OPINION AND ORDER**

08 Civ. 505 (SAS)

------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Lead Plaintiff Centerline Investor Group[1] brings this securities fraud action on behalf of persons who purchased stock in Centerline Holding Company ("Centerline" or "the Company") from March 12, 2007 to December 28, 2007 ("the Class Period") to recover losses that resulted from the purchases of allegedly artificially inflated stock.[2] Lead Plaintiff asserts claims pursuant to Section 10(b) of the Securities Exchange Act against Centerline and four of the Company's senior officers and trustees, including Chief Executive Officer Marc D. Schnitzer,

---

[1]    Centerline Investor Group is comprised of J. Michael Fried, Joseph A. Braddock, Norman Millman, and Ed Friedlander, as Trustee for the Ed Friedlander Trust. *See* Complaint ("Compl.") ¶ 1.

[2]    *See id.*

Chief Financial Officer Robert L. Levy, Chairman of the Board of Trustees

Stephen M. Ross, and Managing Trustee Jeff T. Blau (collectively, "the Individual

Defendants" and together with Centerline, "defendants").[3]  Lead Plaintiff also

alleges claims under Section 20(a) of the Securities Exchange Act against the

Individual Defendants.[4]  Because Lead Plaintiff has failed to adequately plead

facts giving rise to a strong inference of fraudulent intent, defendants' motion to

dismiss is granted with leave to amend within thirty days of the date of this Order.

## II.    BACKGROUND

Centerline, a corporation formerly known as CharterMac, is a

statutory trust that operated as a "full service real estate finance and investing

company."[5]  The Company's Affordable Housing segment was chiefly responsible

for managing Centerline's tax-exempt affordable housing bond portfolio and was a

major contributor to Centerline's revenues, representing approximately 44 to 52

percent of the Company's total revenues in the first three quarters of 2007.[6]

---

[3]     *See id.* ¶¶ 165-175.

[4]     *See id.* ¶¶ 176-179.

[5]     *Id.* ¶ 2.

[6]     *See id.* ¶ 3.

Because of the revenues generated by the Company's tax-exempt bond portfolio, the Company "historically paid large, primarily tax-exempt dividends."[7]

In early 2007, Centerline and its officers and trustees began to work on transforming the Company into an alternative asset management company.[8] As part of this plan, the Company negotiated and entered into an agreement with The Federal Home Loan Mortgage Corporation ("Freddie Mac") to sell its tax-exempt bond portfolio.[9] This transaction was not announced to the public until December 28, 2007.[10] That day, the Company also announced that it would cut its dividend from $1.68 to $0.60 per share and that The Related Companies, L.P. ("Related") – Centerline's largest shareholder and a company owned by Ross and Blau – would be providing $131 million in financing in exchange for 12.2 million shares of convertible preferred stock that would pay an eleven percent dividend.[11]

At no time prior to the December 2007 announcement had defendants revealed that the Company was considering securitizing its bond portfolio even

---

[7]     *Id.* ¶ 4.

[8]     *See id.* ¶ 5.

[9]     *See id.*

[10]    *See id.* ¶ 8.

[11]    *See id.* ¶ 17.

3

though defendants allegedly knew that the sale of the bond portfolio would decrease the Company's ability to pay high dividends.[12]  Indeed, on several occasions when defendants made statements about the operations of the Company, they allegedly omitted to disclose information regarding the plans to sell the bond portfolio or the capital needs of the Company.[13]  Thus, when the transaction, the dividend cut, and the investment by Related was announced by the Company on December 28, 2007, the news "shocked" the financial markets.[14]  The price of Centerline stock tumbled twenty-five percent that day from $10.27 per share to close at $7.70 per share.[15]

Lead Plaintiff claims that "[d]efendants misrepresented and omitted the material facts" that (1) they planned to change Centerline's business from that of a real estate company to an alternative asset manager; (2) that they had entered into an agreement with Freddie Mac to sell the tax-exempt bond portfolio; (3) that Centerline was in need of capital; (4) that as part of the transformation, they intended to cut the dividend; and (5) that they had decided to "abandon

---

[12]     *See id.* ¶¶ 7-8.

[13]     *See id.* ¶¶ 14-16.

[14]     *See id.* ¶ 17.

[15]     *See id.* ¶ 22.

4

Centerline's historic risk-averse income-oriented investor base, which invested primarily on the basis of the substantial dividend, which was in large part tax-exempt, and replace them with a growth-oriented investor base."[16]  Lead Plaintiff seeks compensatory damages for losses incurred as a result of defendants' misconduct.[17]

## III.  APPLICABLE LAW

### A.    Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "'accept as true all of the factual allegations contained in the complaint'"[18] and "draw all reasonable inferences in the plaintiff's favor."[19]  A complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'"[20] in order to survive a motion to dismiss.

---

[16]    *Id.* ¶ 23.

[17]    *See id.* ¶ 179.

[18]    *Bell Atlantic Corp. v. Twombly,* — U.S. —, 127 S. Ct. 1955, 1975 (2007) (quoting *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n.1 (2002)).

[19]    *Ofori-Tenkorang v. Am. Int'l Group, Inc.,* 460 F.3d 296, 298 (2d Cir. 2006).

[20]    *ATSI  Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly,* 127 S. Ct. at 1965). *Accord Erickson v. Pardus,* , — U.S. —,

Although the complaint need not provide "detailed factual allegations,"[21] it must nonetheless "amplify a claim with some factual allegations . . . to render the claim *plausible*."[22] "[B]ald assertions and conclusions of law will not suffice."[23]

**B.    Section 10(b) and Rule 10b-5 of the Securities Exchange Act**

**1.    Prima Facie Case**

"To prevail in a Rule 10b-5 action based on subsection [10](b), a plaintiff must prove that 'in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury.'" [24]

**2.    Omissions of Material Information**

---

127 S. Ct. 2197, 2200 (2007) (per curiam) (noting that plaintiffs must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") (quoting *Twombly*, 127 S. Ct. at 1955).

[21]    *Twombly*, 127 S. Ct. at 1970.

[22]    *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 2931 (2008).

[23]    *Law Offices of Curtis V. Trinko, LLP v. Bell Atlantic Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (citation omitted).

[24]    *Vacold LLC v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008) (quoting *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir. 1999)).

"To be actionable, [] a statement must [] be misleading."[25]  In cases of omissions, defendants will only be liable for violating the securities laws when they are "subject to a duty to disclose the omitted facts."[26]  Thus, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5."[27]

A duty to disclose arises in the following situations: (1) "[W]hen a corporate insider trades on confidential information;" (2) When a "statute or regulation requir[es] disclosure;" and (3) "[W]hen a corporation [] make[s] a disclosure – whether it be voluntary or required – there is a duty to make it complete and accurate."[28]  A duty to disclose may also arise "whenever secret information renders prior public statements materially misleading, not merely when that information completely negates the public statements."[29]

### 3.    Scienter

---

[25]    *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).

[26]    *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) (citing *Basic*, 485 U.S. at 239 n.17).

[27]    *Basic*, 485 U.S. at 239 n.17. *Accord Glazer v. Formica Corp.*, 964 F.2d 149, 156 (2d Cir. 1992) (". . . there is no liability under Rule 10b-5 unless there is a duty to disclose [the information].").

[28]    *Glazer*, 964 F.2d at 157 (quoting *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26-27 (1st Cir. 1987).

[29]    *In re Time Warner*, 9 F.3d at 268.

"'The requisite state of mind, or scienter, in an action under [S]ection 10(b) and Rule 10b-5, that the plaintiff must allege is 'an intent to deceive, manipulate or defraud.'"[30] In addition, under the Private Securities Litigation Reform Act of 1995, plaintiffs in securities fraud actions must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[31] A plaintiff may satisfy this requirement "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."[32]

Under the first prong, "[t]o show motive and opportunity, plaintiffs must allege a likelihood that defendants could realize 'concrete benefits' through the deception."[33] The conduct of the defendants under the second prong must be conduct that is "'highly unreasonable'" and which represents "'an extreme

---

[30]    *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000)) (internal quotation marks omitted).

[31]    *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)).

[32]    *ATSI Commc'ns, Inc.*, 493 F.3d at 99 (citing *Ganino*, 228 F.3d at 168-69).

[33]    *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 100 (2d Cir. 2001) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)).

departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"[34] "For an inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged.'"[35]

### C.    Control Person Liability Under Section 20(a) of the Exchange Act

"To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."[36]

## IV.    DISCUSSION

### A.    Section 10(b) and Rule 10b-5

Defendants argue that Lead Plaintiff cannot sustain its Section 10(b) claim because it has failed to properly allege that defendants acted with the

---

[34]    *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978)).

[35]    *ATSI Commc'ns, Inc.*, 493 F.3d at 99 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2510 (2007) (emphasis in original)).

[36]    *Id.* at 108 (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).

9

requisite scienter.[37] They contend that Lead Plaintiff has neither alleged sufficient facts showing that defendants had the motive and opportunity to commit the fraud nor adequately pled that defendants acted with conscious misbehavior or recklessness.[38] I agree.

### 1.    Motive and Opportunity

There is no dispute that the defendants had an opportunity to commit the fraud, particularly because they were officers or trustees of the Company and controlled the Company's business.[39] Thus, the relevant question is whether the defendants possessed a motive to commit the fraud.

### a.    Ross and Blau

The Complaint alleges that Ross and Blau were motivated to "engineer the Related transaction" so that they could "increase[] their voting control over Centerline from 17% to almost 30%"[40] and be paid an eleven percent coupon on their convertible preferred shares "thereby diverting a material portion

---

[37]    *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Class Action Complaint ("Def. Mem.") at 22-28.

[38]    *See id.* at 23.

[39]    *Accord Kalnit*, 264 F.3d at 139 (agreeing with the district court that "it [was] undisputed that the individual defendants, as [d]irectors of [the company], had the opportunity to commit fraudulent acts").

[40]    Compl. ¶ 148(c).

of the Company's income to insiders at the expense and to the great detriment of Centerline shareholders."[41]  Another benefit of making the investment in Centerline was that Related would be able to nominate one Board representative as an "independent trustee" as long as it retained at least fifty percent of its preferred shares in Centerline.[42]

These allegations of motive are insufficient.  While these reasons might explain Ross and Blau's incentive to invest in Related, they do not explain why Ross and Blau would have wanted to fraudulently conceal the news of Related's investment in the Company.  In addition, if Ross and Blau had any motive, it would have been to disclose information about the bond portfolio sale and dividend cut sooner.  As noted in the Complaint, Related's preferred shares were only convertible to common shares at a price of $10.75, which had no doubt been negotiated prior to Centerline's share price drop.[43]  After Centerline had made the announcement of the bond portfolio sale, the dividend cut, and Related's investment on December 28, 2007, Centerline's share price dropped to $7.70.[44]

---

[41]    *Id.* ¶ 143.

[42]    *See id.* ¶ 140.

[43]    *See id.* ¶ 18.

[44]    *See id.* ¶ 68.

The share price drop made the preferred shares an expensive purchase for Related.[45]   Had Ross and Blau really wanted to obtain a "sweetheart deal," they would have been motivated to cause information related to the sale of the bond portfolio and dividend cut to be disclosed sooner so that they could have negotiated a lower conversion price.  They gained nothing from causing Centerline to postpone the announcement of the sale of the bond portfolio.

The Complaint also alleges that Ross had already been contemplating taking Centerline private prior to the sale of the bond portfolio.[46]   Therefore, according to Lead Plaintiff, he had a "compelling personal financial incentive" to push the sale of the bond portfolio to Freddie Mac because any resulting share price drop would make it less expensive for him to take Centerline private.[47]   Lead Plaintiff's argument fails again.  Had Ross wanted to drive down Centerline's

---

[45]      Indeed, Lead Plaintiff describes in the Complaint how, in response to intense pressure from shareholders, Centerline ended up issuing a rights offering thereby making available to all shareholders the same deal terms that Related would receive.  *See id.* ¶ 135.  The transaction was structured to give Related the chance to "backstop" the offering, or retain any shares not purchased in the rights offering.  *See id.* ¶ 136.  However, Lead Plaintiff alleges that few shareholders participated because the share price had continued to drop since the December 28, 2007 announcement and the conversion price of $10.75 thus rendered the preferred shares "uneconomic."  *See id.* ¶ 140.

[46]      *See id.* ¶ 148(h).

[47]      *See id.*

share price, he would have caused Centerline to disclose information about the sale of the bond portfolio earlier rather than later. He derived no benefit from concealing the information. Thus, the Complaint has failed to provide factual allegations sufficient to give rise to a strong inference that Ross or Blau had a motive to commit fraud.

### b.    Schnitzer and Levy

Lead Plaintiff's allegations of motive with respect to Schnitzer and Levy are similarly defective. The Complaint alleges that Schnitzer and Levy were motivated to help Ross further his goals "[b]y reason of their high salaries, bonus compensation, equity awards, the promise of continued lucrative employment with Centerline and fear of retribution by defendant Ross and other entities affiliated with [] Ross and [Related] . . . ."[48] The Complaint further describes how Ross had founded Centerline and Related, hired Schnitzer and Levy, and how he possessed "substantial influence" over the management of the companies, including the ability to "hir[e], fir[e], and [set the] compensation of all senior executives of Centerline," presumably because of his position as the Chairman of the Board of Trustees of the Company.[49]

---

[48]    *Id.* ¶ 153.

[49]    *Id.* ¶¶ 32, 149-152.

However, as discussed, Lead Plaintiff has failed to adequately allege that Ross himself had a motive to conceal information about the sale of the bond portfolio, the resulting dividend cut, or Related's investment in Centerline. On the contrary, and following Lead Plaintiff's arguments and reasoning, Ross should have had an incentive to disclose the news sooner. It would thus be nonsensical to accept the argument that Schnitzer and Levy were attempting to help Ross achieve something that was the opposite of what would have benefitted him most.

Furthermore, motives of compensation and job security – which are generally possessed by most corporate directors and officers – have been held not to be sufficient to give rise to an inference of fraudulent intent for the purposes of Section 10(b).[50] Also, allegations that Schnitzer and Levy "feared retribution" are not supported by any facts and are therefore speculative.[51] Lead Plaintiff has

---

[50]   *See Kalnit*, 264 F.3d at 139 (citing *Shields*, 25 F.3d at 1130) ("To allege a motive sufficient to support the inference [of fraudulent intent], a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold."). *Accord Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (finding that "executive compensation . . . does not give rise to a strong inference of scienter").

[51]   *See Kalnit*, 264 F.3d at 140 (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Co. Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) (holding that conclusory and speculative allegations cannot support an inference of scienter).

14

therefore failed to present a reasonable motive as to why any of the Individual

Defendants would have wished to conceal the information at issue.[52]

### 2.    Conscious Misbehavior and Recklessness

Lead Plaintiff has also failed to provide sufficient facts to show that

defendants acted with conscious misbehavior or recklessness.  The Complaint is

replete with allegations that the defendants knew about the sale of the bond

portfolio, that the dividend would most likely have to be cut, and that Related

would make an investment in Centerline prior to the Company's announcement on

December 28, 2007.[53]  However, the Complaint does not allege any facts to show

---

[52]    Because Lead Plaintiff has failed to present a motive for any of the
Individual Defendants, it has also failed to allege that Centerline had a motive to
defraud.  *See Acito*, 47 F.3d at 53-54 (dismissing Section 10(b) claim against
company and officers because plaintiffs had failed to present adequate allegations
of scienter against officers).

[53]    *See, e.g.*, Compl. ¶ 148(a) ("Defendant Schnitzer admitted on
December 28, 2007 that the Company had a deal to sell its tax-exempt bond
portfolio to Freddie Mac and had been working on the transaction for 'close to a
year' before disclosing this [] transaction . . . ."); *id.* ¶ 148(d) ("The Company's
tax-exempt bond portfolio [was] core to Centerline's business and, therefore, the
Individual Defendants, who were among the Company's most senior officers and
trustees, knew or were reckless in not knowing about the plan to sell this portfolio
. . . and slash[] [the] annual dividend . . . ."); *id.* ¶ 148(g) ("Defendants knew or
were reckless in not knowing of the agreement with Freddie Mac to sell the tax-
exempt bond portfolio because of the magnitude of the transaction costs of
approximately $89 million [] and its status as the cornerstone to the Company's
strategic plan to transform itself into an alternative asset manager.").

15

that defendants knew they should have disclosed information of the transactions prior to the date of the announcement, but recklessly failed to do so.[54]

Indeed, defendants argue that according to Securities and Exchange Commission ("SEC") regulations, they had no duty to disclose the possibility that the Company would sell its bond portfolio and cut its dividend or that Related would make an investment in the Company prior to December 28, 2007 when they made the announcement about these actions.[55] They contend that the SEC had considered – and had refused to adopt – the requirement that corporations disclose

---

[54]    Lead Plaintiff argues that all that is necessary to plead scienter are allegations "'that [] defendant[s] knew facts or had access to information suggesting that their public statements were not accurate.'"  Lead Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss the Consolidated Complaint ("Pl. Mem.") at 23 (quoting *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)).  However, *Novak* noted that such allegations are sufficient in situations in which defendants made certain predictions when they knew or had access to information indicating that such predictions would not be fulfilled. *See* 216 F.3d at 308 (discussing the facts of *Cosmas v. Hassett*, 886 F.2d 8, 12 (2d Cir. 1989) and *Goldman v. Belden*, 754 F.2d 1059, 1063 (2d Cir. 1985). None of defendants' statements that are highlighted by Lead Plaintiff in its opposition papers as misleading ever included positive predictions about Centerline's bond portfolio, promises that the 2008 dividend would remain the same, or that the Company did not foresee a capital needs problem in the future, thereby necessitating a transaction to raise capital. *See* Ex. A to Pl. Mem.  A strong inference of scienter cannot exist absent further facts to indicate that defendants knew the statements they were making were misleading.

[55]    *See* Def. Mem. at 9.

16

non-binding agreements.[56]  Instead, the SEC decided ultimately only to require

companies to disclose "material definitive agreements" not made in the ordinary

course of business within four business days of entry into such agreements.[57]

Because the Complaint does not suggest the existence of an enforceable contract

between Centerline and Freddie Mac prior to December 21, 2007 – four business

days before the date of announcement[58] – defendants assert that they fulfilled their

duty to disclose the transaction by making the announcement on December 28,

2007.[59]

---

[56]      See id. at 11 (quoting SEC, Final Rule: Additional Form 8-K
Disclosure Requirements and Acceleration of Filing Date, Release Nos. 33-8400,
34-49424 (Mar. 16, 2004) ("Final Rule")) (explaining that the SEC had considered
requiring disclosure of "letters of intent and other non-binding agreements," but
then had rejected such proposal after "many commentators" had opined that its
implementation "could cause significant competitive harm to the company and
create excessive speculation in the market").

[57]      See Def. Mem. at 11-12 (citing Final Rule).  Accord Form 8-K (B;
Item 1.01).

[58]      Defendants mistake December 22, 2007 to be four business days prior
to December 28, 2007.  See Def. Mem. at 12.  I note that December 22, 2007 is a
Saturday; therefore, four business days prior to December 28, 2007 is actually
December 21, 2007.

[59]      See Def. Mem. at 12.  Defendants note that even if the sale of the
bond portfolio had been considered a "disposition of a significant amount of
assets," the SEC similarly only requires disclosure of such transactions within four
business days of such acquisition or disposition.  See id. at 14 (citing Form 8-K
(Item 2.01)).

Defendants make similar arguments with respect to the announcement of the dividend cut and the investment by Related.[60] They assert that because the dividend cut occurred only as a result of the sale of the bond portfolio, they could not have had a duty to disclose the dividend cut any earlier either.[61] Likewise, defendants contend that the Complaint "does not allege any facts suggesting that this transaction was the subject of a definitive, enforceable agreement at any time earlier than December 2[1], 2007" and that "Lead Plaintiff does not even speculate when such a transaction 'would have' been negotiated."[62] Thus, they argue, there is nothing to suggest that Related's investment was disclosed in an untimely manner.[63]

Lead Plaintiff responds by arguing that whether or not defendants complied with SEC disclosure requirements is not relevant – defendants

---

[60]   *See id.* at 13-14.

[61]   *See id.* at 13.

[62]   *See id.*

[63]   *See id.* at 13-14. Defendants also argue that even if Related's investment was considered an "unregistered sale of equity securities," the SEC requires disclosure only after "the registrant enters into an agreement enforceable against the registrant, whether or not subject to conditions, under which the equity securities are to be sold." *Id.* at 14 (quoting Form 8-K (Item 3.02)). They assert that because Lead Plaintiff does not allege any such agreement with respect to Related's investment existed prior to December 21, 2007, defendants cannot be found to have violated any duty to disclose this information. *See id.* at 14-15.

nevertheless had a duty to disclose information related to the bond portfolio sale,

dividend cut, and investment by Related when they "explicitly raised the subjects

of the tax-exempt bond portfolio, the dividend, and the Company's business

strategy."[64]  Lead Plaintiff argues that defendants' concealment of such

information made their statements about those topics "false, inaccurate,

incomplete or misleading."[65]

---

[64]    Pl. Mem. at 16 (emphasis removed).

[65]    *Id.* (citing *Roeder*, 814 F.2d at 27) (emphasis removed).  Lead
Plaintiff's reliance on a number of cases to support this proposition is misplaced.
For instance, Lead Plaintiff argues that this Court should follow the Third
Circuit's conclusion in *Weiner v. Quaker Oats*, 129 F.3d 310 (3d Cir. 1997) – that
a duty to disclose acquisition negotiations may arise even though the parties have
not reached a definitive agreement. *See* Pl. Mem. at 17-18.  However, the facts in
*Weiner* are distinguishable from the facts in this case.  There, the Third Circuit
found particularly significant that defendants had – in three separate
communications with investors – set forth their guideline for the company's debt-
to-total capitalization ratio when they knew that the acquisition would result in a
significant increase in that ratio. *See Weiner*, 129 F.3d at 317.  Here, Lead
Plaintiff has not presented any facts to show that defendants made any statements
suggesting the Company would refrain from disposing of its bond portfolio, keep
the dividend constant in 2008, or that the Company would not need capital in the
future.  Instead, Lead Plaintiff highlights one statement that it alleges is
misleading, but that actually indicates that the Company was considering the
possibility of disposing of the bond portfolio. *See* Ex. A to Pl. Mem. at 11;
Compl. ¶ 113 (labeling the following response by Schnitzer to an analyst question
– whether the company had "considered [] taking the bonds off [the] balance
sheet" – misleading: "Well, clearly a strategy like that plays into the overall
evolution of the Company.  So, clearly it's something that we've thought of from
time to time . . . We've thought about that and many other options.  But, clearly
that's one that would come to mind right away.").  The same reasoning applies to

19

However, even assuming that the statements made by defendants

were inaccurate and incomplete – and many of the statements identified by Lead

Plaintiff to be misleading do not appear to be[66] – the existence of SEC regulations

---

refute Lead Plaintiff's argument that this Court should rely on the Seventh
Circuit's conclusion in *Caremark, Inc. v. Coram Healthcare Corp.*, 1134 F.3d 645
(7th Cir. 1997). As Lead Plaintiff notes, the Seventh Circuit emphasized that once
the company had "'undertaken to disclose its plans regarding future acquisitions,
[it] had a duty to do so truthfully.'" Pl. Mem. at 13 (quoting *Caremark*, 113 F.3d
at 650 n.7). No announcements of future plans were made by the defendants in the
instant case; therefore no duty to disclose arose.

[66]     Lead Plaintiff has highlighted a number of examples of misleading
statements in its opposition papers. *See* Ex. A to Pl. Mem. While I make no
determinations as to whether Lead Plaintiff has succeeded in identifying any
statement that is actionable under Section 10(b), I note that many of the statements
listed in the Complaint are simply not misleading. For instance, Lead Plaintiff
argues that the following statement – taken from Centerline's 2006 Annual Report
– is misleading: "We derive a large portion of our earnings by . . . investing in
mortgage revenue bonds." *Id.* at 1; Compl. ¶ 79. Lead Plaintiff provides no
plausible reason to believe that this statement, which merely describes the 2006
revenues, is false or misleading. In another example, Lead Plaintiff indicates that
Schnitzer's statement on August 9, 2007 that management has "no intention of
suggesting any modification to our dividend" is misleading because Schnitzer and
the other Individual Defendants were, at this time, in the midst of working on
selling the bond portfolio and would have known that the dividend would likely be
cut. Ex. A to Pl. Mem. at 4; Compl. ¶ 102. However, defendants note that this
statement was made in response to a question that was posed to Schnitzer
regarding whether the Company would maintain the dividend "for the year [of
2007]." *See* Defendants' Reply Memorandum in Further Support of Their Motion
to Dismiss the Consolidated Class Action Complaint at 10 (quoting 8/9/07
Transcript of Centerline Holding Company's Earnings Conference Call).
Defendants note that the 2007 dividend was not cut, and this statement is therefore
true. *See id.* at 10. Because Lead Plaintiff does not argue otherwise, I must agree
with defendants.

20

relating to the disclosure of these transactions and defendants' compliance with them suggests that Lead Plaintiff has failed to show defendants acted recklessly in omitting such information.[67]  Defendants' conduct cannot be described as "highly unreasonable" nor can it be said that their conduct "represents an extreme departure from the standards of ordinary care," particularly when it is arguable that they did not have a duty to disclose such information before they actually did. Because Lead Plaintiff has not presented facts sufficient to render its Section 10(b) claims "plausible," these claims are dismissed.

**B.    Section 20(a) Control Person Liability**

Lead Plaintiff's Section 20(a) claims are based on the Individual Defendants' control of Centerline.[68]  Because Lead Plaintiff's Section 10(b) claims have been dismissed and Lead Plaintiff has alleged no other primary violation of the securities laws against the Individual Defendants, Lead Plaintiff's Section 20(a) claims are also dismissed.

---

[67]    *Accord Kalnit*, 264 F.3d at 144 ("Because [] this case does not present facts indicating a clear duty to disclose, plaintiff's scienter allegations do not provide strong evidence of conscious misbehavior or recklessness.").

[68]    *See* Compl. ¶ 177.

21

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in full.  Because Lead Plaintiff may be able to remedy the deficiencies in the Complaint, leave to replead is granted.  An Amended Complaint may be filed within thirty (30) days of the date of this Order.  If no such Amended Complaint is filed, the Clerk of the Court will be directed to close this case.   The Clerk of the Court is directed to close this motion (document no. 74).

SO ORDERED:

Dated:   New York, New York
            January 12, 2009

Shira A. Scheindlin
U.S.D.J.

22

- **Appearances** -

**For Lead Plaintiff:**

Sherrie R. Savett, Esq.
Barbara A. Podell, Esq.
Eric Lechtzin, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Lawrence A. Sucharow, Esq.
Joseph Sternberg, Esq.
Ann E. Gittleman, Esq.
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
(212) 907-0700

**For Defendants Schnitzer and Levy:**

Richard A. Rosen, Esq.
Daniel J. Leffell, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

**For Defendants Ross and Blau:**

Peter L. Simmons, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
1 New York Plaza
New York, NY 10022
(212) 859-8455

**For Defendant Centerline Holding Company:**

Jennifer F. Beltrami, Esq.
Wolfblock LLP
250 Park Avenue
New York, NY 10017
(212) 883-4955

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE CENTERLINE HOLDING COMPANY
SECURITIES LITIGATION

Civil Action No. 08-CV-00505 (SAS)

## Service List for Notice of Appeal

Peter L. Simmons
**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP**
1 New York Plaza
New York, NY 10022
peter.simmons@ffhsj.com

Jennifer F. Beltrami
**COZEN O'CONNOR**
250 Park Avenue
New York, NY 10177
jbeltrami@cozen.com

Richard A. Rosen
**PAUL WEISS RIFKIND WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10158-0038
rrosern@paulweiss.com